**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)
*alexis@consumersadvocates.com*
KAS L. GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorneys for Plaintiff and the Proposed Classes***

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH ROBBINS, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| PLUSHCARE, INC. and PLUSHCARE OF CALIFORNIA, INC., A.P.C.<br>Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiff Sarah Robbins, on behalf of herself and all others similarly situated ("Plaintiff"), by and through her undersigned counsel, hereby sue PlushCare, Inc. and PlushCare of California, Inc., A.P.C. ("Defendants" or together referred to as "PlushCare") and, upon information and belief and investigation of counsel, alleges as follows:

## I.    INTRODUCTION

1.    PlushCare is a primary care-focused virtual care company which connects consumers across the United States to an online video visit with a doctor. The startup advertises that it treats urgent care medical issues, ongoing medical issues, primary care and mental healthcare, and also offers online therapy. Patients book an appointment time on Defendants' website or via the PlushCare app, then virtually talk to Defendants' doctors after inputting their banking information.

2.    Plaintiff and class members are national consumers who booked an appointment with a PlushCare doctor, either by inputting their insurance information or indicating they were cash pay, then were illegally charged monthly fees of $14.99 through electronic funds transfer from the consumers' bank account and through charges to consumers' credit cards, all without authorization, for a subscription service without their knowledge or consent.  By doing so, PlushCare reaps millions of dollars in unlawfully-obtained revenues.

3.    Importantly, PlushCare fails to disclose terms of their subscription services and instead enrolls consumers in monthly membership plans that renew indefinitely without the consumers knowledge or consent.  PlushCare took money for six months from a checking account managed by Plaintiff Robbins via electronic fund transfers, even though PlushCare never obtained her express consent or her written authorization to take money from the account for an ongoing membership subscription.

4.    PlushCare's practice violates numerous state and federal regulations, including the Electronic Funds Transfer Act (15 U.S.C. §§ *et seq*.), California's

Automatic Renewal Law (Bus. & Prof. Code §§ 17600 *et. seq.*), California's Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.* ("CLRA")), California's Unfair Competition Law ("UCL") (Bus. & Prof. Code §§ 17200, *et seq.*), Cal. Civ. Code §§ 1709-1710, and 17535, and Cal. Penal Code § 496.

5.     As a direct result of Defendants' conduct, Plaintiff and members of the proposed classes suffered economic injury in the loss of monies paid for Defendants' subscriptions which they did not consent to purchase.

6.     Plaintiff, on behalf of herself and members of the classes she seeks to represent, seek restitution, declaratory, injunctive, and other equitable relief, statutory damages, actual and treble damages, reasonable attorneys' fees and costs, and interest, as set forth below.

## II.     JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because at least one member of the class, as defined below is a citizen of a different state than Defendants, there are more than 100 members of the class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

8.     The Court has personal jurisdiction over Defendants because Defendant PlushCare, Inc. is a Delaware corporation with its principal place of business at 650 5th Street, Suite 405, San Francisco, CA 94107 and Defendant PlushCare of California, Inc., A.P.C., is a California corporation with the same principal place of business.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendants' principal place of business is in this District.

## III.     PARTIES

10.     Plaintiff Sarah Robbins ("Robbins") is a resident of Bakersfield, California.

11.     Defendant PlushCare, Inc. is a Delaware corporation with its principal

place of business at 650 5th Street, Suite 405, San Francisco, CA 94107.

12.    Defendant PlushCare of California, Inc., A.P.C., is a California corporation with its principal place of business at 650 5th Street, Suite 405, San Francisco, CA 94107.

13.    At all times material to this Complaint, acting alone or in concert with others, Defendants advertise, market, and sell virtual healthcare services to consumers throughout the United States.

### IV.    FACTUAL ALLEGATIONS

14.    Defendants appear to provide a simple transparent service which assists consumers in these new pandemic times.  In fact, under the "How it works" section of Defendants' website, the process is described in three easy steps:

> 1.) Book on our free mobile app or website. Our doctors operate in all 50 states and same day appointments are available every 15 minutes.
>
> 2.) See a doctor, get treatment and a prescription at your local pharmacy.
>
> 3.) Use your health insurance just like you normally would to see your doctor.

Importantly, the three easy steps have no mention of a subscription-based membership.  *See* https://plushcare.com/about/.

15.    When a consumer is ready to get started with the service, the consumer presses a button labeled "Book an Appointment."  From the top left corner, a consumer can see there are five pages to view.  Screen 1 of 5 requires the consumer to make a choice between "Use my insurance" or "I'm paying for myself." *See* https://www.plushcare.com/profile/book/method/.  If the consumer makes the "Use my insurance" option, the consumers is sent to page 2 of page 5 and a list of insurances providers is available to choose from, however after selecting the insurance, the consumer is directed to the same page as consumer that selects "I'm paying for myself" is directed which is page 3 of 5.  *See* https://www.plushcare.com/profile/book/insurance.  Page 3 of 5 allows you to select

the date you wish to schedule the appointment, the state the doctor is in and whether the appointment is for yourself, your child or for someone else. *See* https://www.plushcare.com/profile/book/.   After selecting the date, state of the doctor and who the appointment is for, the consumer may book a doctor for a particular appointment time by pressing a button labeled "Book" which is located next to the doctor and appointment time desired.  Pressing "Book" then takes the consumers to page 4 of 5 a page labeled "Create profile."  *See* https://www.plushcare.com/profile/register/.   Create profile requires the user to insert his or her name, date of birth, gender, mobile phone number, email address and a password.  Underneath a large button labeled "Continue" is small font stating "By clicking "continue," you are agreeing to the PlushCare Terms of Use, Privacy Policy & Telehealth Consent Policy. *Id*.

