1  TYLER G. NEWBY (CSB No. 205790)
   tnewby@fenwick.com
2  KIMBERLY CULP (CSB No. 238839)
   kculp@fenwick.com
3  ETHAN M. THOMAS (CSB No. 338062)
   ethomas@fenwick.com
4  FENWICK & WEST LLP
   555 California Street, 12th Floor
5  San Francisco, CA  94104
   Telephone:    415.875.2300
6  Facsimile:     415.281.1350

7  Attorneys for Defendants
   PLUSHCARE, INC. and
8  PLUSHCARE OF CALIFORNIA, INC., A.P.C.

9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                SAN FRANCISCO DIVISION

13

14  SARAH ROBBINS, individually and on behalf      Case No.: 3:21-cv-03444-MMC-LB
    of all others similarly situated,
15                                                 **DEFENDANTS PLUSHCARE, INC.
                    Plaintiff,                      AND PLUSHCARE OF CALIFORNIA,
16                                                  INC., A.P.C.'S NOTICE OF MOTION
           v.                                       AND MOTION TO DISMISS
17                                                  COMPLAINT PURSUANT TO FED. R.
    PLUSHCARE, INC. and PLUSHCARE OF                CIV. P. 12(b)(6)**
18  CALIFORNIA, INC., A.P.C.,
                                                   Date:     September 24, 2021
19                  Defendants.                    Time:     9:00 a.m.
                                                   Dept:     Courtroom 7, 19th Floor
20                                                 Judge:    Judge Maxine M. Chesney

21

22

23              <u>**NOTICE OF MOTION AND MOTION**</u>

24  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

25       PLEASE TAKE NOTICE that on September 24, 2021 at 9:00 a.m., or as soon thereafter as

26  counsel may be heard, in the courtroom of the Honorable Maxine M. Chesney, located at

27  Courtroom 7 – 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants

28
    PLUSHCARE'S NOTICE OF MOTION
    AND MOTION TO DISMISS; MEMO OF
    POINTS & AUTHORITIES                                   Case No.: 3:21-cv-03444-MMC-LB

FENWICK & WEST LLP
ATTORNEYS AT LAW

PlushCare, Inc. and PlushCare of California, Inc. A.P.C. (collectively, "PlushCare") will and hereby do move the Court for an order dismissing with prejudice Plaintiff Sarah Robbins's ("Ms. Robbins" or "Plaintiff") causes of action for violation of the Electronic Funds Transfer Act (first cause of action), violation of the California Unfair Competition Law (second cause of action), negligent misrepresentation (third cause of action), unjust enrichment (fourth cause of action), violation of the California Consumers Legal Remedies Act (fifth cause of action), false advertising (sixth cause of action), theft (seventh cause of action), and conversion (eighth cause of action) set forth in the Complaint (Dkt. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff fails to plead facts sufficient to state a claim upon which relief may be granted with respect to all eight causes of action.  The Complaint should be dismissed with prejudice because every cause of action fails to state a claim upon which relief can be granted.

This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities; the concurrently filed Request for Judicial Notice, Declaration of Abhi Pathak, and exhibits attached thereto; the papers on file; any Reply which PlushCare may file in support of this Motion; and any evidence and argument presented to the Court.

Dated:   July 26, 2021                          FENWICK & WEST LLP


By: */s/ Tyler G. Newby*
　　Tyler G. Newby
　　tnewby@fenwick.com
　　Kimberly Culp
　　kculp@fenwick.com
　　Ethan M. Thomas
　　ethomas@fenwick.com

　　Attorneys for Defendants
　　PLUSHCARE, INC. and PLUSHCARE OF
　　CALIFORNIA, INC., A.P.C.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

# <u>TABLE OF CONTENTS</u>

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.  INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF ISSUES TO BE DECIDED ................................................. 2

III.  STATEMENT OF FACTS .................................................................................. 3

    A.  PlushCare ............................................................................................. 3

    B.  Sarah Robbins ...................................................................................... 3

    C.  Sarah Robbins' Registration in PlushCare's Monthly Membership Service .......... 4

    D.  PlushCare Terms of Use ...................................................................... 8

IV.  LEGAL STANDARD ......................................................................................... 9

V.  ARGUMENT ..................................................................................................... 10

    A.  Plaintiff Has Failed to State a Claim for Violation of the California Unfair Competition Law (Second Cause of Action). ......................................................... 10

    B.  Plaintiff Has Failed to State a Claim Under the California Consumers Legal Remedies Act (Fifth Cause of Action). ................................................................... 18

    C.  Plaintiff's Remaining State-Law Claims Are Derivative of the Inadequately Alleged Violation of the Automatic Renewal Law, and Accordingly Must Be Dismissed (Third, Fourth, Sixth, Seventh, and Eighth Causes of Action) ...................................................................................................... 20

    D.  Plaintiff Has Failed State a Claim Under the Electronic Fund Transfer Act (First Cause of Action). ............................................................................................. 20

VI.  CONCLUSION .................................................................................................. 25

1

## <u>TABLE OF AUTHORITIES</u>

2

### CASES

3  *Arnold v. Hearst Mag. Media, Inc.*,
       No. 19-cv-1969-WQH-MDD, 2020 WL 3469367 (S.D. Cal. June 25, 2020) ..............12, 18, 19

4  *Ashcroft v. Iqbal*,
5      556 U.S. 662 (2009) ...............................................................................................................10

6  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
       20 Cal. 4th 163 (1999) ..........................................................................................................11

7  *Chamberlan v. Ford Motor Co.*,
8      369 F. Supp. 2d 1138 (N.D. Cal. 2005) .................................................................................18

9  *Daugherty v. Am. Honda Motor Co., Inc.*,
       144 Cal. App. 4th 824 (2006)................................................................................................19

10 *Drum v. San Fernando Valley Bar Ass'n*,
11     182 Cal. App. 4th 247 (2010) ...............................................................................................16

12 *Fulinara v. Bank of New York Mellon*,
       No. 13-cv-3963-HRL, 2014 WL 4802260 (N.D. Cal. Sept. 25, 2014)..............................10, 17

13 *Hall v. Time, Inc.*,
14     No. 19-cv-1901153-CJC-ADSx, 2020 WL 2303088 (C.D. Cal. Mar. 13, 2020),
       *aff'd*, No. 20-55354, 2021 WL 2071991 (9th Cir. May 24, 2021)........................12, 14, 15, 20

15 *Hall v. Time, Inc.*,
16     No. 20-55354, 2021 WL 2071991 (9th Cir. May 24, 2021) ....................................................14

17 *Haskins v. Symantec Corp.*,
       654 F. App'x 338 (9th Cir. 2016) ...........................................................................................17

18 *In re Vistaprint Corp Mktg. & Sales Pracs. Litig.*,
19     No. MDL 4:08-MD-1994, 2009 WL 2884727 (S.D. Tex. Aug. 31, 2009), *aff'd*
       *sub nom. Bott v. Vistaprint USA Inc.*, 392 F. App'x 327 (5th Cir. 2010) ....................21, 22, 23

20 *L.S. v. Webloyalty.com, Inc.*,
21     673 F. App'x 100 (2d Cir. 2016)......................................................................................22, 23

