1  TYLER G. NEWBY (CSB No. 205790)
   tnewby@fenwick.com
2  ETHAN THOMAS (CSB No. 338062)
   ethomas@fenwick.com
3  JUSTIN STACY (CSB No. 339376)
   jstacy@fenwick.com
4  FENWICK & WEST LLP
   555 California Street, 12th Floor
5  San Francisco, CA  94104
   Telephone:    415.875.2300
6  Facsimile:    415.281.1350

7  KIMBERLY CULP (CSB No. 238839)
   kculp@fenwick.com
8  FENWICK & WEST LLP
   801 California Street
9  Mountain View CA  94041
   Telephone:    650.988.8500
10 Facsimile:    650.938.5200

11 Attorneys for Defendants
   PLUSHCARE, INC. and
12 PLUSHCARE OF CALIFORNIA, INC., A.P.C.

13                      UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                        SAN FRANCISCO DIVISION

16

17 SARAH ROBBINS and TIFFANY SMITH,          Case No.: 3:21-cv-03444-MMC
   individually and on behalf of all others similarly
18 situated,                                 **DEFENDANTS PLUSHCARE, INC.
                                             AND PLUSHCARE OF CALIFORNIA,
19             Plaintiffs,                    INC., A.P.C.'S REPLY IN SUPPORT
                                             OF ITS MOTION TO DISMISS
20    v.                                     SECOND AMENDED COMPLAINT
                                             PURSUANT TO FED. R. CIV. P.
21 PLUSHCARE, INC. and PLUSHCARE OF          12(b)(6) AND 9(b)**
   CALIFORNIA, INC., A.P.C.,
22                                            Date:   July 8, 2022
               Defendants.                    Time:   9:00 a.m.
23                                            Dept:   Courtroom 7, 19th Floor
                                              Judge:  Honorable Maxine M. Chesney
24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................. 1

II.   ARGUMENT ........................................................................................................ 1

      A.   PlushCare's Motion to Dismiss and the Arguments Raised Therein
           Are Not Waived or Barred from Consideration by Rule 12(g)............................ 1

      B.   Plaintiffs Offer New Misrepresentation Theories, None of Which
           Save Their Fraud-Based Claims ........................................................................ 3

           1.   PlushCare's "How It Works" Webpage.................................................. 3

           2.   "Book Appointment" Button ................................................................ 3

           3.   The Terms of Use ................................................................................ 5

           4.   Create a Profile ................................................................................... 6

      C.   Plaintiffs Fail to Allege Reliance ...................................................................... 6

           1.   PlushCare's "How it Works" Webpage.................................................. 6

           2.   "Book Appointment" Button ................................................................ 6

           3.   The Terms of Use ................................................................................ 7

           4.   Create a Profile ................................................................................... 7

      D.   Plaintiffs Fail to Connect Any Alleged Misrepresentation or
           Omission to Their CLRA Claim ........................................................................ 7

      E.   Plaintiffs' Opposition Fails to Salvage Their Theft Claim ................................. 9

      F.   The FAL and UCL "Unfairness" Claims Should Be Dismissed
           Because They, Too, Sound in Fraud ................................................................ 10

      G.   Even if Unjust Enrichment Is a Cause of Action Under California
           Law, Plaintiffs Plead Themselves Out of the Claim by Alleging a
           Binding Contract .............................................................................................. 12

      H.   Plaintiffs Fail to Plead a Conversion Claim...................................................... 14

      I.    Non-California Residents May Not Bring a UCL Claim Premised on
           Violation of the ARL ....................................................................................... 15

III.  CONCLUSION .................................................................................................... 15

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AdTrader, Inc. v. Google,*
  LLC, 2018 WL 3428525 (N.D. Cal. July 13, 2018) ........................................................9

*Archer v. Coinbase, Inc.,*
  53 Cal. App. 5th 266 (2020) ..........................................................................................14

*Brodsky v. Apple Inc.,*
  445 F. Supp. 3d 110 (N.D. Cal. 2020) ..........................................................................12

*California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.,*
  94 Cal. App. 4th 151 (2001) ..........................................................................................13

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
  20 Cal. 4th 163 (1999) ...................................................................................................11

*Charbonnet v. Omni Hotels & Resorts,*
  2020 WL 7385828 (S.D. Cal. Dec. 16, 2020) .............................................................4, 7

*Driver v. Acquisto,*
  145 Cal. App. 2d 304 (1956) ..........................................................................................14

*Hodsdon v. Mars,*
  891 F.3d 857 (9th Cir. 2018) ............................................................................................3

*In re Apple and AT&T iPad Unlimited Data Plan Litig.,*
  802 F. Supp. 2d 1070 (N.D. Cal. 2011) .........................................................................13

*In Re Apple iPhone Antirust Litig.,*
  846 F.3d (9th Cir. 2017) ...............................................................................................2, 3

*In re Harmonic, Inc., Sec. Litig.,*
  2006 WL 3591148 (N.D. Cal. Dec. 11, 2006) .................................................................1

*Klein v. Chevron U.S.A. Inc.,*
  202 Cal. App. 4th 1342 (2012) ..................................................................................12, 13

*Klett v. Sec. Acceptance Co.,*
  38 Cal. 2d 770 (1952) .....................................................................................................14

*Kwikset Corp. v. Superior Ct.,*
  51 Cal. 4th 310 (2011) ...................................................................................................11

