UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SARAH ROBBINS, et al.,

        Plaintiffs,

    v.

PLUSHCARE, INC., et al.,

        Defendants.

Case No. 21-cv-03444-MMC (TSH)

**DISCOVERY ORDER**

Re: Dkt. Nos. 65, 69

We are here on two joint discovery letter briefs. ECF Nos. 65, 69. The Court held a hearing on August 12, 2022 and now issues this order.

**A.     Off-Site Advertising**

The first dispute concerns PlushCare's advertising. Plaintiffs' request for production ("RFP") 15 sought "[a]ll advertising, including drafts of advertising, and modification and changes to YOUR advertising, of YOUR membership programs during the RELEVANT TIME PERIOD." RFP 49 sought "[c]olor copies of all YOUR active and inactive/archived advertising related to YOUR virtual healthcare service during the RELEVANT TIME PERIOD, including social media advertising and online advertising." The RFPs define the relevant time period as May 7, 2017 through the present. PlushCare states that it has produced documents showing the portions of its website, including the membership enrollment process, that describe its services and membership program. However, it objects to producing advertisements hosted elsewhere.

As you'll recall, the gist of Plaintiffs' claims is that when customers book an appointment on PlushCare's website or mobile app, they are automatically enrolled in a recurring membership with a monthly fee, without adequate disclosure that this is happening. The Second Amended Complaint ("SAC") focuses in great detail about the enrollment steps on the website. ECF No. 50,

¶¶ 15, 17-23.  In light of this, the Court has a hard time understanding why off-site advertising – namely, advertising that is neither on PlushCare's website nor its mobile app – is relevant and proportional to the needs of the case.  The SAC is quite clear that the wrongdoing occurs when the customer books an appointment, and that happens on the website or the mobile app.

Consider the one example of off-site advertising mentioned in the SAC.  Paragraph 16 refers to an ad that says:  "Access top doctors right when you need them, no matter where you are.  Book a virtual appointment with PlushCare in minutes for:  Urgent medical issues, Mental health care, Everyday health concerns, Prescription refills & more."  It goes on to say that most insurance plans are accepted, and it quotes a text exchange recommending PlushCare because of its convenient virtual appointments and same-day prescription pickup.  It's true that the ad doesn't mention a monthly membership, but it's also true that the ad contains no discussion of the subject of pricing or how to book an appointment.  PlushCare's advertising about the convenience of its services really has nothing to do with this case.

Plaintiffs argue that PlushCare's off-site advertising is relevant because it likely never mentions the monthly membership.  The Court will assume Plaintiffs are factually correct about that.  Let's think about this theory of relevance for a minute.  What we have here is an alleged failure to adequately disclose a material term at what we can think of as the point of sale.  There is no allegation that the company's advertising outside of the point of sale is in any way misleading.  Are Plaintiffs entitled to take discovery of *all* of Defendant's advertising so they can argue *you didn't disclose the material term anywhere else either*?

If we stretch relevance to its outer bounds, in a case alleging a failure to disclose at the point of sale, in theory that failure renders all other communications with the customer relevant because she might not have been misled if she had been given the relevant information elsewhere.  For example, if Apple fails to disclose shipping costs at the point of sale on its website, you could argue that all of Apple's ads about everything are relevant because they shed light on how much Apple draws customers' attention to the issue of shipping costs.  If Apple constantly reminds customers that shipping costs are additional to the price of the product, perhaps Apple could argue that the failure to disclose at the point of sale isn't material.  By contrast, if Apple never or almost

never mentions shipping costs in its ads, wouldn't that make the plaintiff's case stronger?

Plaintiffs make a similar argument here. They hypothesize that if PlushCare's off-site ads did disclose the monthly membership aspect of the service, then PlushCare would surely argue that the confusing point of sale doesn't matter. Therefore, they reason, the likely absence of that information in PlushCare's off-site ads – which presumably emphasize the convenience and quality of the service, not the details of booking an appointment – must work in reverse to make their case stronger.

Fair enough. If you want to make a perfect reconstruction of what a reasonable person would understand about PlushCare at the moment she booked an appointment, and you don't care how expensive and burdensome that is, you would want to assemble *all* of PlushCare's ads to have a complete view of what the customer knew about the company's service.

But this is where the proportionality requirement comes in. The SAC is clear that the alleged wrongdoing happens at the moment of booking an appointment and not elsewhere. There are no allegations that PlushCare's off-site advertising is misleading. Plaintiffs are moving to compel more than five years of advertising on the theory that the absence of something in the ads will make their case marginally stronger. In the absence of an allegation that the off-site advertising is itself misleading, this discovery isn't proportional to the needs of the case. Plaintiffs' motion to compel production of off-site advertising is therefore denied.

**B.    Nationwide Data Through the Present**

The next dispute concerns nationwide data. This is the information responsive to interrogatory ("rog") 3 and RFPs 23, 24, 34, 35 and 40. It's information about the proposed nationwide class and classwide damages. There was previously a dispute about whether PlushCare had to produce credit card-related data outside of California, *see* ECF Nos. 53 & 61, but Judge Chesney's order at ECF No. 64 resolved that (the answer is yes). Now, the dispute is whether they have to produce it through the present (as Plaintiffs request) or whether they may limit it to the end of 2021 (as PlushCare urges).

The Court rejects PlushCare's proposal to cutoff nationwide data at the end of 2021. At the hearing PlushCare argued that it has made unspecified changes to the booking process that in

3

1   some manner changed things.  However, PlushCare submitted no proof of this, and the Court
2   cannot cutoff Plaintiffs' entitlement to discovery based on defense counsel's evidence-free say so.
3   PlushCare also argues that the two named Plaintiffs enrolled in March 2020 and did not use
4   whatever the current enrollment process is.  However, the SAC alleges classes that consist of "all
5   persons" either in the U.S. or in California who were enrolled in the membership program and
6   charged a membership fee through "the date of final judgment in this action," SAC ¶ 61, which
7   would include people who used the current enrollment process.  Denying discovery of nationwide
8   data after December 2021 would be tantamount to granting summary judgment against every class
9   member who enrolled after that date, without any evidentiary showing that the alleged conduct
10  stopped.  Finally, PlushCare argues that this data production is unnecessary at this time and the
11  Court should wait to see if Judge Chesney certifies a class before ordering this discovery
12  produced.  However, fact discovery has not been bifurcated, and PlushCare's argument still leaves
13  December 2021 as an arbitrary discovery cutoff unilaterally chosen by the Defendant.

Accordingly, the Court orders PlushCare to produce nationwide data through the present.

**IT IS SO ORDERED.**

Dated: August 18, 2022

_____
THOMAS S. HIXSON
United States Magistrate Judge