16.   Importantly, under section 13 of the "Terms of Use" is a section labeled "Membership Fee."  It states, "PlushCare charges a monthly membership fee (the "Membership Fee") for access to certain features of the Services."  There is however no disclosure that by booking an appointment, Defendants will automatically enroll the consumer into paying any Membership Fee or that a membership is required for use.

17.   The last screen, screen 5 of 5 is extremely deceptive.  The screen is labeled "Provide payment details."  *See* https://www.plushcare.com/profile/payment/details/.   This is for payments with insurance and without insurance.  With either selection a credit card number is required.  When screen 5 of 5 appears, the only fields which immediately appear are to choose a payment method – via insurance or without insurance, the consumers' credit card number and the reason for the visit. *Id*.  At the end of the page is a button labeled "Book Appointment."   However, after choosing whether insurance will be used, an additional box appears labeled "Monthly Membership."  The Monthly Membership box then gives the following terms:

## Monthly Membership

30-day FREE trial

$14.99 billed after 30 days.

- 40% off future visits
- Same day appointments
- In-app messaging

Recurring billing at $14.99. Cancel anytime.
Learn More

18.     Under learn more the pop-up box states:

Your membership continues until cancelled. If you do not wish to continue to pay per month, you may cancel anytime by visiting Your Profile > Payment and Insurance and adjusting your membership settings.

Limited Access

You can get limited access to PlushCare medical services with no member services mentioned above by calling us at 800-221-5140.

19.     The Monthly Membership was never disclosed prior to this page.  At the bottom of page 5 of 5 is the "Book Appointment" button.  The "Book Appointment" button does not provide any indication that pressing the "Book Appointment" button will enroll the consumers into the Monthly Membership or any auto renew monthly membership program.  The consumer simply believes he or she is booking a virtual doctor's appointment – either paid via insurance or paid via a $99.00 cash pay option.

20.     Defendants however deceptively place all consumers who press "Book Appointment" into Defendants' auto renew membership plan which charges the consumers' bank accounts $14.99 per month after the 30-day free trial.  There was

no button to click to subscribe to the free trial or monthly membership and no disclosure to the consumer that clicking "Book Appointment" would enroll them in the program.

21.   In fact, upon information and belief, at some point between 2020 and 2021, Defendants added the Monthly Membership feature and placed all customers who had previously utilized Defendants' service into the program without providing any notice to those consumers that their bank accounts would be charged on a monthly basis.

22.   Plaintiff Robbins and other consumers have been injured by Defendants' practice of placing customers into auto renew programs and renewing consumers' subscriptions without their consent and knowledge.

23.   The website Trustpilot provides some examples that chronicle customers common grievances.  For example:

- April 11, 2021 by anonymous:  They charged me monthly fees without billing me. It will not allow you to delete payment information. They will not provide any refunds. PLEASE, THIS IS A SCAM! DO NOT DOWNLOAD. There are better options for online care!

- April 5, 2021 by Raymond Mata:  Unable. To cancel membership. Tried plushcare last month doctor wasn't able to help no harm no foul at this point. But canceled my membership same day was told by rep it was all taken care of and out of the 90 dollars I was changed they could only return 30 1 mouth later my account was charged again tried calling but no one answered.

- February 26, 2021 by Mary Stewart:  How do I stop they taking money I don't have.

- February 5, 2021 by Dan Hett:  Deceptive practice by signing you up…Deceptive practice by signing you up for a monthly service

- November 21, 2020 by Jay Cochran:  SCAM - I have been signed up

for their "membership" twice. A total of $30, and i never approved either time. The doctors cancel right before the appointment saying they can't help with that and reschedule you with another doctor. THIS IS A SCAM

- November 19, 2020 by Chad:  The experience with the website and doctor was great. A month later a received a charge for a monthly subscription fee, which I did not sign up for.

- October 23 by Cynthia:  They charge a monthly fee for their services & the doctor I had prescribed a medicine that didn't work so I had to schedule another appt with another Dr. & had to pay another $30 deductible. I canceled their service!

- October 23, 2020 by Ryan:  It's BS you won't let me cancel through the app. It resulted in me being charged $14.99 for no reason. I will not be back. It's clear it's an intentional ploy to reap additional months charges from your customers.

- June 25, 2020 by Sam Halhm:  Monthly Membership?! Nope.  Gold Stars for physician quality based on my experience w 2 Plushcare MDs in 2019. But Red Flags for Plushcare's sneaky "monthly membership" fee, $9, a 'membership' I never authorized, but they've been skimming from my bank acct since my second and last appointment, 12/2019. Not cool. Now cancelled (with confirming email, which is more than I got confirming 'membership).' No trust. Will change bank acct too. Hassle.