22 *L.S. v. Webloyalty.com, Inc.*,
       954 F.3d 110 (2d Cir. 2020)..................................................................................................23

23 *Lavie v. Procter & Gamble Co.*,
24     105 Cal. App. 4th 496 (2003)................................................................................................17

25 *Linear Tech. Corp. v. Applied Materials, Inc.*,
       152 Cal. App. 4th 115 (2007)................................................................................................16

26 *Mass. Mut. Life Ins. Co. v. Super. Ct.*,
27     97 Cal. App. 4th 1282 (2002)................................................................................................19

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Shaw v. Hahn*,
      56 F.3d 1128 (9th Cir. 1995)..................................................................10

*Sprewell v. Golden State Warriors*,
      266 F.3d 979 (9th Cir. 2000), *opinion amended on denial of reh'g,* 275 F.3d
      1187 (9th Cir. 2001).............................................................................10

*Steckman v. Hart Brewing Inc.*,
      143 F.3d 1293 (9th Cir.1998)............................................................3, 10

*Tomek v. Apple Inc.*,
      636 F. App'x 712 (9th Cir. 2016) .........................................................17

*Vess v. Ciba-Geigy Corp. USA*,
      317 F.3d 1097 (9th Cir. 2003)..........................................................17, 19

*Warner v. Tinder Inc.*,
      105 F. Supp. 3d 1083 (C.D. Cal. 2015)...............................................21, 23

*Weisbuch v. City of L.A.*,
      119 F.3d 778 (9th Cir. 1997)................................................................10

**STATUTES**

California Automatic Renewal Law, Cal. Bus. & Prof. Code §§ 17600 *et. seq.* ...................*passim*

California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*...........................18, 19

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*.......................*passim*

Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.* .......................................*passim*

**OTHER AUTHORITIES**

12 C.F.R. § 205.10 ...............................................................................20, 21

Fed. R. Civ. P. 9(b) .............................................................................17, 18, 19

Fed. R. Civ. P. 12(b)(6).........................................................................2, 9, 10

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Despite enrolling in PlushCare's membership-based online healthcare service not once, but twice, and consenting to that membership each time, Plaintiff now claims that she was somehow deceived into paying for a PlushCare membership.  Because PlushCare clearly and conspicuously disclosed its membership payment terms and obtained appropriate authorization to bill her for that service when Plaintiff enrolled, Plaintiff's eight causes of action fail as a matter of law.  PlushCare therefore requests that the Court dismiss the Complaint.

PlushCare allows consumers — with or without insurance — to receive high quality remote, online primary and mental health care.  PlushCare's membership-based services gives its users access to same-day online appointments with doctors and mental health professionals, unlimited messaging with the customer's care team, and online access to a support team for issues such as billing questions and referrals to specialists.  PlushCare clearly and conspicuously discloses the payment terms of its membership service on its website and in its mobile app before a customer enters their payment information and authorizes payment.  PlushCare does not obscure or minimize the membership terms.  To the contrary, it discloses those terms in contrasting colors and in a section that is set off from other text in a way that calls attention to the membership terms.  PlushCare also describes its membership terms in its Terms of Use ("TOUs"), which are accessible at the bottom of every page of the plushcare.com website.  Users agree to the TOUs when they create an account.

Plaintiff subscribed to this membership healthcare service not once but *twice*, the second time being *after* requesting and receiving a refund for her first enrollment.  Nevertheless, she now claims that PlushCare intends to defraud its consumers into membership enrollment.  There is no question that when Ms. Robbins signed up for membership the second time, she was aware of the existence of the membership and could not have been defrauded.  But, regardless, any claim that she was deceived by the sign-up flow is belied by the facts pled and of which the Court can take judicial notice.  Putting aside Ms. Robbins' unique circumstance, PlushCare's sign-up flow

complies with all applicable laws because PlushCare's membership sign-up process clearly and conspicuously discloses the automatic renewal terms, obtains patients' affirmative consent before they enroll, provides an acknowledgement of those terms, and offers mechanisms for simple cancellation.

Each one of Ms. Robbins' California-law claims are premised (in whole or in part) on alleged violations of the California Automatic Renewal Law ("ARL"), which does not itself contain a private cause of action.  Because PlushCare complies with the ARL, each cause of action predicated on a violation of the ARL should be dismissed with prejudice.

Similarly, because Ms. Robbins authorized the membership transaction and was provided with a copy of her authorization, Ms. Robbins fails to state a claim under the Electronic Fund Transfer Act ("EFTA").  As a result, the Court should dismiss Ms. Robbins' Complaint in its entirety with prejudice.

## II.    STATEMENT OF ISSUES TO BE DECIDED

Whether the Complaint fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) as to all eight causes of action predicated upon an alleged violation of the California Automatic Renewal Law, Cal. Bus. & Prof. Code §§ 17600 *et. seq.*, when PlushCare clearly and conspicuously disclosed the terms of the subscription, obtained Ms. Robbins' affirmative consent to those terms, provided her with an acknowledgment of those terms, and provided her with a simple means to cancel her membership.

Whether the Complaint fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) under the Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.*, because PlushCare obtained Ms. Robbins' authorization for the transaction and provided her with a copy of the authorization.

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

### III.   STATEMENT OF FACTS[1]

#### A.   PlushCare

PlushCare is a service designed to provide patients with quality medical care from their computers or mobile devices.  Compl. ¶¶ 1, 14.  Appointments are booked and conducted remotely, and patients can receive follow-up treatment or prescriptions at a local pharmacy.  *Id.*

Both insured and uninsured PlushCare users may book appointments and receive remote primary medical and mental health care for the cost of their copay or a fixed fee, respectively.  Compl. ¶ 17.  Additionally, members receive a host of online information, same-day appointments, and unlimited in-app messaging with an online medical care team outside the cost of an appointment.  Compl. ¶ 17, 29.  The cost for the monthly membership service is $14.99/month,[2] and patients are able to use the service for free during an initial 30-day trial period.  Compl. ¶ 17.  Users who cancel within the 30-day free trial period are not charged any membership fees.  Compl. ¶ 18.

#### B.   Sarah Robbins

Plaintiff Sarah Robbins created a PlushCare account and alleges she booked an appointment on www.plushcare.com on or around March 9, 2020.  Compl. ¶ 24.  To do so, she proceeded through the prompts described below and was shown a $99 out-of-pocket price due upon booking alongside a free trial for a membership that thereafter billed $14.99 monthly until cancelled.  Compl. ¶ 17, 24.  Plaintiff concedes that the screens described below — including the text "You pay $14.99/mo after 30 days.  Recurring billing.  Cancel anytime.  Learn more." — were shown to her upon booking her appointment and enrolling in membership.  Compl. ¶ 17.

---

[1] PlushCare concurrently filed a Request for Judicial Notice wherein it asks the Court to take judicial notice of the PlushCare sign-up screens.  On a Motion to Dismiss, the Court may consider "documents referred to in the complaint" or documents that are proper subjects of judicial notice.  *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295 (9th Cir.1998).

Citations of the form "**Ex. __**" refer to the concurrently filed Declaration of Abhi Pathak in support of PlushCare's Request for Judicial Notice.