*McBride v. Boughton,*
  123 Cal. App. 4th 379 (=2004) ......................................................................................13

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Northstar Fin. Advisors Inc. v. Schwab Investments*,
  135 F. Supp. 3d 1059 (N.D. Cal. 2015) ...................................................................2

*Price v. Synapse Group, Inc.*,
  2017 WL 3131700 (S.D. Cal. July 24, 2017) ...........................................................8

*Romero v. Securus Techs., Inc.*,
  216 F. Supp. 3d 1078 (S.D. Cal. 2016) ..................................................................14

*Spates v. Dameron Hosp. Ass'n*,
  114 Cal. App. 4th 208 (2003) ................................................................................14

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
  534 F. Supp. 2d 1101 (N.D. Cal. 2007) ...................................................................1

*Symantec Corp. v. Zscaler, Inc.*,
  2018 WL 1456678 (N.D. Cal. Mar. 23, 2018) ..........................................................2

*Tsai v. Wang*,
  2017 WL 2587929 (N.D. Cal. June 14, 2017) .........................................................12

*U.S. v. Flores*,
  901 F.3d 1150 (9th Cir. 2018) .................................................................................9

*Wahl v. Yahoo! Inc.*,
  2017 WL 4098884 (N.D. Cal. Sept. 15, 2017) ........................................................15

*Wilson-Combs v. Cal. Dep't of Consumer Affairs*,
  555 F. Supp. 2d 1110 (E.D. Cal. 2008) ....................................................................1

*Wright v. Old Gringo Inc.*,
  2019 WL 3804020 (S.D. Cal. Aug. 13, 2019) .........................................................12

**STATUTES AND RULES**

Bus. & Prof. Code §§ 17200 *et. seq.* (Unfair Competition Law) ...............................1, 10

Bus. & Prof. Code § 17535 ............................................................................................11

Bus. & Prof. Code §§ 17600 *et. seq.* (California's Automatic Renewal Law0 ....................1, 10, 15

Colo. Rev. Stat. Ann. § 6-1-732 .....................................................................................15

False Advertising Law (Bus. & Prof. Code §§ 17500 *et. seq.*) .......................................10

Fed. F. Civ. P. 1 ..............................................................................................................2

FENWICK & WEST LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

Fed. R. Civ. P. 9 ....................................................................................................................10, 11

Fed. R. Civ. P. 12 .................................................................................................................1, 2, 3

N.Y. Gen. Bus. Law § 527-a ......................................................................................................15

**OTHER AUTHORITIES**

Cal. Practice Guide: Fed. Civ. P. Before Trial § 9:17 ....................................................................2

FENWICK & WEST LLP
ATTORNEYS AT LAW

## I.   INTRODUCTION

Plaintiffs' Opposition Brief does not defend what they pleaded in their Second Amended Complaint ("SAC") as the allegedly false statements or actionable omissions.  Instead, Plaintiffs offer four theories about PlushCare's website that they contend, even if not false or misleading on their own, amount to misrepresentations or actionable omissions when considered in combination. Even if Plaintiffs did adequately plead these theories (they did not), Plaintiffs' new arguments do not identify a misrepresentation or actionable omission, let alone one that either Plaintiff Robbins or Smith allegedly relied on.  Plaintiffs' attempts to rehabilitate their other claims fare no better.

Furthermore, there is no dispute that California law applies to this case.  Applying California law precludes a nationwide class for claims brought under California's Automatic Renewal Law (Bus. & Prof. Code §§ 17600 *et. seq.*) ("ARL"), because the legislature expressly limited the protections of that statute to California residents.  Because Plaintiff Smith's Unfair Competition Law (Bus. & Prof. Code §§ 17200 *et. seq.*) ("UCL") claim is premised on a violation of the ARL, which does not provide its own cause of action, and Plaintiff resides in Florida, the Court should dismiss her UCL claim and strike the class ARL class claims of other non-California residents.

## II.   ARGUMENT

### A.   PlushCare's Motion to Dismiss and the Arguments Raised Therein Are Not Waived or Barred from Consideration by Rule 12(g)

A "court may consider the defense of failure to state a claim at any time before trial."  *See, e.g.*, *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 534 F. Supp. 2d 1101, 1118 (N.D. Cal. 2007).  Waiver is not an issue here, because courts in this District and other districts of the Ninth Circuit have held that "under Rule 12(g), a party does not waive a ground for moving to dismiss for failure to state a claim by not including that ground in an earlier motion to dismiss."  *In re Harmonic, Inc., Sec. Litig.*, 2006 WL 3591148, at *39-40 (N.D. Cal. Dec. 11, 2006); *Wilson-Combs v. Cal. Dep't of Consumer Affairs*, 555 F. Supp. 2d 1110, 1113 n.3 (E.D. Cal. 2008) ("a defendant can move to dismiss an amended complaint for failure to state a claim based on arguments not raised in its first motion to dismiss.").  Because the defense of failure to state a claim cannot be waived, the arguments raised in PlushCare's motion are not barred regardless of whether they were

raised in the motion to dismiss the First Amended Complaint.  *See* Cal. Practice Guide: Fed. Civ. P. Before Trial § 9:17 ("[T]he fundamental defenses of . . . failure to state a claim . . . are never waived.  These three grounds can be raised at any time, even if omitted in earlier pleadings.").