- May 20, 2020 by Matt:  Doctor Great! New Fee without Notice - Fraud. I've been using PlushCare for over a year and it had been wonderful, and the convenience and the doctor I usually see has been great. I've never been charged a "subscription fee" in that time until this month when I noticed $14.99 on my credit card. I searched my spam and trash to make sure I didn't miss a notice of this new fee, and didn't find a

CLASS ACTION COMPLAINT

single thing. This is fraud to start charging a subscription to existing customers without notice! Then I investigate, there is no way to cancel in the app and it took me quite a few minutes to figure out where it was on the website. Your service has been great, but I'll probably be looking elsewhere now due to these shady practices.

- May 16, 2020 by Denise Montanile:  I was billed twice in the amount of… I was billed twice in the amount of $14.99 for telemedicine services I never ordered. The first fraudulent charge was refunded in April and a second fraudulent charge was billed on May 15,2020. A complaint has been filed with the California Attorney General!

- May 5, 2020 by Landon Ouzts:  Great service to start then a wrong turn. Great service to start (2 months ago). I had a back injury and without Insurance needed to see a doctor. The doctor was great, and the appt quick . Issue resolved. However , one month later I was charged 14.99$. This is apparently their recurring fee once you sign up. I was unaware. No matter, the fee was charged and I called to cancel the service . I did not ask for a refund. I sat on hold for 30 minutes waiting to talk to someone .This is due to how they have set up their app and website (which don't allow you to cancel without calling ) it's a scheme to make it more difficult for customers to cancel the service. I'm sure one of their reps will respond and say " the app currently doesn't allow you to cancel but you can do it on a desktop". FALSE. I tried the app to no avail and tried the desktop only to be told that the system was unavailable to cancel at the time and I must call. So....anyway.... After my 30 minute wait I spoke to someone who assured me that the service would be cancelled. Add another 15 trying to cancel and I've spent 45 minutes trying to get something very simple accomplished. The end. Just kidding. They charged me again this month .... After all that. So, I've

sent an email and called my credit card to dispute the transaction. It's not about the 15$. It's about the lack of customer service and apparent disregard for my request to cancel. I signed no prolonged contract.I doubt any of that will make a difference , and I'll probably have to call and wait ...again. I figured the only control I have (without changing my credit card numbers) is to leave a review and show others how they've treated me. In the end this company does nothing but set up the appointment through the app. That part is great but apparently needs to be done by someone else .This should be a per appointment fee, not a recurring charge . I don't mind paying for the set up. I don't have your company on retainer and you've done nothing to help me at all.... The doctor did.

- April 28, 2020 by Zana Karimi:  This is truly a fake service and they… This is truly a fake service and they just want your money. I got charged for $99 on my first visit even though I had insurance. I was suffering from possible Covid19 and my online visit took about 10 minutes! I am now being charged monthly payments and there is no way for me to cancel. They don't answer phones or emails, and their online website does not work. THIS IS TRULY A SCAM, PEOPLE!!! I have to call my bank and ask them to block them from taking my money. Shame on you for doing this in this hard time when America is not in a very good condition.

https://www.trustpilot.com/review/www.plushcare.com?stars=1&stars=2.

## V.    PLAINTIFF ROBBINS' INDIVIDUAL ALLEGATIONS

24.    On or around March 9, 2020, while in Kern County, Plaintiff Robbins visited Defendants' website to book a virtual doctor's appointment.   Plaintiff Robbins booked the appointment through the cash pay option, authorizing a charge of $99.00 for the advertised fee for the no insurance virtual doctors' visit.

25.     Plaintiff Robbins provided debit card information directly to Defendants' website when booking her virtual appointment.

26.     A charge of $99.00 dollars by Defendants thereafter occurred on March 9, 2020.

27.     On April 7, 2020, Defendants debited another $14.99.  An additional debit occurred on May 7, 2020.

28.     On May 6, 2020, after noticing the unauthorized charge by PlushCare for $14.99, Plaintiff Robbins emailed Defendants stating as follows: "I was charged $14.99 today.  I paid in full for my last appointment a couple of months ago.  Why was I charged this fee??? Blessing Sarah Robbins."

29.     On May 7, 2020, Defendants' representative Janet Marquez responded as follows:

Hi Sarah,

Thank you for reaching out! We are currently moving to a subscription based service. This will allow us to continue to provide our patients with the very best telehealth services including: same or next day appointments, access to some of the top doctors in the country, and innovative digital health services such as in-app messaging.

Clinical outcomes and WOW'ing patients with amazing service are our highest priorities - that's why we created PlushCare; to provide more convenient and more affordable access to healthcare.

If you would like to unenroll from the Prime program just follow these simple steps on plushcare.com.

1. Login to your account

2. Click your name to open up the drop-down menu

3. Navigate to your Profile and click Payment and Insurance.

4. Choose to cancel your membership.

If you have any issues, please let me know.

In Good Health,

If you have any further questions please feel free to reply to this message or call us at (800) 221-5140.
In Good Health

Your PlushCare Team

30.     In response, Plaintiff Robbins advised that she was charged for a fee-based service without her notice or consent and requested the issue to be escalated. Defendants thereafter refunded Plaintiff Robbins for only one month of the service, despite such fees occurring more than once.

31.     On or around November of 2020, Plaintiff Robbins used Defendants' website again to book a virtual doctor's appointment.  Again, Plaintiff Robbins paid in full the $99.00 cash pay fee and did not consent to be placed into any auto renew subscription program.  However, on December 14, 2020, Plaintiff Robbins' debit card was charged $14.99.  Ms. Robbins card was charged again on January 12, 2021, February 12, 2021 and March 12, 2021.