[2] PlushCare offers monthly and annual membership options.  Ex. 3; *see also* Compl. ¶ 115.  Ms. Robbins chose to enroll in the monthly membership.  Compl. ¶¶ 33, 35.

Nevertheless, on May 6, 2020, Ms. Robbins reached out to PlushCare's customer service team to request a refund of $14.99. Compl. ¶ 28. PlushCare refunded that amount the next day. Compl. ¶¶ 29–30. The PlushCare representative that she emailed explained to her that PlushCare was a "subscription based service" which allowed PlushCare to provide "patients with the very best telehealth services including: same or next day appointments, access to some of the top doctors in the country, and innovative digital health services such as in-app messaging." Compl. ¶ 29. Plaintiff therefore was able to cancel her membership and receive a refund by email — the same process set forth in the TOUs, and one of multiple methods for cancelling a membership. *See* Compl. ¶ 18 (text displayed during sign-up explaining another method for cancelling membership is in the "Your Profile" section of Ms. Robbins' account); Ex. 5 at 2–3 (TOUs describing in detail how to cancel membership and obtain a refund).

Knowing that PlushCare was a membership service and after having canceled it in May 2020, Plaintiff re-activated her PlushCare membership in or around November 2020. Compl. ¶ 31. As before, Plaintiff went through the same enrollment steps which displayed to her the membership terms. Plaintiff does not allege that she ever attempted to cancel or receive a refund for any portion of this second membership, although she could have canceled by email, as she had before, or through her account profile. *See* Compl. ¶ 18; Ex. 5 at 2–3.

**C.     Sarah Robbins' Registration in PlushCare's Monthly Membership Service**

To use PlushCare's services, Ms. Robbins (like all PlushCare customers) created an account. To create an account, she affirmed her consent to PlushCare's TOUs. Compl. ¶ 15 ("By clicking "continue," you are agreeing to the PlushCare Terms of Use, Privacy Policy & Telehealth Consent Policy"); *see* Ex. 1 (image of the screen presenting this language).

To sign up for an appointment and enroll in a membership with PlushCare, Plaintiff proceeded to input information into and click confirmations through five simple screens on PlushCare's website. Compl. ¶ 15. The first and second screens collect insurance information. *Id.* The third screen allows the patient to select a date, and the fourth screen allows the patient to provide basic personal information. *Id.* The fifth screen discloses the costs and terms of booking

FENWICK & WEST LLP
ATTORNEYS AT LAW

an appointment and enrolling in the membership service (including information about how membership with the service automatically renews on a monthly basis), allows the patient to input payment information, and finally allows the patient to enroll and book the appointment.  Compl. ¶ 17.

The fifth screen Ms. Robbins saw and clicked through to complete the booking was substantially similar to the following:

FENWICK & WEST LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW

**Review order summary**

**Monthly Membership**

30-day FREE trial

$14.99 billed after 30 days
✓ Same day appointments
✓ In-app messaging
✓ Online care team

Recurring billing. Cancel anytime.
Learn More. View terms of service.

**Services**

Doctor's visit                                   $99

100% money-back guarantee

**Total today**                               $99

**Payment**

Card number                    MM / YY  CVC

+ REFERRAL CODE

**Reason for visit**

If this is an emergency, please call 911 or go to the
nearest emergency room.

I have a sore throat and cough.

**Book Appointment**

If you can't make your appointment, you will need to
cancel or reschedule at least 2 hours in advance of
your appointment start time to avoid a fee.

🔒 PlushCare is secure & your details are protected

Ex. 2; Compl. ¶ 17 (describing the same screen); *see also* Ex. 9.[3]  This screen, titled "Review order

[3] With respect to her enrollment process, Plaintiff alleges that her "claims are typical of the claims of the class members" and cites to the enrollment process currently live on PlushCare's website, Compl. ¶¶ 15–17, 43, thereby acknowledging that the screens she viewed were similar to the those online today.  *Compare* Exs. 2, 3 *with* Exs. 9, 10.  Although dismissal is warranted based merely

PLUSHCARE'S NOTICE OF MOTION
AND MOTION TO DISMISS; MEMO OF
POINTS & AUTHORITIES

6

Case No.: 3:21-cv-03444-MMC-LB

summary," begins with a box containing the boldfaced words "**Monthly Membership**," followed

by the words "30-day FREE trial."  After that is the following text:

      $14.99 billed after 30 days.

      • 40% off future visits

      • Same day appointments

      • In-app messaging

In the next section of the same first box is the text "Recurring billing at $14.99.  Cancel anytime.

Learn More."  Compl. ¶ 17; *see* Exs. 2, 9.   The phrase "Learn more" is a hyperlink which displays

the following screen if selected:



FENWICK & WEST LLP
ATTORNEYS AT LAW

on Plaintiff's allegations, dismissal is further warranted regardless of which set of screens Plaintiff
bases her claims on.

PLUSHCARE'S NOTICE OF MOTION
AND MOTION TO DISMISS; MEMO OF
POINTS & AUTHORITIES

Case No.: 3:21-cv-03444-MMC-LB

This screen presents membership options ("Annual / $99/year / Save 45% / Billed annually" or "Monthly / $14.99/month / Billed monthly"), benefits of membership, and then the following text:

> Your membership continues until cancelled. If you do not wish to continue to pay $14.99/month, you may cancel anytime by visiting Your Profile > Payment and Insurance and adjusting your membership settings.

It then explains that membership is not required, and Ms. Robbins could book her appointment without enrolling by calling the toll-free number provided.[4]  Compl. ¶¶ 17-18; Exs. 2, 3; *see also* Exs. 9–10.

In the second box, after the monthly membership, Ms. Robbins was presented with "**Services**" — in her case, a doctor's visit at $99 with a "100% money-back guarantee."  Compl. ¶ 17; Ex. 2 (emphasis in original); *see also* Ex. 9.  The third box is titled "**Total today**" and displays the cost of the appointment Ms. Robbins booked.  Following that box is the text "100% money-back guarantee.  Cancel anytime."  *Id.*  Finally, the text "View Terms of Service" appears as a blue hyperlink to the PlushCare Terms of Use.[5]  *Id.*

After being presented with this disclosure on the "Review order summary" page that she was enrolling in a monthly membership, Ms. Robbins entered her payment information and selected "Book Appointment."  Compl ¶ 19; Ex. 2; *see also* Ex. 9.

**D.    PlushCare Terms of Use**

The sign-up process Plaintiff describes in her Complaint prominently features PlushCare's TOUs and requires acceptance of those terms as a condition to proceeding with the sign-up process. Compl. ¶ 15; Ex. 1.  Those terms contain a section entitled "Membership Fee."  This section discloses that:

> For our paid members, PlushCare will charge your Membership Fee to your designated billing account. You may select either a monthly or an annual Membership Fee. You agree to make the payment using your chosen payment method. IF YOUR ACCOUNT IS SUBJECT TO THE MEMBERSHIP FEE, YOU AUTHORIZE US TO CHARGE YOUR CHOSEN PAYMENT METHOD THE

---

[4] The membership nature of the service is displayed prominently on the website.  Ms. Robbins refers to a "How it works" section of the website Compl. ¶ 14, but neglects to mention that "Membership" is another item on the same banner.  Ex. 7 (PlushCare.com home page); Ex. 8 (PlushCare.com Membership page).