Plaintiffs' reliance on *Northstar Fin. Advisors Inc. v. Schwab Investments*, 135 F. Supp. 3d 1059 (N.D. Cal. 2015) and the other cases cited also overlooks significant intervening legal authority from the Ninth Circuit.  *See* Opposition at 7-8 *and cases cited therein*.  In *In re Apple iPhone Antitrust Litig.*, the Ninth Circuit addressed and rejected the rigid and inefficient approach to Rule 12(g) that Plaintiffs advocate.  846 F.3d 313, 318-20 (9th Cir. 2017) ("Denying late-filed Rule 12(b)(6) motions and relegating defendants to the three procedural avenues specified in Rule 12(h)(2) can produce unnecessary and costly delays, contrary to the direction of Rule 1."). Affirming the district court's decision to consider an argument in a motion to dismiss that could have been brought in an earlier motion, the Ninth Circuit reasoned that Rule 12(g) should be read in light of the Federal Rules of Civil Procedure's policy favoring "just, speedy, and inexpensive determination" of lawsuits.  *Id.* at 318; *see also* Fed. R. Civ. P. 1.  The court observed that had the district court not considered the disputed argument at that time, the defendant would have simply filed a different motion to raise the same arguments, thereby delaying resolution of the proceeding with no corresponding benefit.  *Id.* at 320.  Accordingly, the court concluded that the defendant's motion did not "appear to have been filed for any strategically abusive purpose" and considering the motion "materially expedited the district courts disposition of the case."  *Id.*

Decisions applying *In re Apple* have recognized this adoption of "a more flexible and efficiency-oriented view of a district court's ability to review arguments for the first time in a second motion to dismiss."  *Symantec Corp. v. Zscaler, Inc.*, 2018 WL 1456678, at *2 (N.D. Cal. Mar. 23, 2018) (considering the argument Plaintiffs raise here and declining to follow *Northstar*) (citing *In Re Apple*, 846 F.3d 318.  Under this approach, "[o]ther courts in this district have also considered second motions to dismiss raising new arguments where doing so would serve the interests of judicial economy."  *Symantec*, 2018 WL 1456678, at *2 (collecting cases).

Here, Plaintiffs ask the Court to pass on the opportunity to narrow the case through a motion to dismiss, notwithstanding the fact that PlushCare could indisputably raise those same arguments

FENWICK & WEST LLP
ATTORNEYS AT LAW

by a motion for judgment on the pleadings under Rule 12(c) as authorized by Rule 12(h)(2).  *See In re Apple*, 846 F.3d at 318.  PlushCare did not raise those issues in the motion to dismiss for abuse or delay.  Plaintiffs amended the FAC to expand their claims, and PlushCare's motion to dismiss based on those additions is not precluded by Rule 12(g).  Therefore, it is permissible and more efficient for PlushCare to the raise arguments it was otherwise prepared to raise under Rule 12(c) in one consolidated motion to dismiss.

### B.  Plaintiffs Offer New Misrepresentation Theories, None of Which Save Their Fraud-Based Claims

Rather than addressing the allegations they did make in the SAC, Plaintiffs offer four new theories in an attempt to save their fraud-based theories: (1) that PlushCare was obligated to describe the membership on its How it Works webpage but failed to do so, (2) that PlushCare represented to consumers that pressing "Book Appointment" would book an appointment and not include the terms under which PlushCare expressly offered that appointment to them, (3) that PlushCare's Terms of Use contain two allegedly false statements, and (4) that PlushCare misled consumers regarding the meaning of "Create profile."  Opp. at 10.  Taken separately or as a collective, these theories new theories do not save Plaintiffs' fraud-based claims from dismissal.

#### 1.  PlushCare's "How It Works" Webpage

The How it Works page on PlushCare's website does not omit any material fact that PlushCare was obligated to disclose, because PlushCare's membership program is not contrary to any representation made on the How it Works page.  *Hodsdon v. Mars*, 891 F.3d 857, 865-68 (9th Cir. 2018).  As described by Plaintiffs, the How it Works page does not describe the online booking process at all; instead, it describes the process by which users can engage with a doctor via telemedicine.  SAC ¶ 15.  Plaintiffs also admit that the PlushCare website itself includes an entire section about the membership.  SAC ¶ 15 n. 1.  Therefore, the absence of a description of the membership program on a single page is not an actionable misrepresentation.

#### 2.  "Book Appointment" Button

Plaintiffs' argument that that the "book appointment" button on the final checkout screen was a misleading representation because the text contained within the button did not reference a membership is not plausible.  Plaintiffs improperly focus on the words "book appointment" in

FENWICK & WEST LLP
ATTORNEYS AT LAW

isolation without viewing them in the context of other disclosures appearing on the checkout page at the very moment a consumer selects that button.  SAC Ex. 2.  The "book appointment" button is simply a button to confirm a transaction — not the entire agreement.  The terms of the transaction, including enrollment in a membership plan with a 30-day free trial, are disclosed in black and white in the "review order summary" on the same page as the button itself.  SAC, Ex. 2.[1]  The order summary (SAC, Ex. 2) and "learn more" hyperlink on that same page (SAC, Ex. 3) disclose that the doctor's visit is only being offered to the consumer online with the monthly membership.  SAC Exs. 2 & 3.  By selecting "book appointment", the consumer accepts those contractual terms on which PlushCare offered to sell the appointment and books their appointment.