32.     At no point did Defendants obtain Plaintiff Robbins affirmative consent to an agreement containing the automatic renewal offer terms or continuous service offer terms.

33.     At no point did Defendants disclose to Plaintiff Robbins that when booking a virtual doctors' appointment, she would automatically be enrolled into the subscription-based membership plan which auto renews every month until canceled.

34.     At no time relevant hereto did Defendants obtain express written authorization from Plaintiff Robbins to have money debited from her bank account, by any means, to pay for Defendants' membership service.

35.     Plaintiff Robbins did not voluntarily provide any written or oral permission, authorization or consent for PlushCare or any of their affiliates to collect any subscription charges for membership fees, automatic renewal of membership fees, or continuous services of a monthly membership.

36.     At no point did Defendants send an email to Plaintiff Robbins providing an acknowledgement that she had been enrolled in a monthly membership plan and the terms of membership.

37.     At no point did Defendants advise Plaintiff Robbins via email or otherwise with the automatic renewal or continuous service offer terms, cancellation policy, nor did it provide information regarding how to cancel.  Defendants further failed to provide a toll-free telephone number, electronic mail address, or postal address, or another cost-effective, timely, and easy-to-use mechanism for cancellation of her membership.

38.     If Plaintiff Robbins had known that Defendants were going to enroll her in an automatically renewing membership program that would result in subsequent charges, Plaintiff Robbins would have either not proceeded with the virtual doctor's visit in the first place, or would have taken steps to avoid becoming enrolled in such a membership program, or would have cancelled before any subsequent charge, such that Plaintiff Robbins would not have paid money to Defendants for such membership program or for purported renewal charges.

## V.

## VII.   CLASS ALLEGATIONS

39.     Plaintiff brings this class action lawsuit individually and on behalf of the proposed class under Rule 23 of the Federal Rules of Civil Procedure.

**Nationwide EFTA Class**:

All persons in the US whose debit card and/or bank account was charged for monthly membership fees on or

after May 7, 2017 after booking an appointment.

**California Class**:

> All persons within California who, within the applicable limitations period, were enrolled by Defendants in their membership program and charged monthly membership fees after booking an appointment.

40.     Excluded from the classes are the following individuals: officers and directors of Defendants and their parents, subsidiaries, affiliates, and any entity in which Defendants have a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

41.     Plaintiff reserves the right to modify or amend the definitions of the proposed class before the Court determines whether certification is appropriate.

42.     <u>Numerosity</u>. The members of the class are so numerous that a joinder of all members is impracticable.  While the exact number of class members is unknown to Plaintiff at this time, Plaintiff believes the class numbers in the tens of thousands, if not more.

43.     <u>Typicality</u>. Plaintiff's claims are typical of the claims of the class members because, among other things, Plaintiff sustained similar injuries to that of class members as a result of Defendants' uniform wrongful conduct, and their legal claims all arise from the same events and wrongful conduct by Defendants.

44.     <u>Adequacy</u>.  Plaintiff will fairly and adequately protect the interests of the class members. Plaintiff's interests do not conflict with the interests of the class members and Plaintiff has retained counsel experienced in complex class action cases to prosecute this case on behalf of the class.

45.     <u>Commonality</u>. Common questions of law and fact exist as to all class members and predominate over any questions solely affecting individual members

of the class, including the following:

    i.    Whether Defendants uniform acts and practices violated EFTA;

    ii.    Whether Defendants failed to present the automatic renewal offer terms, or continuous service offer terms, in a clear and conspicuous manner before the subscription was purchased and in visual proximity to the request for consent to the offer;

    iii.    Whether Defendants enrolled Plaintiff and class members in an automatic renewal or continuous service program without first obtaining their affirmative consent to the automatic renewal offer terms or continuous service offer terms;

    iv.    Whether Defendants failed to provide an acknowledgment that included that automatic renewal or continuous service offer terms, cancellation policy, and information on how to cancel in a manner that is capable of being retained by Plaintiff and class members;

    v.    Whether Plaintiff and the class members are entitled to restitution or disgorgement of money paid;

    vi.    Whether Defendants' uniform acts and practices violated California's Automatic Renewal Law:

    vii.    Whether Defendants' auto-renewal conduct violates the CLRA;

    viii.    Whether Plaintiff and the class members are entitled to restitution pursuant to the UCL;

    ix.    Whether, as a result of Defendants' conduct, Plaintiff and the class members suffered injury; and

    x.    The nature of the relief, including equitable relief, to which Plaintiff and class Members are entitled.

46.    <u>Ascertainability</u>. Class members can easily be identified by an examination and analysis of the business records maintained by Defendants, among other records within Defendants' possession, custody, or control.

47. <u>Predominance</u>. The common issues of law and fact identified above predominate over any other questions affecting only individual members of the class. The class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' conduct.