[5] The Terms of Use were previously called the Terms of Service.

FENWICK & WEST LLP
ATTORNEYS AT LAW

MEMBERSHIP FEE AT THE TIME OF INITIAL PAYMENT AND EACH RENEWAL, UNTIL YOU CANCEL. YOU MUST CANCEL YOUR MEMBERSHIP BEFORE IT RENEWS TO AVOID BEING CHARGED THE MEMBERSHIP FEE FOR THE NEXT RENEWAL TERM. YOU CAN CANCEL YOUR MEMBERSHIP AT ANY TIME BY CONTACTING US AT INFO@PLUSHCARE.COM. IF YOU CANCEL YOUR MEMBERSHIP AND YOUR SUBSCRIPTION TERM HAS NOT EXPIRED, YOU MAY CONTINUE TO USE THE SERVICES UNTIL THE END OF YOUR THEN-CURRENT MEMBERSHIP TERM AND YOUR MEMBERSHIP WILL NOT BE RENEWED AFTER YOUR THEN-CURRENT TERM EXPIRES. HOWEVER, YOU WON'T BE ELIGIBLE FOR A PRORATED REFUND OF ANY PORTION OF THE MEMBERSHIP FEE PAID FOR THE THEN-CURRENT MEMBERSHIP PERIOD.

Ex. 5.

The TOUs also contain a section, featured with a boldface and large-font title "**Free Trials and Other Promotions.**"  That section states:

ANY FREE TRIAL OR OTHER PROMOTION THAT PROVIDES PAID MEMBER-LEVEL ACCESS TO THE SERVICES MUST BE USED WITHIN THE SPECIFIED TIME OF THE TRIAL. IF YOU DO NOT WISH TO CONTINUE YOUR MEMBERSHIP, YOU MUST CANCEL YOUR TRIAL MEMBERSHIP BEFORE THE END OF THE TRIAL PERIOD IN ORDER TO AVOID BEING CHARGED THE MEMBERSHIP FEE, AS APPLICABLE. IF YOU CANCEL PRIOR TO THE END OF THE TRIAL PERIOD AND ARE INADVERTENTLY CHARGED FOR A MEMBERSHIP, PLEASE CONTACT US AT INFO@PLUSHCARE.COM FOR A REFUND.

*Id.*  Another section, titles "**Service Use Termination**" (with the title and entire section in boldface) states, in relevant part, that **"If you wish to terminate your membership, you can do so by contacting us via email at info@plushcare.com. If you terminate your membership, your membership will remain active until the end of your then-current membership period."** *Id.* at 2 (emphasis in original).[6]

## IV.   LEGAL STANDARD

A court may dismiss one or more claims of a complaint for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A claim cannot survive a motion to dismiss unless it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that

---

[6] With respect to PlushCare's Terms of Use, and as Plaintiff alleges that her "claims are typical of the claims of the class members," Compl. ¶ 43, the Terms of Use were materially consistent between what Ms. Robbins saw in 2020 and what presently exists on the Plushcare.com website. *Compare* Ex. 5 *with* Ex. 6.

FENWICK & WEST LLP
ATTORNEYS AT LAW

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the court must accept as true all factual allegations pleaded and construe them in the light most favorable to the nonmoving party, it "need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.  Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2000) (citation omitted), *opinion amended on denial of reh'g,* 275 F.3d 1187 (9th Cir. 2001).

Courts are "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint" or documents that are proper subjects of judicial notice, *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295 (9th Cir.1998), and they "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment.  *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.l (9th Cir. 1995).  "[A] plaintiff may plead herself out of court," if she "plead[s] facts which establish that [s]he cannot prevail" on her claim.  *Weisbuch v. City of L.A.*, 119 F.3d 778, 783 n.l (9th Cir. 1997) (internal quotation marks and citations omitted).

## V.   ARGUMENT

### A.   Plaintiff Has Failed to State a Claim for Violation of the California Unfair Competition Law (Second Cause of Action).

The California Unfair Competition law ("UCL") prohibits any "unlawful, unfair or fraudulent business practice." Cal. Bus. & Prof. Code § 17200.  Plaintiff alleges that PlushCare's membership sign-up process violates all three prongs of the statute, relying primarily on the California Automatic Renewal Law ("ARL"), Cal. Bus. Prof. Code §17602, to establish wrongdoing.

"A UCL claim must be dismissed if the plaintiff fails to state a claim for the predicate acts upon which [s]he bases the claim." *Fulinara v. Bank of New York Mellon*, No. 13-cv-3963-HRL, 2014 WL 4802260, at *3 (N.D. Cal. Sept. 25, 2014).  As explained below, Plaintiff fails to plead a violation of the ARL, and accordingly, all three of her arguments under the UCL fail as well.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

2

**1.     PlushCare's Membership Service Sign-Up Complies With the Automatic Renewal Law and is Not Unlawful Under the UCL.**

3     Rather than independently define unlawful conduct, the UCL "borrows violations of other

4   laws and treats them as unlawful practices that the unfair competition law makes independently

5   actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)

6   (internal quotation marks omitted).  Plaintiff's sole allegation under the "unlawful" prong of the

7   statute is that PlushCare "violat[ed] the Automatic Renewal Law, Cal. Bus. Prof. Code §17602."

8   Compl. ¶ 79.

9     The ARL contains four provisions that Plaintiff alleges are relevant here.  <u>First</u>, an automatic

10   renewal offer must be presented "in a clear and conspicuous manner before the subscription or

11   purchasing agreement is fulfilled and in visual proximity . . . to the request for consent to the offer."

12   Cal. Bus. Prof. Code § 17602(a)(1).  <u>Second</u>, before charging a customer's credit card, debit card,

13   or third-party account, the business must "obtain[] the consumer's affirmative consent to the

14   agreement containing the automatic renewal offer terms or continuous service offer terms.  *Id.*

15   § 17602(a)(2).  <u>Third</u>, the business must "provide an acknowledgement that includes the automatic

16   renewal or continuous service offer terms, cancellation policy, and information regarding how to

17   cancel in a manner that is capable of being retained by the consumer." *Id.* § 17602(a)(3).  If the

18   offer includes a free trial, the business "shall also disclose in the acknowledgement how to cancel,

19   and allow the consumer to cancel, the automatic renewal or continuous service before the consumer

20   pays for the goods or services." *Id.*  <u>Fourth</u>, the business "shall provide a toll-free telephone

21   number, electronic mail address, a postal address if the seller directly bills the consumer, or it shall

22   provide another cost-effective, timely, and easy-to-use mechanism for cancellation . . . ." *Id.*

23   § 17602(b).  PlushCare complies with each provision of the ARL.

24

**a.     The Offer Terms Are Presented in a Clear and Conspicuous Manner.**

25

26     Section 17602(a)(1) requires that the automatic renewal offer be presented "in a clear and

27   conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

proximity . . . to the request for consent to the offer."  Under the ARL, "clear and conspicuous" means "in larger type than the surrounding text, **or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks**, in a manner that clearly calls attention to the language."  Cal. Bus. Prof. Code § 17601(c) (emphasis added).  Plaintiff has not stated a claim under this provision.