Additionally, Plaintiffs misleadingly characterize the plain terms of the transaction (including "Monthly Membership" and "$14.99 billed after 30 days" (*id.*)) as a "pop-up" throughout their Opposition, implying that the terms appear in a separate window or somewhere to which users would have to divert their attention.  Opp. at 11, 17 n.5, 29.  This is incorrect, as Plaintiffs' exhibit plainly shows.  SAC Ex. 2.  These terms appear on the same webpage as the other terms of the transaction, and users such as Plaintiffs must scroll past those terms to reach the "book appointment" button.  *Id.*  If Plaintiffs take issue with the fact that the information appears dynamically as the user interacts with the form (as is the case with virtually every modern website), they have not alleged that this feature somehow detracts from or invalidates the terms.

PlushCare's checkout page is similar to another webpage a court held was not misleading, even though in that case, additional charges were not disclosed unless a consumer clicked on a hyperlink that explained the charges.  In *Charbonnet v. Omni Hotels & Resorts*, 2020 WL 7385828, at *3 (S.D. Cal. Dec. 16, 2020), the plaintiff challenged a "property fee" that was not listed in the advertised price for a hotel room.  The Court noted that on the very same page as the advertised price, the page referred to "taxes & fees" and the consumer could click on a hyperlink to find out more before completing the transaction.  *Id.* at *4.  Thus, the defendant presented a disclosure to the consumer that the room was offered with that fee included and before the consumer booked the

---

[1] Although Exhibit 2 has a page break in the middle, it should be noted that the entire checkout page on the website is a continuous screen with no break.

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

room.  Here, plaintiffs did not even need to click on a separate link; the membership enrollment was disclosed on the same page and in even larger text than the "book appointment" button.

### 3.        The Terms of Use

Plaintiffs' argument that the Terms of Use support their fraud claims is also implausible. Plaintiffs appear to argue that "PlushCare charges a monthly membership fee (the 'Membership Fee') for access to *certain* features of the Services" is false by omission.  Opp. at 12-17.  Plaintiffs do not articulate what about this sentence is false.  It is, in fact, true that a membership is required for "certain" features.  Plaintiffs argue that there is no disclosure that *online* booking is only available for members, but this sentence suggests nothing to the contrary.

Second, Plaintiffs argue that the Terms of Use "state a membership is not required to use the service," which they claim is false.  Opp. at 12:18.  Although they cite to the SAC at paragraph 136, this fact is not alleged in that paragraph.  Nor is it alleged in paragraph 18 of the SAC, the only other citation Plaintiffs offer to the SAC for this argument.  In fact, as Plaintiffs' own allegations show, a membership is not required to book an appointment through PlushCare's 1-800 number. SAC, Ex. 3.  And, PlushCare's Terms of Use accurately inform users that there are options for accessing a healthcare provider without being a member, and they direct consumers to an email address to obtain more information.  Dkt. 24-7 (PlushCare's Terms of Use) at 18 ("There are options for accessing Provider Services on the Service without the Subscription and payment of this fee.  To learn more about the Monthly Membership Fee contact us at info@plushcare.com"). Plaintiffs argue that these Terms of Use do not apply to PlushCare members who book an appointment through the 1-800 number because the Terms of Use only apply to those who book online.  That is false.  The Terms of Use apply to users who manage their account online and who access PlushCare's telehealth services, even if they did not book the appointment online.  Dkt. 24-7 at 2-3 ("The Service is a platform individuals may use to manage their health and receive email, telephone and telecommunications-enabled care from physicians and other health care professionals employed by or contracted with the Providers.  By accessing and/or using the Service you agree to be bound by these Terms of Use (this 'Agreement'), ***whether or not you register as a member of PlushCare*** ('Member').") (emphasis added).

#### 4. Create a Profile

Nowhere in the SAC do Plaintiffs allege that the "Create Profile" page is used to create a membership, as they now argue. *See generally* SAC. Nor could they honestly make such an allegation because, as the parties and the Court are aware, the consumer accepts enrollment in the membership on the checkout page. SAC, Ex. 2. Moreover, when Plaintiff Robbins created her PlushCare account, PlushCare was not a membership-only online service. SAC ¶¶ 37-38. Therefore, Plaintiffs fail to point to any allegations in the SAC that "Create Profile" is a misrepresentation or that it could be.

### C. Plaintiffs Fail to Allege Reliance

Each of Plaintiffs' fraud-based state law claims require Plaintiffs to plead a misrepresentation or actionable omission (if applicable) and reliance thereon. However, Plaintiffs' argument about reliance in the Opposition is completely disconnected from the statements they now contend are misleading. Instead, they argue that due to Defendants' alleged violation of the California ARL, "Plaintiffs were not aware when they booked their appointments that they would be placed into Defendants' monthly membership program." Opp. at 6. Plaintiffs do not, however, address how they relied on what they now claim are the allegedly false or misleading statements on PlushCare's website, either separately or as a collective.  !

#### 1. PlushCare's "How it Works" Webpage

Neither Plaintiff alleges that she even viewed PlushCare's "How it Works" webpage. SAC ¶¶ 30-47 (Robbins' allegations); 48-60 (Smith's allegations). Therefore, Plaintiffs fail to allege any reliance on this webpage or its representations. Nor would reliance on this one webpage be reasonable, given the several, specific disclosures about the membership that appear elsewhere on PlushCare's website and during the enrollment process.