48. <u>Superiority</u>. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since a joinder of all members is impracticable. Furthermore, as damages suffered by class members may be relatively small, the expense and burden of individual litigation make it impossible for class members to individually redress the wrongs done to them. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by the complex legal and factual issues of the case to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

49. Accordingly, this class action is properly brought and should be maintained as a class action because questions of law or fact common to class members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

50. This class action is also properly brought and should be maintained as a class action because Plaintiff seek injunctive relief and declaratory relief on behalf of the class members on grounds generally applicable to the proposed class. Certification is appropriate because Defendants have acted or refused to act in a manner that applies generally to the proposed class, making final declaratory or injunctive relief appropriate.

## FIRST CAUSE OF ACTION

### Violation of the Electronic Funds Transfer Act

### 15 U.S.C. 1693, *et seq.*

### *(On Behalf of Plaintiff and the Nationwide EFTA Class)*

51.   Plaintiff re-alleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

52.   Plaintiff seeks to recover for PlushCare's violations of the Electronic Funds Transfer Act on behalf of herself and the Nationwide EFTA Class.

53.   The EFTA provides a basic framework establishing the rights, liabilities, and responsibilities of participants in an electronic fund transfer system. 15 U.S.C. §§ 1693 *et seq*. The "primary objective" of the EFTA "is the provision of individual consumer rights." *Id*. § 1693(b).

54.   Any waiver of EFTA rights is void. "No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter." 15 U.S.C. § 1693l.

55.   PlushCare's transfers of money from the bank accounts of Plaintiff and members of the Nationwide EFTA Class, via their debit cards, as alleged herein, are "electronic fund transfers" within the meaning of the EFTA and the EFTA's implementing regulations, known as Regulation E and codified at 12 C.F.R. §§ 205 *et seq*. An "electronic fund transfer" means "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account." 15 U.S.C. § 1693a(7). The term is expressly defined to include "[t]ransfers resulting from debit card transactions, whether or not initiated through an electronic terminal." 12 C.F.R. § 205.3(b)(v).

56.   The EFTA defines the term "preauthorized electronic transfer" as "an

CLASS ACTION COMPLAINT

electronic fund transfer authorized in advance to recur at substantially regular intervals." 15 U.S.C. § 1693a(9). The Official Staff Interpretation of Regulation E describes a "preauthorized electronic transfer" as "one authorized by the consumer in advance of a transfer that will take place on a recurring basis, at substantially regular intervals, and will require no further action by the consumer to initiate the transfer." 12 C.F.R. Part 205, Supp. I, § 205.2(k), cmt. 1.

57.     Section 1693e(a) of the EFTA prohibits preauthorized electronic transfers without written authorization: "A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." 15 U.S.C. § 1693e(a). Similarly, Regulation E provides: "Preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer." 12 C.F.R. § 205.10(b).

58.     Plaintiff and members of the Nationwide EFTA Class each maintained an "account" as that term is defined in 15 U.S.C § 1693a(2) and are "consumers" within the meaning of 15 U.S.C. § 1693a(5).

59.     PlushCare uniformly and routinely initiated preauthorized electronic fund transfers and took money from the bank accounts of Plaintiff and members of the Nationwide EFTA Class without obtaining their written authorization for the transfers, as required by the EFTA and Regulation E. PlushCare also uniformly and routinely failed to provide a copy of any such written authorization to Plaintiff and the Nationwide EFTA Class members from whose bank accounts PlushCare took preauthorized electronic fund transfers for monthly membership fees.

60.     On April 7, 2020, May 7, 2020, December 14, 2021, January 12, 2021, February 12, 2021 and March 12, 2021, PlushCare took $14.99 from a bank account managed by Plaintiff via debit card. In none of these instances did PlushCare obtain Plaintiff's written authorization, nor did PlushCare provide Plaintiff with copies of

1    any such written authorizations.

2         61.   The Official Staff Interpretation of Regulation E explains, "when a

3    third-party payee," such as PlushCare, "fails to obtain the authorization in writing or

4    fails to give a copy to the consumer … it is the third-party payee that is in violation

5    of the regulation." 12 C.F.R. Part 205, Supp. I, § 205.10(b), cmt. 2.

6         62.   As a direct and proximate result of PlushCare's violations of the EFTA

7    and Regulation E, Plaintiff has suffered damages in the amount of the unauthorized

8    debits taken by PlushCare. 15 U.S.C. § 1693m. As a further direct and proximate

9    result of PlushCare's violations of the EFTA and Regulation E, Plaintiff and the

10   Nationwide EFTA Class members are entitled to recover statutory damages in the

11   amount of "the lesser of $500,000 or 1 per centum of the net worth of the defendant."

12   *Id*. § 1983m(a)(2)(B).

13        63.   Pursuant to 15 U.S.C. § 1693m, Plaintiff and the Nationwide EFTA

14   Class are also entitled to recover costs of suit and attorneys' fees from PlushCare.

### SECOND CAUSE OF ACTION

**Violation of the California's Unfair Competition Law**

**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

***(On Behalf of Plaintiff and the California Class)***

19        64.   Plaintiff re-alleges and incorporates by reference each and every

20   allegation contained elsewhere in this Complaint as if fully set forth herein.

21        65.   PlushCare is subject to California's Unfair Competition Law, Cal. Bus.

22   & Prof. Code §§ 17200, *et seq*. The UCL provides, in pertinent part: "Unfair

23   competition shall mean and include unlawful, unfair or fraudulent business

24   practices…"

25   *"Unfair" Prong*

26        66.   The UCL prohibits "unfair competition," which is broadly defined as

27   including "any unlawful, unfair or fraudulent business act or practice and unfair,

28   deceptive, untrue or misleading advertising and any act prohibited by Chapter 1

(commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Bus. & Prof. Code §17200.