Ms. Robbins makes no allegation that the terms were not presented in a clear and conspicuous manner, except by mere reference to the statutory language.  *See* Compl. ¶ 105, 117.  Tellingly, when describing the terms as they were presented to Ms. Robbins, the Complaint is silent as to *any* of the factors set forth by the statute.  *See* Compl. ¶ 17–18.  The text describing the terms of the renewal is presented in a different color, with the hyperlink to more detailed terms in a third color.  *See* Compl. ¶ 17 (purporting to recreate the screen and incorporating the screen by reference); Ex. 3.  The presentation of the "**Monthly Membership**" clearly calls attention to the language about the membership with set-offs from the other text and contrasting colors to create a visual box around the membership terms.  Compl. ¶ 17; Ex. 2 (emphasis in original).  Additionally, the "Book appointment" button and form for payment information appears on the same screen as the prices and subscription terms and *after* those prices and terms were presented to Ms. Robbins.  *Id.*; *see Hall v. Time, Inc.*, No. 19-cv-1901153-CJC-ADSx, 2020 WL 2303088, at *3 (C.D. Cal. Mar. 13, 2020), *aff'd*, No. 20-55354, 2021 WL 2071991 (9th Cir. May 24, 2021) ("Defendants' request for consent is less than forty words and one small image removed from the required notice.  This is plainly sufficient to satisfy the ARL's proximity requirement." (citation omitted)).  Plaintiff makes no allegation to the contrary.

Accordingly, Plaintiff does not and cannot plead sufficient facts to allow the court to infer "that the order forms failed to disclose the automatic renewal terms in larger or contrasting type, font, or color to the surrounding text, or set off from the surrounding text of the same size by symbols or other marks."  *Arnold v. Hearst Mag. Media, Inc.*, No. 19-cv-1969-WQH-MDD, 2020 WL 3469367, at *7 (S.D. Cal. June 25, 2020).

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

###    b.    PlushCare Obtained Plaintiff's Affirmative Consent Before Charging Her for Her Membership.

2

3    Section 17602(a)(2) requires "affirmative consent to the agreement containing the

4   automatic renewal offer terms or continuous service offer terms."  The Complaint's allegations do

5   not show that PlushCare failed to obtain Ms. Robins' affirmative consent.

6    When booking her appointment and enrolling in a monthly membership, Ms. Robbins was

7   prompted to create a profile.  Compl. ¶ 15.  Through this screen, she provided her name, date of

8   birth, gender, phone number, and email, and she created a password.  *Id.*; Ex. 1.  To proceed, she

9   clicked the "Continue" button, which was accompanied by the text: "By clicking "continue," you

10   are agreeing to the PlushCare Terms of Use, Privacy Policy & Telehealth Consent Policy."  Compl.

11   ¶ 15; Ex. 1.

12    Ms. Robbins was presented with the clear and conspicuous terms described above on a

13   "Review order summary" screen.  Compl. ¶¶ 16–17; Ex. 2.  She was shown the terms, cost, free

14   trial period, and renewal frequency of her "**Monthly Membership**" on this screen, including that

15   the membership entailed "[r]ecurring billing" and $14.99 billed after 30 days":

16

17

18

19

20



21

22

23

24

25   Ex. 2 (cropped to show relevant portion); Compl ¶ 17 (describing the same screen); *see also* Ex. 9.

26   She was also presented with a "Learn more" hyperlink, which further explained: "Your membership

27   continues until cancelled.  If you do not wish to continue to pay per month, you may cancel anytime

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

by visiting Your Profile > Payment and Insurance and adjusting your membership settings. . . . You can get limited access to PlushCare medical services with no member services mentioned above by calling us at 800-221-5140." Compl. ¶ 18; Ex. 3; *see also* Ex. 10.

Below this information about the monthly membership, Ms. Robbins was shown the "**Services**" for which she was paying upfront (a doctor's visit), and then her "**Total today**" of $99. Compl ¶ 17; Ex. 2 (emphases in original). Ms. Robbins was presented with these transaction terms followed by a form for her to add payment information if she wished to proceed. Ex. 2. At the bottom of the page, she was presented with a "Book Appointment" button that she used to complete the transaction and enrollment. Compl. ¶ 19; Ex. 2.

PlushCare thus obtained Ms. Robbins' affirmative consent to her enrollment in a monthly membership in at least two ways. First, Ms. Robbins affirmatively clicked the "Continue" button when creating a profile, thereby agreeing to the TOUs. Second, Ms. Robbins input her debit card information on the very same screen that clearly and conspicuously disclosed the free trial, monthly membership, recurring billing terms, and applicable TOUs — after those terms were presented to her, — and then proceeded to submit her order. PlushCare accordingly "conspicuously disclosed [its] renewal policy in plain language" and" Plaintiff affirmatively consented to the agreement containing those terms by entering her payment information and submitting her order after receiving notice of those terms." *Hall v. Time, Inc.*, 2020 WL 2303088, at *4 (citation omitted). The Ninth Circuit has affirmed that the ARL does not "require a consumer's affirmative consent to the automatic renewal offer terms, separate from and in addition to the *agreement containing* such automatic renewal offer terms." *Hall v. Time, Inc.*, No. 20-55354, 2021 WL 2071991, at *2 (9th Cir. May 24, 2021) (emphasis in original; citation and modifications omitted). This theory of liability thus fails as well.

### c.  PlushCare Provided Plaintiff with an Adequate Acknowledgement.

Plaintiff concedes she received notice of the terms of the subscription and automatic renewal prior to completing her transaction. Compl. ¶¶ 16–18.[7] The notice "explained in plain

---

[7] Plaintiff misreads the statute when she suggests PlushCare was required to send her a separate

FENWICK & WEST LLP
ATTORNEYS AT LAW

language that Plaintiff's subscription would be automatically renewed unless and until Plaintiff cancelled her subscription." *Hall v. Time, Inc.*, 2020 WL 2303088, at *4; Compl. ¶ 17 ("**Monthly Membership** . . . "$14.99 billed after 30 days . . . Recurring billing.  Cancel anytime.  Learn more." (emphasis on original); Ex. 2.  It also "provided information about how and when she could cancel." *Hall v. Time,* 2020 WL 2303088, at *4; Compl. ¶ 18 ("Your membership continues until cancelled. If you do not wish to continue to pay per month, you may cancel anytime . . . ." by visiting Your Profile > Payment and Insurance and adjusting your membership settings."); Ex. 3.  These same terms also clearly and conspicuously explained that that she would receive a free trial for 30 days (Compl. ¶ 17 ("30-day FREE trial"); Ex. 2), "but that her reoccurring rate would change before her second term." *Hall v. Time,* 2020 WL 2303088, at *4; Compl. ¶ 17 ("30-day FREE trial," "$14.99 billed after 30 days . . . Recurring billing.  Cancel anytime."); Ex. 2 (same); Ex. 9 (same); Compl ¶ 18 ("Your membership continues until cancelled."); Ex. 3 (same); Ex. 10 (same).