#### 2. "Book Appointment" Button

Neither Plaintiff alleges that she noticed the words "book appointment" on the transaction confirmation button. SAC ¶¶ 30-47 (Robbins' allegations); 48-60 (Smith's allegations). Even if they did (an allegation outside of the pleadings), they also fail to allege how they understood the button. Accordingly, Plaintiffs fail to establish that their supposed interpretation was a reasonable

FENWICK & WEST LLP
ATTORNEYS AT LAW

one.  In any event, they could not have reasonably formed a belief that clicking "book appointment" excluded the terms of completing the transaction expressly laid out in the "review order summary" section of the same page.  *See Charbonnet*, 2020 WL 7385828, at *5 ("Plaintiff continued with booking a room at the Omni.  The fact that Plaintiff completed her reservation and paid the higher total price, knowing it was more than the advertised daily rate, shows that the addition of taxes and fees ultimately had no effect on her decision to book a room there.  Plaintiff therefore cannot show that she would have behaved any differently as the allegedly "omitted" property fee was disclosed in the total price and she accepted it.").  Neither Plaintiff has plausibly alleged that she reasonably interpreted the button completing the enrollment process to literally do nothing beyond book an appointment, notwithstanding the express terms to the contrary on the very same page.

### 3. The Terms of Use

Neither Plaintiff claims to have seen or read the Terms of Service.  SAC ¶¶ 30-47 (Robbins' allegations); 48-60 (Smith's allegations).  Therefore, Plaintiffs cannot have relied on any alleged misrepresentation therein.

### 4. Create a Profile

Plaintiff Robbins alleges that she created her PlushCare account before PlushCare offered a membership service.  SAC ¶¶ 37-38.  Therefore, even accepting Plaintiffs' new factual argument, it would not apply to Plaintiff Robbins.  Moreover, Plaintiff Smith has not alleged what the account creation screens looked like when she created her account.  *See generally* SAC.[2]  But, regardless of the account creation screens, neither Plaintiff alleged that they formed any belief or relied on the label "create profile."  SAC ¶¶ 30-47 (Robbins' allegations); 48-60 (Smith's allegations).

### D. Plaintiffs Fail to Connect Any Alleged Misrepresentation or Omission to Their CLRA Claim

To state a claim under the CLRA, Plaintiffs acknowledge that they must allege reliance on an actionable misrepresentation or omission of the type enumerated in the statute, as well as injury.

---

[2] Plaintiffs cite to Exhibit 2 to the Declaration of Abhi Pathak (Opp. at 13:17) for what the Create Profile screen looked like when Plaintiff Robbins created her account.  But, Plaintiffs opposed the request for judicial notice of this Exhibit 2 in part on the ground it is "subject to dispute."  Dkt. 28 (Opposition to Defendants' Request for Judicial Notice) at 2:8.

FENWICK & WEST LLP
ATTORNEYS AT LAW

*See* Opp. at 15.  The SAC limits the CLRA claim to subsections (a)(5) and (a)(14).  SAC ¶¶ 120, 124.  However, Plaintiffs make no effort to tie their new theories of misrepresentation and omission to either subsection, and the Opposition fails to save that claim.

First, in attempting to establish a violation of subsection (a)(5) or (a)(14), Plaintiffs incorrectly assume that pleading a violation of the ARL (which concerns visual aspects of a disclosure, such as proximity, font size, coloring, and other formatting) can establish a shortcoming of the CLRA's much more specific requirements.  But the subsections of the CLRA Plaintiffs assert concern a misrepresentation about "sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities" of goods and services ((a)(5)) or the "rights, remedies, or obligations" that a transaction confers or involves ((a)(14)).  Noncompliance with the ARL's formatting requirements does not establish any such actual misrepresentation.  The Court's prior order held that Plaintiff Robbins adequately pled "that the 'automatic renewal offer terms'; on the PlushCare website were not 'in visual proximity' to 'the request for consent to the offer'" — not that there were no automatic renewal terms or that Plaintiffs alleged a misrepresentation of the type contemplated by subsections (a)(5) or (a)(14).  Order (Dkt. 35) at 2.  Indeed, the SAC unambiguously shows that the membership terms *were* disclosed to Plaintiffs.  SAC Ex. 2.  In other words, a plausibly pled ARL violation does not require the Court to ignore the disclosures that are present.  Plaintiffs therefore cannot plausibly allege, contrary to the argument they make in their Opposition that the membership terms were not disclosed.

Plaintiffs' reliance on *Price v. Synapse Group, Inc.*, 2017 WL 3131700 (S.D. Cal. July 24, 2017) to bridge the gap between an alleged ARL violation and a CLRA-actionable misrepresentation is misplaced.  *Price* does not hold that an alleged violation of the ARL, standing alone, is sufficient to plead a violation of the CLRA.  Indeed, the Court granted the motion to dismiss two of four alleged CLRA subsections for failure to connect the alleged misrepresentation to the statutory language.  *Id.* at *8-9.  Here, the terms of booking an appointment were disclosed on the checkout page (the only page Plaintiffs allegedly relied on), even if Plaintiffs can allege that PlushCare did not send a confirming email to Plaintiff Robbins or comply with some of the ARL's formatting requirements.  Furthermore, Plaintiffs nowhere allege how PlushCare "represented a

FENWICK & WEST LLP
ATTORNEYS AT LAW

transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law" as require to plead a violation of Section 1770(a)(14).