67.     PlushCare's business practices, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

68.     PlushCare has made material misrepresentations and omissions, both directly and indirectly, related to their billing practices.

69.     As such, PlushCare has engaged in unfair or deceptive acts in violation of the UCL.

70.     PlushCare's unfair acts allege herein deceived and misled consumers. PlushCare has taken advantage of the lack of knowledge, ability, experience, or capacity of consumers to the detriment of those consumers.

71.     PlushCare's conduct also injures competing health service providers that do not engage in the same unfair and unethical behavior.

72.     PlushCare's violations were, and are, willful, deceptive, unfair, and unconscionable. PlushCare is aware of the violations but have failed to adequately and affirmatively take steps to cure the misconduct.

*"Fraudulent" Prong*

73.     Under the "fraudulent" prong, a business practice is prohibited if it is likely to mislead or deceive a reasonable consumer or, where the business practice is aimed at a particularly susceptible audience, a reasonable member of that target audience. *See Lavie v. Proctor & Gamble Co.,* 105 Cal.App.4th 496, 506-07 (2003).

74.     PlushCare's conduct with respect to enrolling consumers without their knowledge or consent into monthly automatic renewal of PlushCare's membership subscriptions as described herein violates the "fraudulent prong" of the UCL.  Such practices are likely to deceive members of the public.

75.     The UCL authorizes a civil enforcement action against "[a]ny person

who engages, has engaged, or proposes to engage in unfair competition." Bus. & Prof. Code §17203. "[P]erson" includes "natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons." *Id.* §17201.

76. PlushCare intentionally misleads and deceives consumers into believing they are only booking a virtual doctors' appointment via an insurance pay or a onetime self-pay of $99.00 then places the consumer into a monthly auto renewal membership program indefinitely.

77. Plaintiff and class members acted reasonably when they booked PlushCare service, not being aware PlushCare would automatically enroll them into a membership program.

78. Plaintiff and class members lost money or property as a result of PlushCare's UCL violations because they would not have booked an appointment for Defendants' services absent Defendant's representations and omission of a warning of the automatic renewal which they would be automatically entered into without consent or authorization.

*"Unlawful" Prong*

79. PlushCare's business practices, described herein, violated the "unlawful" prong of the UCL by violating the Automatic Renewal Law, Cal. Bus. Prof. Code, §17602.

80. Such conduct is ongoing and continues to date.

81. PlushCare's conduct further violates other applicable California regulations as alleged herein.

82. Plaintiff and class members are likely to continue to be damaged by PlushCare's deceptive practices thus injunctive relief enjoining PlushCare's deceptive practices is proper.

83. There were reasonably available alternatives to further PlushCare's legitimate business interests, other than the conduct described herein.

84.    PlushCare's practices are therefore unfair, unlawful, and fraudulent under Section 17200 *et. seq.* of the California Civil Code.

## THRID CAUSE OF ACTION

### Negligent Misrepresentation

### Cal. Civ. Code §§ 1709-1710

### *(On Behalf of Plaintiff and the California Class)*

85.    Plaintiff re-alleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

86.    PlushCare's practice of failing to advise consumers that they would enter into automatic renewals, failure to provide the acknowledgement required by the Automatic Renewal Law, and failure to provide an easy way to cancel as advertised concern material facts that influenced Plaintiff and the class members' subscription to the service.

87.    At the time PlushCare made the misrepresentations and omissions, Defendants knew or should have known that the misrepresentations and omissions were false, or Defendant made the misrepresentations and omissions without knowledge of their truth or veracity.

88.    Plaintiff and the class members reasonably, justifiably, and detrimentally relied on the misrepresentations and omissions and, as a proximate result thereof, have and will continue to suffer damages.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

### *(On Behalf of Plaintiffs, the California Class and the National EFTA Class)*

89.    Plaintiff re-alleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

90.    By failing to advise consumers that they would enter into automatic renewals, failure to provide the acknowledgement required by the Automatic Renewal Law, and failure to provide an easy way to cancel as advertised, PlushCare

was unjustly enriched at the expense of Plaintiff and class members. It would be inequitable, unjust, and unconscionable for PlushCare to retain the profit it received by unauthorized subscription payments.

91.    Plaintiff seeks disgorgement of all proceeds, profits, benefits, and other compensation obtained by PlushCare from their improper and unlawful membership subscription charges, as well as all other appropriate relief permitted by law of unjust enrichment, including reasonable attorneys' fees and costs of suit.

## FIFTH CAUSE OF ACTION

### Violation of the California's Consumers Legal Remedies Act

### Cal. Bus. & Prof. Code §§ 1750, *et seq.*

### *(On Behalf of Plaintiffs and the California Class)*

92.    Plaintiff re-alleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

93.    Cal. Civ. Code § 1770(a)(14) specifically prohibits companies from "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."

94.    Plaintiff Robbins and the Class members are "consumers" within the meaning of section 1761(d) of the Cal. Civ. Code in that the goods and/or services sought or acquired were for personal, family, or household purposes.