### d.    PlushCare Provided Cost-Effective, Timely, and Easy-to-Use Mechanisms for Cancellation.

Finally, Plaintiff sporadically cites § 17602(b), which requires businesses to "provide a toll-free telephone number, electronic mail address, a postal address if the seller directly bills the consumer," or "another cost-effective, timely, and easy-to-use mechanism for cancellation. However, she pleads no facts to support a claim that PlushCare does not comply with this provision. In fact, she concedes that PlushCare provided instructions for a "cost-effective, timely, and easy-to-use" method for cancellation: she would just have to tap "Profile" and then "Payment and Insurance" to cancel.  Compl. ¶ 18.  That same screen provided a toll-free telephone number.  *Id.*

Further, the TOUs (which are hyperlinked in the sign-up process), state "YOU CAN CANCEL YOUR MEMBERSHIP AT ANY TIME BY CONTACTING US AT INFO@PLUSHCARE.COM."  Ex. 5 at 3; *see also* Ex. 6.  The TOUs also make clear:

> IF YOU DO NOT WISH TO CONTINUE YOUR MEMBERSHIP, YOU MUST CANCEL YOUR TRIAL MEMBERSHIP BEFORE THE END OF THE TRIAL PERIOD IN ORDER TO AVOID BEING CHARGED THE MEMBERSHIP FEE,

acknowledgement after she booked her appointment.  Compl. ¶ 43.  That temporal requirement is nowhere to be found in the text.

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

AS APPLICABLE. IF YOU CANCEL PRIOR TO THE END OF THE TRIAL PERIOD AND ARE INADVERTENTLY CHARGED FOR A MEMBERSHIP, PLEASE CONTACT US AT INFO@PLUSHCARE.COM FOR A REFUND.

*Id.*  Plaintiff admits that she was in fact able to cancel her membership (and even obtain a refund) by emailing PlushCare customer support.  Compl. ¶ 28–30.

The only facts Plaintiff pleads in support of this claim actually undermine her position, and accordingly she has not pled a violation of this provision.

### 2.  Plaintiff Fails to Allege Any Facts Supporting Her Conclusory Statement that PlushCare's Service Is Unfair.

Next, Plaintiff nominally asserts that her claim is viable under the "unfair" prong of the UCL.  Compl. ¶¶ 66–72.  But these paragraphs consist only of conclusory averments that PlushCare's service is unfair as defined by the UCL.

"'Unfairness' under [the UCL] has been described as violating established public policy or 'is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits.'"  *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134 (2007).  Other California courts assess unfairness under a "three-part test: '(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided.'"  *Id.*

Plaintiff fails to allege any facts explaining how PlushCare's subscription service violates a legislative policy that is "tethered to specific constitutional, statutory, or regulatory provisions."  *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010).  To the contrary, as discussed above, PlushCare's enrollment process *complies* with the ARL.  Plaintiff's conclusory allegations also fail to the extent they merely proclaim that PlushCare's services are "immoral, unethical, oppressive, and unscrupulous."  *Id.*; *see also* Compl. ¶ 67.  Apparently premising this claim on her allegation that PlushCare violated the ARL — which it did not — Plaintiff does not explain how a membership service that complies with the ARL "offends public policy" and is unfair.  Nor does she plead any facts with respect to the actual injury incurred by patients as a result

1   of PlushCare's sign-up process, the benefits those same patients receive, the effect on competition,

2   or why patients could not have avoided any alleged harm by simply reading the sign-up text,

3   cancelling their membership if unwanted, or requesting a refund.  Because Plaintiff has set forth no

4   facts that would support a finding of unfairness under *either* test, her claim under this prong of the

5   statute fails as well.

6               **3.      Plaintiff Has Failed to Allege that PlushCare's Service Is Fraudulent.**

7               Plaintiff's allegation that PlushCare's conduct is fraudulent under the UCL must be pled

8   with particularity in accordance with the heightened pleading standard of Fed. R. Civ. P. 9(b).  *See*

9   *Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016).  Accordingly, Plaintiff must

10  plead specific facts showing that she "read and relied on a specific misrepresentation."  *Id.*

11  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the

12  misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  "[A]

13  fraudulent business practice is one that is likely to deceive members of the public."  *Fulinara v.*

14  *Bank of New York Mellon*, 2014 WL 4802260, at *3.  "[T]he standard applied in UCL and false

15  advertising cases is that of the ordinary consumer acting reasonably under the circumstances."

16  *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 512 (2003).  Plaintiff fails to satisfy Rule

17  9(b)'s heightened pleading requirement or identify a practice that is likely to deceive consumers.

18              Plaintiff has not identified a single misrepresentation in her Complaint that she claims to

19  have relied on and suffered cognizable injury as a result.  She alleges none of "the who, what, when,

20  where, and how" she claims she was defrauded by.  Additionally, she has "not alleged specific facts

21  that '[allow[] the court to draw the reasonable inference' that [PlushCare] knew it was issuing

22  misleading advertisements at the time' she enrolled."  *Tomek v. Apple Inc.*, 636 F. App'x 712, 713

23  (9th Cir. 2016) (affirming dismissal of claims under the UCL and California Legal Remedies Act).

24  This lack of specifically pled facts alone defeats her allegation of fraud.  To the extent Plaintiff

25  relies on her conclusory allegation that PlushCare "intentionally misleads and deceives customers"

26  into signing up for this service, Compl. ¶ 76, Plaintiff has pled no facts whatsoever from which the

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

court could plausibly infer intent to deceive (and *a fortiori* has failed to meet the heightened pleading standard of Rule 9(b)).

Even so, Plaintiff cannot plausibly allege that she was an ordinary consumer acting reasonably. Plaintiff initially signed up for an appointment and membership with PlushCare, cancelled that membership, and received a refund. A PlushCare customer service representative expressly explained the membership plan to her when providing the refund. Compl. ¶ 29. She then signed up *again* for a membership, knowing that it was a subscription-based service and that she would be billed monthly. A customer who is aware that a service is based on automatically billed monthly payments is not acting reasonably when they sign up for that service multiple times after already understanding the business model and receiving a full refund.

All three of Plaintiff's theories under the UCL fail as a matter of law, and the Second Cause of Action should be dismissed.

## B.   Plaintiff Has Failed to State a Claim Under the California Consumers Legal Remedies Act (Fifth Cause of Action).

Plaintiff's claim under the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*, is predicated at least in part on PlushCare's alleged violation of the ARL. Compl. ¶ 99. This theory of liability fails because Plaintiff has failed to allege a violation of the ARL. *Supra* Part V.A.1; *see also Arnold v. Hearst Mag. Media, Inc.*, No. 19-CV-1969-WQH-MDD, 2020 WL 3469367, at *9 (S.D. Cal. June 25, 2020) (dismissing CLRA claim for automatic renewal where "Plaintiffs fail to state facts that support an inference that Defendants failed to adequately disclose the terms of the automatic renewal program under the Automatic Renewal Law.").