Second, Plaintiffs do not persuasively argue that their CLRA claim goes further than the ARL allegations.  They argue that the four new misrepresentations taken "as a whole cause consumers to reasonably believe that a membership is a separate purchase, is not necessary to book an appointment online."  Opp. at 25.  In other words, Plaintiffs hope that these four alleged misrepresentations, *see supra* Section II.B, in the aggregate (but not on their own) can state a claim under the CLRA.  If Plaintiffs failed to plead any single one as an actual misrepresentation or that they actually relied upon it, the CLRA claim concededly fails.  Because Plaintiffs have in fact failed to plead that *any* of these are actionable misrepresentations, or that they relied on *any* to their detriment, *supra* Section II.B, their CLRA claim necessarily fails.

### E.   Plaintiffs' Opposition Fails to Salvage Their Theft Claim

Plaintiffs misconstrue the motion to dismiss their theft claim, arguing that "Defendants' primary argument against a claim of theft is a lack of knowledge that their advertising, Website, and booking flow deceives consumers into memberships."  Opp. at 20:21-22.  Although it is true that the SAC fails to allege that PlushCare knew its advertising, website, or booking flow were deceptive (they are not), such knowledge is immaterial to a claim for theft.  Rather, the knowledge required is *knowledge that the property at issue was stolen*.  *See* Mot. Dismiss Second Am. Compl. (Dkt. 51) ("Br."), 18:6-7; *see also, e.g.*, *U.S. v. Flores*, 901 F.3d 1150, 1161 (9th Cir. 2018).  To establish that their membership fees were stolen under Section 496, Plaintiffs must allege the elements of theft, including specific intent to defraud.  *AdTrader, Inc. v. Google,* LLC, 2018 WL 3428525, at *9 (N.D. Cal. July 13, 2018) (dismissing a Section 496 claim with prejudice because the plaintiff did not allege that Google obtained stolen property by grand theft, petty theft, embezzlement or extortion).  In other words, Plaintiffs must plausibly allege that PlushCare knew that the property at issue was taken in a manner that constitutes theft.  Plaintiffs fail to allege facts supporting a plausible inference of theft. *See generally* SAC ¶¶ 145-154.  Instead, Plaintiffs merely rely on a restatement of their central theory that PlushCare failed to comply with the California

FENWICK & WEST LLP
ATTORNEYS AT LAW

ARL, a strict liability statute.  *See id.* ¶ 153 (describing the "unlawful means" used to obtain money in terms of "violation of § 17602 of the Automatic Renewal Law").

In an attempt to cure the deficiencies in the SAC, Plaintiffs seek to introduce an April 23, 2021 announcement by Accolade of its acquisition of PlushCare and a subsequent Form 10-Q filing by Accolade, which Plaintiffs characterize as showing that PlushCare knew, in 2020, that the property was stolen.  Opp. 21:11-22:6; *see also* Declaration of Alexis M. Wood Exs. A & B.  But, the Form 10-Q simply shows that Accolade acknowledged that Plaintiff Robbins initiated *this suit* and alleged a violation of the ARL on behalf of herself and California consumers.  *See id.* Ex. B (describing the lawsuit and allegations of violation of the ARL).  The existence of litigation does not imply that the claims made therein are true.  Further, any knowledge or belief that Accolade had on April 23, 2021 or thereafter obviously says nothing about the intent or knowledge of PlushCare in establishing the autorenewal practices that Plaintiffs claim constitute theft by false pretenses in early 2020.  Moreover, Accolade's acknowledgement that any change *could* impact PlushCare's business financially does not establish that PlushCare somehow knew that it obtained membership fees by means of theft, let alone that it did so *knowing that it was obtaining the money by theft*, which is what Plaintiffs must plead but concededly did not (and cannot).

### F.    The FAL and UCL "Unfairness" Claims Should Be Dismissed Because They, Too, Sound in Fraud

Plaintiffs do not dispute that the UCL unfairness claim substantively overlaps with the other fraudulent misrepresentation claims, but instead embrace this understanding and analyze the UCL claim alongside the False Advertising Law (Bus. & Prof. Code §§ 17500 *et. seq.*) ("FAL") claim.  S*ee* Opp. 17-20.  Because Plaintiffs do not contest that their FAL claim sounds in fraud, and thus the unfairness claim does too, the SAC falls short of alleging sufficient facts to satisfy Rule 9(b).  *See* Br., Section VI.A.    Instead, Plaintiffs concede that "the same non-disclosure and misrepresentations listed in the SAC regarding Defendants' violations of the ARL and EFTA are the same with respect to Defendants' violations of California's consumer protection statutes."  Opp. 18:21-24.  In pointing this fact out, Plaintiffs' own Opposition acknowledges the underlying flaw in each of these claims (and all fraud-based claims):  they must be pled with additional particularity

FENWICK & WEST LLP
ATTORNEYS AT LAW

under Rule 9(b), and contain additional elements not required to plead a violation of the EFTA or ARL.  *See generally* Br., Section VI.A.