95.    Defendants' merchandise and membership program are "goods" or "services" within the meaning of section 1761(a)-(b) of the Cal. Civ. Code.

96.    The purchases and payments by Plaintiff Robbins and Class members are "transactions" within the meaning of section 1761(e) of the California Civil Code.

97.    Defendants have violated section 1770(a)(5) of the California Civil Code, by representing that Defendants' goods and services have certain characteristics that they do not have.

98.    Defendants failed to disclose that it would automatically place Plaintiff Robbins and Class membership on an autorenew membership would be

1  automatically renewed month to month.

2      99.   Defendants also violated, and continues to violate the CLRA by

3  representing that it has rights and remedies that it does not have, specifically that it

4  has the right to charge Plaintiff and class members' debit cards, credit cards, or third

5  party payment methods without first making the statutorily required disclosures

6  under the Automatic Renewal Law and obtaining their affirmative consent to the

7  agreement containing the automatic renewal terms and continuous offer terms, and

8  through other conduct described above, in violation of the Automatic Renewal Law.

9  PlushCare does not have the legal right to charge for these subscriptions because at

10  all relevant times, it was not in compliance with the Automatic Renewal Law.

11      100.   Plaintiff Robbins and members class reasonably relied upon

12  PlushCare's material misrepresentations and/or omissions to their detriment.  Had

13  PlushCare complied with its disclosure obligations under the Automatic Renewal

14  Law, Plaintiff Robbins and members of the class would not have booked a virtual

15  appointment with Defendants only to be automatically subscribed into Defendants'

16  membership program or would have cancelled their subscriptions prior to the

17  renewal of the subscriptions, so as not to incur additional fees.  As a result of

18  Defendants' conduct, Plaintiff and members of the class were damaged.

19      101.   On May 7, 2021, Plaintiff Robbins sent a CLRA notice letter to

20  Defendant which complies with California Civil Code § 1782(a).  Plaintiff sent

21  Defendants, individually and on behalf of the proposed class, a letter via Certified

22  Mail, advising Defendants that they are in violation of the CLRA and demanding

23  that they cease and desist from such violations, take appropriate corrective action,

24  and make full restitution by refunding monies received therefrom.

25      102.   Plaintiff Robbins, on behalf of herself and class, is therefore entitled to

26  maintain an action for damages under Civil Code §§ 1780 and 1781 and requests

27  injunctive relief and other relief that the Court deems proper, and reasonable

28  attorneys' fees and costs, as permitted by Civil Code §§ 1780 and 1782.  Such

injunctive relief includes requiring Defendants to (i) cease representing to consumers that Defendants are entitled to automatically renew their subscriptions; (ii) cease representing to consumers that they are not entitled to refunds of moneys paid to Defendants for the subscription; (iii) cease denying consumers requests for refunds that are allowable under the law; and (iv) fully comply with the automatic subscription law.

103.   Wherefore, Plaintiff seeks injunctive relief for PlushCare's violations of the CLRA. If PlushCare fails to take the corrective action detailed in Plaintiff's CLRA letter within thirty days of the date of the letter, then Plaintiff will seek leave to amend her complaint to add a claim for damages under the CLRA.

## SIXTH CAUSE OF ACTION

### False Advertising

### Cal. Bus. & Prof. Code §§ 17600 *et seq.* and 17535

### *(On Behalf of Plaintiff and the California Class)*

104.   Plaintiff re-alleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

105.  Plushcare has enrolled consumers, including Plaintiff and class members, in automatic renewal programs and/or continuous service programs and have (a) failed to present the automatic renewal or continuous service offer in a clear and conspicuous manned before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer, in violation of § 17602(a)(1); (b) charging the consumer's credit or debit card or the consumer's third-party payment account for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosures of the automatic renewal offer terms or continue service offer terms, in violation of § 17602(a)(2); and (c) failed to provide an acknowledgment that includes the required clear and conspicuous disclosure of automatic renewal or

continuous service offer terms, cancellation policy, information regarding how to cancel, and a toll-free telephone number, electronic mail address, postal address or other mechanism for cancellation, in violation of § 17602(a)(3) and § 17602(b).

106.   Plaintiff and class members have suffered injury in fact and lost money or property as a result of Defendants' violation of Automatic Renewal Law.

107.   Pursuant to § 17603, all goods received by Plaintiffs and class members are deemed to be an unconditional gift.

108.   Pursuant to § 17535, Plaintiff and class members are entitled to restitution of all amounts that Defendants charged to Plaintiff's and class members' credit cards, debit card, or thirty-party payment accounts.

109.   Unless enjoined and restrained by this Court, Defendants will continue the unlawful conduct alleged herein. Pursuant to § 17535, Plaintiff seek a public injunction for the benefit of the general public of the State of California.

### SEVENTH CAUSE OF ACTION

### Theft

### Cal. Penal Code § 496

### *(On Behalf of Plaintiff and the California Class)*

110.   Plaintiff re-allege and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

111.   Penal Code § 496 states in pertinent part:

"(a) Every person who . . . receives any property ... that has been obtained in any manner constituting theft . . . knowing the property to be so . . . obtained, or who withholds, or aids in, withholding any property from the owner, knowing the property to be so ... obtained, shall be punished [description of criminal punishments].

…

(c) Any person who has been injured by a violation of subdivision ... may bring an action for three times the amount of actual damages ... costs of suit,

and reasonable attorney's fees."