To the extent Plaintiff alleges a standalone violation of the CLRA, the claim nonetheless fails. Plaintiff relies on Cal. Bus. & Prof. Code § 1770(a)(14), which prohibits "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law." CLRA claims sound in fraud and must be pled with particularity under Rule 9(b). *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144 (N.D. Cal. 2005). Rule

FENWICK & WEST LLP
ATTORNEYS AT LAW

9(b) requires plaintiffs to plead "the who, what, when, where, and how" of the alleged misconduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d at 1106.   Plaintiff must therefore allege a specific misrepresentation, reliance on that misrepresentation, and resulting injury. *Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1292 (2002).   "[A]lthough a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006).

Plaintiff fails to meet this high standard.  She has wholly failed to allege any "facts from which the Court can infer that Defendants made any representations to [her] that were false or misleading." *Arnold v. Hearst Mag. Media, Inc.*, 2020 WL 3469367, at *9.  Her only attempt to establish a violation of § 1770(a)(14) is to recite the language of the statute.  *See* Compl. ¶ 93.

Plaintiff also alleges — though it is unclear whether she contends that this establishes a violation of § 1770(a)(14) —that:

> Defendants also violated, and continues to violate the CLRA by representing that it has rights and remedies that it does not have, specifically that it has the right to charge Plaintiff and class members' debit cards, credit cards, or third party payment methods without first making the statutorily required disclosures under the Automatic Renewal Law and obtaining their affirmative consent to the agreement containing the automatic renewal terms and continuous offer terms, and through other conduct described above, in violation of the Automatic Renewal Law.

Compl. ¶ 99.  But she fails to identify a *single* statement with the particularity required by Rule 9(b) — the who, what, when, where, and how — that conveys this alleged misrepresentation.

Further, for reasons discussed above, Plaintiff has not alleged facts supporting that she relied on an unspecified representation or that such misrepresentation actually caused her injury. Indeed, it is implausible to infer that Plaintiff did not know she was enrolling in a subscription service while simultaneously being injured because of PlushCare's statements about the subscription.

Plaintiff's claim under the CLRA, to the extent it should be construed as a separate claim at all, is inadequate and should be dismissed.

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

**C.      Plaintiff's Remaining State-Law Claims Are Derivative of the Inadequately Alleged Violation of the Automatic Renewal Law, and Accordingly Must Be Dismissed (Third, Fourth, Sixth, Seventh, and Eighth Causes of Action).**

Plaintiff's remaining state law claims are premised solely on PlushCare's alleged violation of the ARL.  *See* Compl. ¶¶ 86 (Negligent Misrepresentation), 90 (Unjust Enrichment), 106 (False Advertising), 114 (Theft), 118 (Conversion).  These remaining claims are based on the same theory that PlushCare billed her for a subscription without authority under the ARL to do so.  Because Plaintiff has failed to allege a violation of the ARL, *supra* Part V.A.1, these derivative claims necessarily fail.  *See Hall v. Time, Inc.*, 2020 WL 2303088, at *5 ("Because Plaintiff fails to plausibly allege any ARL violations, the Court also finds that she fails to plausibly state a claim for theft or conversion.").  The remainder of Plaintiff's claims must therefore be dismissed.

**D.      Plaintiff Has Failed State a Claim Under the Electronic Fund Transfer Act (First Cause of Action).**

Under the Electronic Fund Transfers Act ("EFTA"), Ms. Robbins asserts that by processing the monthly membership portion of her transaction, PlushCare violated 15 U.S.C. § 1693e(a).  That provision states, in relevant part, that "[a] preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made . . . ."  Plaintiff also cites to 12 C.F.R. § 205.10, or "Regulation E," which provides that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."

The EFTA is geared toward financial institutions processing account transfers from customers' bank accounts and ensuring that those institutions to not move money from bank accounts without the consumers authorizing such transfers.  For instance, the statute Ms. Robbins cites, § 1693e(a), speaks in terms of what the "financial institution" must do to ensure the consumer actually authorized a transaction before processing it.  Accordingly, litigation under this provision for ordinary online transactions in which a business charges for its goods or services (and happens

to do so through a debit card rather than a credit card) is uncommon.  The 1978 statute simply was not designed for these types of common online transactions.

Ms. Robbins has not alleged a violation of the ETFA because, even by her own allegations, PlushCare obtained her authorization to enroll her in an automatically renewing membership and provided her with a copy of the terms of the recurring debit card transaction she authorized as part of her sign-up process.  The claim must therefore be dismissed.

### 1.    Plaintiff Has Not Alleged that PlushCare Failed to Obtain Adequate Authorization Under the EFTA.

Ms. Robbins' first theory of liability under the EFTA is that PlushCare did not obtain her proper authorization before charging her debit card.  Compl. ¶¶ 57, 59.  The EFTA and Regulation E requires a company to obtain authorization "by a writing signed or *similarly authenticated* by the consumer."  12 C.F.R. § 205.10 (emphasis added).  That requirement is clearly satisfied by the enrollment process Plaintiff twice completed.

A consumer may "similarly authenticate[]" a transaction for purposes of the EFTA by merely authorizing a debit card transaction through a website or mobile app.  The plaintiff in *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083 (C.D. Cal. 2015) attempted a similar argument to that which Ms. Robbins asserts here, arguing that he "never provided Tinder written authorization to make [$2.99 monthly] deductions," even though he "purchase[d ] Tinder Plus for $2.99 per month." *Id.* at 1098.  The court rejected that gambit, noting that the complaint depicted the "application process," including statements that users could "Get Unlimited Likes with Tinder Plus for $2.99/mo." *Id.*  Because the plaintiff alleged both that he went through this sign-up process and that he "never agreed to pay $2.99 a month on a recurring basis," the court dismissed his EFTA claim, noting that "the complaint's allegations are inherently contradictory, which warrants dismissal of the EFTA claim." *Id.* at 1098.

Similarly, the Fifth Circuit affirmed dismissal of an EFTA claim where the plaintiffs conceded that they "furnished their card numbers to" the defendants. *In re Vistaprint Corp Mktg. & Sales Pracs. Litig.*, No. MDL 4:08-MD-1994, 2009 WL 2884727, at *9 (S.D. Tex. Aug. 31,

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

2009), *aff'd sub nom. Bott v. Vistaprint USA Inc.*, 392 F. App'x 327 (5th Cir. 2010). The district court, referencing screenshots of the webpages attached to the motion to dismiss, also noted that the plaintiffs "typed their email addresses into the spaces provided on Defendants' webpages, thereby authorizing Defendants to 'charge/debit [their] account according to the Offer Details.'" *Id.* Therefore, "the debits to Plaintiffs' accounts were not 'unauthorized electronic fund transfers'" and the EFTA claim failed. *Id.*

The Second Circuit has similarly held that completion of a webpage form that notes the terms of an automatically renewing membership constitutes adequate authorization for purposes of the EFTA. *L.S. v. Webloyalty.com, Inc.*, 673 F. App'x 100, 106 (2d Cir. 2016) ("*Webloyalty I*") ("Appellant clearly gave written authorization for the transfer of funds from his account by entering his personal information — including his name and the last four digits of his debit card — on the Enrollment Page. The Enrollment Page specifically noted the terms of the transfer, including the amount to be deducted from appellant's account and the frequency with which the scheduled debits would take place. . . . Because appellant authorized a transfer of funds in accordance with the terms disclosed on the Enrollment Page, Webloyalty did not violate EFTA in debiting appellant's account accordingly.").