Given their reliance on the ARL, Plaintiffs misleadingly cite to *Kwikset* for the proposition that a mere violation of a statute gives rise to standing under the FAL or UCL.  *See* Opp. 20:6-9 ("UCL and FAL claims are further established by allegations that a plaintiff suffered an 'injury-in-fact' 'as a result of' a statutory violation.") (citing *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011)).  But *Kwikset* does not stand for the proposition that an FAL or UCL misrepresentation claim can be pled merely by a statutory violation (*i.e.*, violation of the ARL as Plaintiffs urge). That case states the effect of California's Proposition 64, namely that it established the requirement of a plaintiff to show reliance in a UCL or FAL action.  *Kwikset*, 51 Cal. 4th at 321-22 (standing under the FAL extends to "any person who has suffered injury in fact . . . as a result of violation **this chapter**") (quoting Bus. & Prof. Code § 17535) (emphasis added).  An FAL claim must be based on a *violation of the FAL*, through a misrepresentation in the form of *false advertising*.  *See id.* at 322 (FAL standing requires an injury caused by false advertising).  While a violation of a statute that results in damages can sustain a UCL claim under the unlawful prong (*see Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)), a claim under the CLRA, FAL, or the other two UCL prongs (fraudulent and unfairness) cannot be sustained based on an alleged violation of a statute *without more*.  Specifically, each of these claims require Plaintiffs to plead a particular *misrepresentation* on which the plaintiff *relied*, and they are considered species of fraud and as such require additional particularity.  As the California Supreme Court recognized in *Kwikset* — which was "based on a fraud theory involving false advertising and misrepresentations to consumers" — plaintiffs must "demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions."  *Id.* at 326-27.  Plaintiffs fail to plead either.

As with their other misrepresentation claims, Plaintiffs appeal to new theories of misrepresentation raised via briefing rather than defend the allegations in the SAC.  Plaintiffs defend this approach by claiming a purported misrepresentation can only be ascertained when considering alleged facts generally, rather than assessing them particularly: "Again, not just one

FENWICK & WEST LLP
ATTORNEYS AT LAW

misrepresentation can be looked at alone in providing a consumers' view of how he or she would understand Defendants' service to work." Opp. 18:28-19:1. The Opposition goes on to state that the misrepresentation can only be established by considering all of the four new theories discussed above together (*see supra* Section II.B (describing four new theories of misrepresentation)), rather than by considering any particular misrepresentation. *Id.* 19:2-7 ("All these misrepresentations as a whole cause consumers to reasonably believe that a membership is a separate purchase, is not necessary to book an appointment online."). Therein lies the inadequacy of Plaintiffs' allegations: Plaintiffs fail entirely to allege that they saw or relied on *any* of those four aspects of the website or advertising in booking their appointment. Accordingly, given that they fail to establish reliance on any of those alleged misrepresentations (let alone on *all four* in aggregate as Plaintiffs argue are needed to establish the purported deception), Plaintiffs fail to state a claim based on even the new theories of misrepresentation that they have raised in their Opposition.

### G. Even if Unjust Enrichment Is a Cause of Action Under California Law, Plaintiffs Plead Themselves Out of the Claim by Alleging a Binding Contract

Under well-established precedent in this District and recent California appellate court authority, unjust enrichment is not a standalone cause of action and claims purporting to be such a claim may properly be dismissed. *See* Br. at 19; *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132 (N.D. Cal. 2020) (collecting California and federal cases). Rather than contend with the majority position, Plaintiffs restate the minority position that claims for unjust enrichment can be construed as a quasi-contract claim for restitution. *See* Opp. at 22-23. But, even under the minority position, "an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Tsai v. Wang*, 2017 WL 2587929, at *7 (N.D. Cal. June 14, 2017); *Klein v. Chevron U.S.A.*, Inc., 202 Cal. App. 4th 1342, 1388 (2012) ("A plaintiff may not . . . pursue or recover on a quasi-contract claim if the parties have an enforceable agreement regarding a particular subject matter."); *see also* Opp. 23:4-6 ("By definition, an unjust enrichment claim may proceed when there is no actual wholly integrated contract covering the subject matter at issue.") (citing *Wright v. Old Gringo Inc.,* 2019 WL 3804020, at *6 (S.D. Cal. Aug. 13, 2019)).

Plaintiffs do not dispute the validity of the contract and Terms of Use in the SAC, and instead affirm its validity by referencing its terms and incorporating the choice of law provision in the SAC. *See* SAC ¶¶ 73-74. Despite this, Plaintiffs argue that "although Plaintiffs do not dispute an agreement or contract to pay fees for the one-time doctor's visit, any purported contact [sic] with Defendant for a membership and membership fees is unenforceable." Opp. 23:7-19. And while it is true that "a plaintiff may plead inconsistent claims that allege both the existence of an enforceable agreement and the absence of an enforceable agreement" in the alternative, a quasi-contract claim for restitution must be dismissed where, as here, the plaintiff "pleaded the existence of an enforceable agreement and their unjust enrichment claim did not deny the existence or enforceability of that agreement." *Klein*, 202 Cal. App. 4th at 1389 (dismissing claim for unjust enrichment because plaintiffs failed to "provide any explanation as to why the consumer sales agreement referenced in their breach of contract claim might be unenforceable or otherwise not qualify as a contract"). Courts in California have consistently held that where, as here, a plaintiff acknowledges the validity of certain portions of a contract, they may not pursue a claim for unjust enrichment by purporting to plead the agreement is unenforceable in the alternative. *California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.*, 94 Cal. App. 4th 151, 172-73 (2001) (collecting cases). Here, Plaintiffs argue that the choice of law provision in the Agreement they have with PlushCare is enforceable and cite to the terms of use as relevant facts to their claims. They do not, as may be permissible under some authority, bring a claim for breach of contract and an alternative claim for unjust enrichment in case of the failure of the contract. Plaintiffs are therefore precluded from asserting a quasi-contract claim.