112.   Theft, as described in Cal. Penal Code § 484, subdivision (a) includes the following:

"Every person … who shall knowingly and designedly, by any false of fraudulent representation or pretense, defraud any other person of money . . . is guilty of theft."

113.   Plaintiff alleges that her property and the property of members of the class was obtained by Defendants in a manner constituting theft or was withheld from Plaintiff and the class by Defendants with the knowledge that the property had been obtained in a manner constituting theft.

114.   Defendants created, implemented and/or participating in a systematic and uniform scheme to obtain money by unlawful means through a series of unlawful acts based upon false representations or pretenses as follows:

(a) Defendants unlawfully enrolled consumers in their automatic renewal program without requesting their consent or obtaining their affirmative consent in violation of § 17602 of the Automatic Renewal Law;

(b) In furtherance of its violation of § 17602 of the Automatic Renewal Law, Defendants created and implemented the false pretense to consumers that consumers were obligated to pay for each month prior to cancellation contrary to § 17603 of the Automatic Renewal Law which provides that all merchandise sold pursuant to an unlawful automatic renewal "shall for all purposes be deemed an unconditional gift to the consumer.";

(c) In furtherance of its violation of § 17602 of the Automatic Renewal Law and in furtherance of and as part of their scheme to unlawfully enroll consumers in their automatic renewal program and to obtain money from consumers, Defendants debited or charged consumer accounts on the false pretense that consumers were validly enrolled in the Defendants' automatic renewal program and the consumer's enrollment in the

CLASS ACTION COMPLAINT

automatic renewal program legally allowed Defendants to debit or charge their accounts;

(d) In furtherance of its violation of § 17602 and 17603 of the Automatic Renewal Law, Defendants refused to return money to consumers for its subscription service paid or available to the consumer prior to cancellation based on the false pretense that consumers were legally obligated to pay for Defendants' subscription service prior to the cancellation.

(e) Defendants' collection of money from consumers for its subscription service prior to the consumer's request for cancellation was a systematic practice applied uniformly to all consumers and was based upon the Defendants' uniform and false pretense to all consumers that Defendants was entitled to keep the money debited for its service prior to cancellation, even though Defendants knew that upon cancellation, all consumers were entitled to a complete refund of all monies pursuant to ARL.

115.   As a result of Defendants' unlawful conduct, Plaintiff and the class members were charged a monthly or annual fee and were damaged by their loss of money obtained or withheld by Defendants in furtherance of a scheme and artifice to obtain and withhold money based upon false representations and pretenses.

## EIGHTH CAUSE OF ACTION

### Conversion

*(On Behalf of Plaintiff, the California Class and the National EFTA Class)*

116.   Plaintiff re-alleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

117.   Defendants have enrolled consumers, including Plaintiff and class members, in automatic renewal programs and/or continuous service programs and have (a) failed to present the automatic renewal or continuous service offer in a clear and conspicuous manned before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal

proximity, to the request for consent to the offer, in violation of § 17602(a)(1); (b) charging the consumer's credit or debit card or the consumer's third-party payment account for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosures of the automatic renewal offer terms or continue service offer terms, in violation of § 17602(a)(2); and (c) failed to provide an acknowledgment that includes the required clear and conspicuous disclosure of automatic renewal or continuous service offer terms, cancellation policy, information regarding how to cancel, and a toll-free telephone number, electronic mail address, postal address or other mechanism for cancellation, in violation of § 17602(a)(3) and § 17602(b).

118.   Plaintiff and class members have suffered injury in fact and lost money or property as a result of Defendants' violation of Automatic Renewal Law.

119.   Pursuant to § 17603, all goods received by Plaintiffs and class members are deemed to be an unconditional gift.

120.   Pursuant to § 17535, Defendants' collection and retention of money resulted in the wrongful exercise of dominion over property belonging to Plaintiff and the class and Plaintiff and class members are entitled to restitution of all amounts that Defendants charged to Plaintiff and class members' credit cards, debit card, or thirty-party payment accounts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all class members proposed in this Complaint, respectfully request that the Court enter a judgment in their favor and against Defendants, as follows:

A. Determining that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure and appointing them and their Counsel to represent the class;

B. Requiring Defendants beat the cost of Class notice;

C. Finding Defendants' conduct was unlawful as alleged herein;

C. Enjoining Defendants from engaging in the wrongful conduct complained of herein, and as to violations of the CLRA.  As to Plaintiff's CLRA claim, if Defendants fail to take the corrective action detailed in Plaintiff's CLRA letter within thirty days of the date of the letter, then Plaintiff will seek leave to amend their complaint to add a claim for damages under the CLRA;

D. Requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

E. Awarding Plaintiff and class members actual damages, compensatory damages, punitive damages, statutory damages, and statutory penalties, in an amount to be determined;

F. Awarding Plaintiff and class members costs of suit and attorneys' fees, as allowable by law; and,

G. Granting such other and further relief as this court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable.

DATED: May 7, 2021

Respectfully submitted,
*/s/ Ronald A. Marron*
Ronald A. Marron
**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON
*ron@consumersadvocates.com*
ALEXIS M. WOOD
*alexis@consumersadvocates.com*
KAS L. GALLUCCI
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorney for Plaintiff and the Proposed Class***