Dismissal is warranted for the same reasons here. Plaintiff admits that she completed the enrollment form and provided her personal information and debit card number. Compl. ¶ 25 ("Plaintiff Robbins provided debit card information directly to Defendants' website when booking her virtual appointment."); *see also* Compl. ¶¶ 14–18. She also concedes that the enrollment page she was shown contains the heading "**Monthly membership**," the text "$14.99 billed after 30 days," the additional text "Recurring billing at $14.99. Cancel anytime.," and additional information through a "Learn more" link that states "Your membership continues until cancelled. If you do not wish to continue to pay per month, you may cancel anytime by visiting Your Profile > Payment and Insurance and adjusting your membership settings." Compl. ¶¶ 17–18.

Because Ms. Robbins acknowledges that she enrolled in this membership and that she was shown these terms before doing so, her "allegations are inherently contradictory, which warrants

dismissal of the EFTA claim." *Warner*, 105 F. Supp. 3d at 1098. She "gave written authorization for the transfer of funds from his account by entering [her] personal information — including [her] name and the []digits of [her] debit card." *Webloyalty 1*, 673 F. App'x at 106. Because she "furnished" her email address and "typed [her] email address[] into the space[] provided," thus completing the enrollment process, her argument that she did not provide adequate authorization of the transaction is meritless. *In re Vistaprint Corp Mktg. & Sales Pracs. Litig.*, 2009 WL 2884727, at *9.

### 2. Plaintiff Also Fails to Allege that PlushCare Did Not Provide a Copy of Her Authorization.

Plaintiff additionally claims that PlushCare violated 15 U.S.C. § 1693e(a) by failing to provide a "copy" of this same authorization to her. Compl. ¶¶ 57, 59. This provision of the statute is rarely litigated. Last year, the Second Circuit issued the only circuit-court decision on what it means to provide a "copy" of the authorization as required under the EFTA. *L.S. v. Webloyalty.com, Inc.*, 954 F.3d 110, 114–15 (2d Cir. 2020) ("*Webloyalty 2*") ("The interpretation of EFTA's 'copy of such authorization' requirement is a matter of first impression in this circuit; no other circuit has considered it."). The court there noted that the "primary purpose" of the EFTA when enacted was "to protect consumers in the then-novel context of electronic payment systems." *Id.* at 115. The court engaged in textual and historical analysis as to whether the phrase "copy of such authorization" should be "read to mean a duplicate or a summary of material terms," ultimately concluding that "EFTA's copy requirement may be satisfied by providing the consumer with an email containing the terms of the preauthorized electronic fund transfer he has authorized from his account." *Id.* at 116. The court then affirmed summary judgment in favor of the defendant on the EFTA claim, noting that the email sent to the plaintiff following enrollment "revealed all the material terms of the fund transfers authorized by L.S." *Id.* at 117.

Here, Ms. Robbins acknowledges that she was told that by booking her appointment and enrolling in a membership, she was "agreeing to the PlushCare Terms of Use . . . ." Compl. ¶ 15. The TOUs are also hyperlinked on the "Review order summary" screen. Ex. 2. Those Terms of

FENWICK & WEST LLP
ATTORNEYS AT LAW

Use — from which she quotes in the Complaint — state that "PlushCare charges a monthly membership fee (the 'Membership Fee') for access to certain features of the Services." Compl. ¶ 16; Ex. 5.  They also make clear throughout that her membership would entail a monthly billing to her debit card after the trial period, which she could cancel at any time.  For example:

- "PlushCare will charge your Membership Fee to your designated billing account.  You may select either a monthly or an annual Membership Fee. You agree to make the payment using your chosen payment method." Ex. 5 at 3.

- "There are options for accessing Medical Services with PlushCare without payment of this fee, such as cancelling before the free 30 day trial period is over." *Id.*

- "IF YOUR ACCOUNT IS SUBJECT TO THE MEMBERSHIP FEE, YOU AUTHORIZE US TO CHARGE YOUR CHOSEN PAYMENT METHOD THE MEMBERSHIP FEE AT THE TIME OF INITIAL PAYMENT AND EACH RENEWAL, UNTIL YOU CANCEL. YOU MUST CANCEL YOUR MEMBERSHIP BEFORE IT RENEWS TO AVOID BEING CHARGED THE MEMBERSHIP FEE FOR THE NEXT RENEWAL TERM.  YOU CAN CANCEL YOUR MEMBERSHIP AT ANY TIME BY CONTACTING US AT INFO@PLUSHCARE.COM." *Id.*

- "ANY FREE TRIAL OR OTHER PROMOTION THAT PROVIDES PAID MEMBER-LEVEL ACCESS TO THE SERVICES MUST BE USED WITHIN THE SPECIFIED TIME OF THE TRIAL. IF YOU DO NOT WISH TO CONTINUE YOUR MEMBERSHIP, YOU MUST CANCEL YOUR TRIAL MEMBERSHIP BEFORE THE END OF THE TRIAL PERIOD IN ORDER TO AVOID BEING CHARGED THE MEMBERSHIP FEE, AS APPLICABLE." *Id.*

- "**If you wish to terminate your membership, you can do so by contacting us via email at info@plushcare.com.**" *Id.* (emphasis in original).

The TOUs on the plushcare.com website are a persistent document that Ms. Robbins could access at anytime by going to the website.  Moreover, they were given to her when she consented to them during the sign-up process and again each time she enrolled in the membership.  Compl. ¶ 24; Ex. 1; Ex. 2.  Thus, the TOUs Plaintiff received satisfy Regulation E.  The TOUs *are* the agreement between the parties; there is no other written authorization between PlushCare and Plaintiff to be provided.

Furthermore, PlushCare gave Ms. Robbins a profile dashboard that also included all of the material terms of her membership, including the card that PlushCare would charge, when PlushCare

FENWICK & WEST LLP
ATTORNEYS AT LAW

would charge the card, how much it would charge the card, and how Ms. Robbins could cancel her membership.   Compl. ¶¶ 14–18 (discussing the PlushCare profile creation process and how to access the profile); Ex. 4 (profile page with "Payment and Insurance" tab selected).   At all times, Ms. Robbins could access her profile to confirm the details of her membership and the recurring transaction that she had authorized.

Taken together, the sign-up process, TOUs, and Profile dashboard were more than adequate to apprise her of the material terms of her membership with PlushCare.   Accordingly, the EFTA claim should be dismissed.

## VI.    CONCLUSION

For the foregoing reasons, PlushCare respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice for failure to state a claim upon which relief can be granted.

Dated:    July 26, 2021                         FENWICK & WEST LLP


                                                By: /s/ Tyler G. Newby
                                                    Tyler G. Newby
                                                    tnewby@fenwick.com
                                                    Kimberly Culp
                                                    kculp@fenwick.com
                                                    Ethan M. Thomas
                                                    ethomas@fenwick.com

                                                    Attorneys for Defendants
                                                    PLUSHCARE, INC. and PLUSHCARE OF
                                                    CALIFORNIA, INC., A.P.C.