In addition to failing to show they may recover on a quasi-contract claim when there exists a valid contract between the parties, Plaintiffs also fail to show how they are not precluded from bringing a claim for unjust enrichment when they have chosen to "sue in tort" rather than "waiv[e] the tort." *See McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004); Br. at 20. Courts in this district and elsewhere have consistently held that where a plaintiff, as here, brings statutory and common law claims sounding in fraud, any unjust enrichment claim based on the same theory should be dismissed. *See In re Apple and AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d

FENWICK & WEST LLP
ATTORNEYS AT LAW

1070, 1077 (N.D. Cal. 2011) (holding "plaintiffs cannot assert unjust enrichment claims that are merely duplicative of statutory or tort claims") (citing cases). Accordingly, Plaintiffs fail to show why their unjust enrichment claims should not be dismissed.

### H.    Plaintiffs Fail to Plead a Conversion Claim

Plaintiffs fail to distinguish authority from the California Court of Appeal finding that factual allegations like those in the SAC fail to state a claim for conversion under California law (*see* Br. at 21-22). The sole basis for Plaintiffs' conversion claim is an alleged violation of the ARL. *See* Opp. 24:14-18. But, Plaintiffs have failed to plead any affirmative act on PlushCare's part sufficient to establish liability for conversion. *See* Br. at 22:13-22; *see also Archer v. Coinbase, Inc.,* 53 Cal. App. 5th 266, 276 (2020); *Spates v. Dameron Hosp. Ass'n,* 114 Cal. App. 4th 208, 222 (2003) ("[C]onversion requires affirmative action to deprive another of property, not a lack of action."). Plaintiffs also fail to address the failure to establish anything more than a mere demand for reimbursement of money paid, which is not recognized as a conversion claim in California. *See e.g.*, *Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1094 (S.D. Cal. 2016) ("[T]he crux of Plaintiffs' claim is that Defendant charged them for services they otherwise would not have used . . . . But as the California Court of Appeal has noted, there is no support for the position that an overcharge, without more, gives rise to a claim for conversion.").

In addition, Plaintiffs have not meaningfully alleged that their acceptance of the terms presented during the enrollment process did not constitute effective consent. *See* SAC, Exs. 2 & 3. They have only alleged, at best, that they did not understand those terms. *See, e.g.*, SAC ¶¶ 30-31 (describing Plaintiff Robbins' consent to the transaction). But, a plaintiff's consent to the transfer at issue defeats a claim for conversion. *See Klett v. Sec. Acceptance Co.*, 38 Cal. 2d 770, 789 (1952); *Driver v. Acquisto*, 145 Cal. App. 2d 304, 308 (1956); *see also* Br. at 21-22. Thus, there is no viable claim for conversion because the transfers at issue were authorized by consent and not appropriated by an affirmative act by PlushCare. *See* Br. at 22.

FENWICK & WEST LLP
ATTORNEYS AT LAW

I.     **Non-California Residents May Not Bring a UCL Claim Premised on Violation of the ARL**

Finally, Plaintiffs attempt to show that non-California residents may bring a UCL claim for violation of the ARL because PlushCare's Terms of Use state that California law applies to the contract between it and these consumers.  This position is incorrect and contrary to the express language of the ARL.[3]  California's ARL unambiguously provides that it applies only to "a consumer in this state."  Cal. Bus. & Prof. Code § 17602(a).  PlushCare's Terms of Use do not render non-Californians "consumers in this state."

Many other states have their own automatic renewal laws that equally apply *only* to consumers in those states.  *See, e.g.*, N.Y. Gen. Bus. Law § 527-a ("to a consumer in this state"); Colo. Rev. Stat. Ann. § 6-1-732 ("to a consumer in this state").  PlushCare's Terms of Use do not allow PlushCare to substitute California law for New York or Colorado law as to consumers in those states.  Rather, under California law, PlushCare must comply with California's ARL as to California consumers, New York's ARL as to New York consumers, Colorado's ARL as to Colorado consumers, and so forth.  Accordingly, Plaintiff Smith and other out-of-state consumers like her cannot state a UCL claim against PlushCare predicated on the California ARL, which does not protect them.  *See Wahl v. Yahoo! Inc.*, 2017 WL 4098884, at *1 (N.D. Cal. Sept. 15, 2017) ("Wahl [a Missouri resident] has not pled facts to establish a violation of California's Automatic Renewal Law.  That law proscribes certain unlawful conduct by 'any business making an automatic renewal or continuous service offer *to a consumer in this state*.'") (emphasis in original).  To hold otherwise would supplant the will of those states' legislatures to enact (or not to enact) laws that prescribe the automatic renewal requirements applicable to its consumers.

III.    **CONCLUSION**

PlushCare's Motion to Dismiss should be granted, with the dismissed claims being dismissed with prejudice.

---

[3] Plaintiffs also oppose the motion on the grounds that they have alleged a violation of the EFTA. However, the EFTA was not pled as a predicate basis for the UCL claim; Plaintiffs only rely on the alleged violation of the ARL.  *See* SAC ¶¶ 91-109 (mentioning only the ARL and brought on behalf of the Nationwide Class and California Subclass, but not the Nationwide EFTA Class).

Fenwick & West LLP
Attorneys at Law

1

2  Dated:   June 24, 2022                    FENWICK & WEST LLP

3

4                                           By: */s/ Tyler G. Newby*
                                                _____
5                                               Tyler G. Newby

6                                               Attorneys for Defendants
                                                PLUSHCARE, INC. and PLUSHCARE OF
7                                               CALIFORNIA, INC., A.P.C.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28