**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)
*alexis@consumersadvocates.com*
KAS L. GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorneys for Plaintiffs and the Proposed Class***

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH ROBBINS and TIFFANY SMITH, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>PLUSHCARE, INC. and PLUSHCARE OF CALIFONRIA, INC., A.P.C.<br>　　　　　　Defendants. | Case No.: 3:21-cv-03444-MMC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Date: March 10, 2023**<br>**Time: 9:00 a.m.**<br>**Dept.: Courtroom 7, 19th Floor**<br>**Judge: Honorable Maxine M. Chesney** |

**TO ALL PARTIES AND THEIR ATTORNYES OF RECORD:**

**NOTICE IS HEREBY GIVEN THAT** on March 10, 2023 at 9:00 a.m., or as soon thereafter as the Court is available, in the courtroom of the Honorable Maxine M. Chesney, located at Courtroom 7 – 19th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Sarah Robbins and Plaintiff Tiffany Smith (collectively "Plaintiffs"), will and hereby do move, pursuant to Fed. R. Civ. P. 23(e) for the Court to: (i) grant preliminary approval of the proposed Class Action Settlement and Release (the "Settlement" or "Settlement Agreement") submitted herewith; (ii) provisionally certify the Class for the purposes of preliminary approval, designate Plaintiffs as the Class Representatives, and appoint Alexis M. Wood and Kas L. Gallucci of the Law Offices of Ronald A. Marron, as Class Counsel; (iii) establish procedures for providing notice to members of the Class; (iv) approve the forms of notice to Class Members; (v) mandate procedures and deadlines for exclusion requests and objections; and (vi) set a date, time and place for a final approval hearing.

This Motion is made on the grounds that terms of the proposed Settlement are fair and reasonable, and that preliminary approval of the Settlement is therefore proper because each requirement of Rule 23(e) has been met. Accordingly, Plaintiffs request that the Court enter the accompanying [Proposed] Order Granting Preliminary Approval of the Class Action Settlement (the "[Proposed] Preliminary Approval Order").

This Motion is based on the Declaration of Alexis M. Wood (the "Wood Decl.") and the exhibits attached thereto, including the Settlement Agreement; the [Proposed] Preliminary Approval Order submitted herewith; the Declaration of Steven Weisbrot of Angeion Group, LLC (the "Weisbrot Decl.") and attached exhibits; the Memorandum of Points and Authorities filed herewith; the pleadings and papers on file in this Action; and such other evidence and argument as may subsequently be presented to the Court.

DATED: February 1, 2023

Respectfully submitted,

*/s/ Alexis M. Wood*
Alexis M. Wood
**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON
*ron@consumersadvocates.com*

ALEXIS M. WOOD
*alexis@consumersadvocates.com*
KAS L. GALLUCCI
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorney for Plaintiffs and the Proposed Class***

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STATEMENT OF THE ISSUES TO BE DECIDED

Pursuant to Local Rule 7-4(a)(3) of the Civil Local Rules, Plaintiffs set forth the following Statement of Issues to be Decided:

1.  Whether the Court should certify, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), a Class of all Persons who, from January 10, 2020 to August 30, 2022, enrolled in an automatically renewing Monthly Subscription after booking an appointment with PlushCare, and who, during that time period, were charged and paid one or more automatic renewal fees in connection with such subscription, and further appoint Plaintiffs as representatives for the Class and appoint Alexis M. Wood and Kas L. Gallucci of the Law Offices of Ronald A. Marron as Class Counsel for the purpose of the Settlement?

2.  Whether the terms of the Settlement Agreement represent a fair and reasonable compromise of the putative Class's claims and warrants preliminary approval and notice to the Class?

3.  Whether the Notice program, as set forth in the Settlement Agreement, represents the best practicable notice to apprise the Class Members of the pendency of the class action and to give each Class Member a chance to be heard, object to, or opt out of the proposed Settlement?

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................1

II.     FACTUAL AND PROCEDUAL BACKGROUND.................................2

IV.     THE TERMS OF THE PROPOSED SETTLEMENT ..............................4

    A.  Class Definition ......................................................................4

    B.  Monetary Relief For Class Members .................................................5

    C.  Prospective Relief Agreed to by Defendants ........................................6

    D.  Release .................................................................................6

    E.  Incentive Awards .....................................................................6

    F.  Attorneys' Fees and Expenses .......................................................6

    G.  Notice and Administrative Expenses .................................................7

V.      THE COURT SHOULD GRANT PRELIMIARY APPROVAL...................7

    A.  The *Hanlon* Factors .................................................................8

      1. Strength of Plaintiffs' Case ...................................................... 8

      2. Risk of Continuing Litigation .................................................... 9

      3. Risk of Maintaining Class Action Status ...................................... 11

      4. The Amount Offered In Settlement.............................................. 12

      5. The Extent of Discovery ......................................................... 13

      6. Experience and View of Counsel ............................................... 14

    B.  The Rule 23(e)(2) Factors .........................................................14

      1. The Class Representative and Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A)) ......................................................... 14

2. The Settlement Was Negotiated At Arm's Length ...................................... 15

3. The Settlement Provides Adequate Relief To The Class ........................... 16

4. The Settlement Treats All Class Members Equally ................................. 19

VI.    CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE ................19

A.   The Class Satisfies Rule 23(a) .........................................................20

1. Numerosity ............................................................................... 20

2. Commonality ............................................................................. 20

3. Typicality .................................................................................. 22

4. Adequacy ................................................................................... 22

B.   The Class Satisfies Rule 23(b)(3) .....................................................23

VIII.  THE PROPOSED NOTICE PLAN SHOULD BE APPROVED ................................24

A.   The Proposed Class Notice Complies With Rule 23(c)(2) ....................................24

B.   Distribution Of The Class Notice Will Comply With Rule 23(c)(2) ......................25

X.     CONCLUSION ...................................................................................25

**TABLE OF AUTHORITIES**

**Cases**

*Alvarez v. Farmers Ins. Exch.*,
No. 3:14-cv-00574-WH), 2017 WL 2214585 (N.D. Cal. Jan. 18, 2017)................................. 18

*Alvarez v. Sirius XM Radio Inc.*,
No. CV 18-8605 JVS (SSx), 2020 WL 7314793 (C.D. Cal. July 15, 2020)...................... 16, 21

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ....................................................................................... 20

*Blandino v. MCM Constr., Inc.*,
No. C 12-1729 WHO, 2014 WL 11369763 (N.D. Cal. Mar. 6, 2014).................................... 18

*Boyd v. Avanquest N. Am. Inc.*,
No. 12-cv-04391-WHO, 2015 WL 4396137 (N.D. Cal. July 17, 2015 ...................... 16, 19, 21

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) ................................................................... 14, 16

*Carter v. XPO Logistics, Inc.*,
No. 16-cv-01231-WHO, 2019 WL 5295125 (N.D. Cal. Oct. 18, 2019).............................. 8, 13

*Chavez v. Blue Sky Nat. Beverage Co.*,
268 F.R.D. 365 (N.D. Cal. 2010) ........................................................................ 22

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F. 3d 566 (9th Cir. 2004)............................................................................. 8

*Dalchau v. Fastaff, LLC*,
No. 17-cv-01584-WHO, 2018 WL 1709925 (N.D. Cal. Apr. 9, 2018) ................................ 21

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............. 9, 17, 18

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ....................................................................................... 22

*Greko v. Diesel U.S.A., Inc.*,
No. 10-cv-02576 NC, 2013 WL 1789602 (N.D. Cal. Apr. 26, 2013).................................... 18

-iii-

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998).................................................................. 8, 21, 22, 24

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) ..................................................................... 18

*In re Apple Computer Sec. Litig.*,
  No. C-84-20148(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) .................................... 11

*In re Extreme Networks, Inc. Sec. Litig.*,
  No. 15-cv-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019).................................. 19

*In re Lidoderm Antitrust Litig.*,
  No. 14-md-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) .............................. 18

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ....................................................................... 13, 18

*In re Netflix Privacy Litig.*,
  No. 5:11-cv-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)................................ 11

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995)........................................................................ 15, 18

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ......................................................................... 15

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................ 19

*Johnson v. Triple Leaf Tea Inc.*,
  No. 3:14-cv-01570-MMC, 2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ............................ 11

*Knapp v. Art.com, Inc.*,
  283 F. Supp. 3d 823 (N.D. Cal. 2017) .............................................................. 12, 13

*Krommenhock v. Post Foods, LLC*,
  334 F.R.D. 552 (N.D. Cal. 2020) ...................................................................... 20

*Larsen v. Trader Joe's Co.*,
  No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014)...................... 9, 11, 17

-iv-

*Linney v. Cellular Alaska P'ship*,

    151 F.3d 1234 (9th Cir. 1998) .......................................................................... 12, 18

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,

    221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................... 9, 12

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty of San Francisco*,

    688 F.2d 615 (9th Cir. 1982) .............................................................................. 8, 12

*Ortiz v. Fibreboard Corp.*,

    527 U.S. 815 (1999) ................................................................................................. 24

*Pena v. Taylor Farms Pac., Inc.*,

    No. 2:13-cv-01282-KJM-AC, 2021 WL 916257 (E.D. Cal. Mar. 10, 2021) ............................ 8

*Perks v. Activehours, Inc.*,

    No. 5:19-cv-05543-BLF, 2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ........................ 15, 19

*Ramirez v. TransUnion LLC*,

    951 F.3d 1008 (9th Cir. 2020) .............................................................................. 22

*Ries v. Arizona Beverages USA LLC*,

    287 F.R.D. 523 (N.D. Cal. 2012) .......................................................................... 21

*Rodriguez v. West Publ'g Corp.*,

    563 F.3d 948 (9th Cir. 2009) ........................................................................ passim

*State of California v. eBay, Inc.*,

    No. 5:12-CV-05874-EJD, 2014 WL 4273888 (N.D. Cal. Aug. 29, 2014) ............................ 19

*Vasquez v. Coast Valley Roofing, Inc.*,

    266 F.R.D. 482 (E.D. Cal. 2010) .......................................................................... 18

*Villegas v. J.P. Morgan Chase & Co.*,

    No. CV 09-00261 SBA (EMC), 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) .................... 16

*Vizcaino v. Microsoft Corp.*,

    290 F.3d 1043 (9th Cir. 2002) ...................................................................... 17, 18

*Wal-Mart Stores, Inc. v. Dukes*,

    564 U.S. 338 (2011) ...................................................................................... 20, 21

*Wellens v. Sankyo*,

    No. C 13-00581 Who (DMR), 2016 WL 8115715 (N.D. Cal. Feb. 11, 2016) ....................... 18

*Zinser v. Accufix Research Inst., Inc.*,

    253 F.3d 1180 (9th Cir. 2001) .............................................................................................. 23

**Other Authorities**

Federal Judicial Center, Manual for Complex Litigation § 21.62, at 316 (4th ed. 2004)............... 9

*Newberg*, § 11.27 (4th ed. 2002)................................................................................................. 19

*Newberg,* § 11.28 (4th ed. 2002)................................................................................................. 23

**Rules**

Fed. R. Civ. P. 23(a) ..................................................................................................................... 20

Fed. R. Civ. P. 23(a)(1) ................................................................................................................. 20

Fed. R. Civ. P. 23(a)(2) ................................................................................................................. 20

Fed. R. Civ. P. 23(a)(3) ................................................................................................................. 22

Fed. R. Civ. P. 23(a)(4) ................................................................................................................. 22

Fed. R. Civ. P. 23(b)(3)............................................................................................................ 20, 24

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................................ 24

Fed. R. Civ. P. 23(e) ..................................................................................................................... 16

Fed. R. Civ. P. 23(e)(2)............................................................................................................... 7, 8

Fed. R. Civ. P. 23(e)(2)(C)(i-iv) ................................................................................................... 16

Fed. R. Civ. P. 23(e)(2)(D) ........................................................................................................... 19

## I.   INTRODUCTION

Plaintiffs Sarah Robbins and Tiffany Smith ("Plaintiffs"), by and through Class Counsel,[1] respectfully submit this memorandum in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.  In this putative class action, Plaintiffs allege that Defendants PlushCare, Inc. and PlushCare of California, Inc. A.P.C. (collectively, "PlushCare" or "Defendants") failed to comply with the Electronic Funds Transfer Act (15 U.S.C. §§ 1693, *et seq.*, "EFTA"), California's Unfair Competition Law (Cal Bus. & Prof. Code §§ 17200, *et seq.,* "UCL"), and California's Consumers Legal Remedies Act (Cal. Bus. & Prof. Code §§ 1750, *et seq.*, "CLRA") by inconspicuously incorporating an automatic renewal or continuous service membership at the end of their appointment booking process.  Since filing the Complaint, discovery has revealed that Defendants collected auto renew membership fees from approximately 366,271 customers from January 10, 2020 to August 30, 2022.

With the assistance of a private mediator, the Parties reached a class settlement agreement that, if approved, will deliver immediate and substantial monetary relief to putative Class Members and will resolve Plaintiffs' and the putative class's claims against Defendants.  The Class Action Settlement Agreement and Release (the "Settlement") and its exhibits are submitted as Exhibit 1 to the contemporaneously filed Declaration of Alexis M. Wood (the "Wood Decl.").  The Settlement consists of cash benefits and prospective relief which will clarify Defendants' enrollment process and existing terms of use.   Under the Settlement's terms, Defendants will establish a non-reversionary cash Settlement Fund in the amount of $3,700,000.00, which will be used to pay all approved claims by Settlement Class Members, notice and administration expenses, Court-approved incentive awards to Plaintiffs, and attorneys' fees and costs to proposed Class Counsel to the extent awarded by the Court.

Defendants do not oppose this motion.  Given the exceptional relief secured on behalf of the Class, the Court should have no hesitation finding that the Settlement is fair and reasonable, and

---

[1] All capitalized terms not otherwise define herein shall have the same definitions as set out in the Settlement Agreement.  *See* Wood Decl. Exhibit 1.

warrants preliminary approval.  Accordingly, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the proposed Settlement; (2) conditionally certify the Settlement Class under Fed. R. Civ. P. 23(b)(3); (3) appoint Alexis M. Wood and Kas L. Gallucci of the Law Offices of Ronald A. Marron as Class Counsel; (4) appoint Sarah Robbins and Tiffany Smith as the Class Representatives for the Settlement Class; (5) approve the Notice Plan described in the Settlement and direct its distribution; and (6) schedule a hearing for final approval.

## II.        FACTUAL AND PROCEDUAL BACKGROUND

On May 7, 2021, Plaintiff Robbins filed this class action on behalf of herself and putative class members who, when booking an appointment with a PlushCare doctor, were automatically enrolled and charged for a monthly PlushCare membership which they did not consent to purchase. *See* Dkt. No. 1. Ms. Robbins stated that Defendants' action of illegally charging monthly fees through electronic funds transfers without authorization due to their failure to clearly disclose their terms of their subscription service, violated the Electronic Funds Transfer Act (15 U.S.C. §§ 1693, *et seq.*, "EFTA"), California's Unfair Competition Law (Cal Bus. & Prof. Code §§ 17200, *et seq.*, "UCL") and California's Consumers Legal Remedies Act (Cal. Bus. & Prof. Code §§ 1750, *et seq.*, "CLRA"). Additionally, Plaintiff Robbins pled negligent misrepresentation (Cal. Civ. Code §§ 1709-1710), unjust enrichment, theft (Cal. Penal Code § 496), conversion, and false advertising (Cal. Bus. & Prof. Code §§ 17600 *et seq.* and § 17353).

Defendants moved to dismiss Plaintiff Robbins' Complaint, and on August 9, 2021, Plaintiff Robbins filed a First Amended Complaint ("FAC"). *See* Dkt. No. 22. Defendants moved to dismiss Plaintiff Robbins' FAC on August 23, 2021. *See* Dkt. No. 24. On October 21, 2021, the Court granted in part and denied in part Defendants' Motion to Dismiss the FAC finding the "automatic renewal offer terms" on the PlushCare's website were not "in visual proximity" to "the request for consent to the offer" which caused PlushCare's autorenewal to be unclear and found that Plaintiff sufficiently alleged a violation of California's Automatic Renewal Law ("ARL") and the Electronic Fund Transfer Act ("EFTA") and furthermore found adequate all of Plaintiff's claims based on a violation of the ARL.  Dkt. No. 35. On November 16, 2021, Defendants filed an Answer. *See* Dkt. No. 40.

On May 11, 2022, the Court granted in part Plaintiff Robbins' Motion to Amend Pleadings which requested to include additional factual allegations relating to Plaintiff Robbins, Defendants' location and single vendor – both located in California, and Defendants' choice of law provision – California, and to modify the classes and add an additional plaintiff and proposed class representative, Plaintiff Smith. *See* Dkt. No. 49. In its ruling, this Court found that Plaintiff Robbins' request to add a Nationwide Class with respect to all Plaintiffs' claims, including claims pursuant to California statutes and not just Plaintiff's EFTA claim, was not futile as the allegations did not only rely on a violation of California's ARL, which could only be brought on behalf of consumers in California, but also provided allegations of wrongful conduct against Defendants generally, namely, a failure to fairly apprise consumers of the terms they were accepting. *See id.* at p. 1.

On May, 20, 2022, Plaintiffs Sarah Robbins and Tiffany Smith filed the operative Second Amended Complaint ("SAC"), seeking to represent a Nationwide Class of "[a]ll persons within the US who, within the applicable statute of limitations period, up to and including the date of final judgement in this action, were enrolled by Defendants in their membership program and charged monthly membership fees after booking an appointment." *See* Dkt. No. 50 at ¶ 61. Plaintiffs also sought to represent a Nationwide EFTA Subclass and a California subclass of consumers. *Id.* On June 3, 2022, Defendants filed a Motion to Dismiss Plaintiffs' SAC. Dkt. No. 51.

On July 28, 2022, the Court denied Defendants' Motion to Dismiss Plaintiffs' SAC in its entirety as to Plaintiff Robbins, finding Defendants could not now argue what it failed to argue in their first motion to dismiss the FAC. *See* Dkt. No. 64 at p. 2. As to Ms. Smith, the Court found the claims under the ETFA and the unfair prong of the UCL were not subject to dismissal stating: "Although PlushCare argues the claim sounds in fraud and does not comply with Rule 9(b)'s specificity requirements, the Court, in granting plaintiffs' motion for leave to file the SAC, found such claim is based on an alleged "failure to fairly apprise consumers of the terms they were accepting" (*see* Order, filed May 11, 2022, at 1:19-2:2), i.e., a claim that does not sound in fraud." *See id.* at p. 3. Last, the Court found Ms. Smith's claim for conversion was not subject to dismissal because it was premised on PlushCare's charging recurring fees to Ms. Smith's credit card without her consent, thereby allegedly wrongfully depriving her of cognizable property rights. *See id.* at p.

5. On August 18, 2022, Defendants filed an Answer to the SAC (Dkt. No. 73) and on September 9, 2022, Defendants filed a Motion for Judgment on the Pleadings (Dkt. No. 74).

From the outset, the Parties engaged in direct communication regarding early resolution as required by Fed. R. Civ. P. 26.  Those discussions lead to a first mediation session before the Honorable Wayne Andersen (Ret.) of JAMS on February 2, 2022, via Zoom, and a second in-person 10-hour mediation session before Judge Andersen on October 24, 2022. *See* Wood Decl., ¶ 9. Prior to the second mediation session, the Parties conducted substantial written discovery, including two sets of Requests for Production of Documents and Interrogatories to Defendants which resulted in eight separate productions of documents, one which resulted from intervention from the Court as well as discovery propounded on the Plaintiffs, and third-party discovery. *Id*. ¶ 10.  Additionally, Plaintiff Robbins sat for her deposition. *Id*.  During the second mediation session, the Parties reached an agreement to settle the case. *Id*. ¶ 11.  The Parties engaged in good faith negotiations, which at all times were at arms' length and which culminated in an agreement to settle the case. *Id*.  ¶ 12-13.

## IV.    THE TERMS OF THE PROPOSED SETTLEMENT

The key terms of the Settlement are briefly summarized as follows:

### A.    Class Definition

The proposed Settlement Class consists of "all Persons who, from January 10, 2020 to August 30, 2022, enrolled in an automatically renewing Monthly Subscription after booking an appointment with PlushCare, and who, during that time period, were charged and paid one or more automatic renewal fees in connection with such subscription."[2]  Settlement ¶ 1.36.  The difference between this definition and the definition in the SAC are minimal such that the Class Period now starts at January 10, 2020, the date when Defendants begin their membership program and ends

---

[2] Excluded from the Settlement Class are: (1) any Judge or Magistrate presiding over this Action and members of their families; (2) Defendants, Defendants' subsidiaries, parent companies, successors, predecessors, and any entity in which Defendants or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) Persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any excluded Persons. *Id*.

August 30, 2022.   There are no other cases known by the Parties that will be affected by this Settlement Class.

### B.   Monetary Relief For Class Members

Defendants will establish a non-reversionary cash Settlement Fund of $3,700,000, which will be used to pay all Approved Claims by Class Members, Notice and Other Administrative Costs, Court-approved Incentive Awards to Plaintiffs, and the Fee Award to proposed Class Counsel to the extent awarded by the Court.  Settlement ¶ 1.38.  Settlement Class Members wishing to receive a *pro rata* cash payment from the Net Settlement Fund must submit a valid Claim Form to the Settlement Administrator by the Claims Deadline.  *Id*. ¶ 3.1.  The Settlement Administrator will be responsible for reviewing all claims to determine their validity. The Settlement Administrator will reject any claim that does not comply in any material respect with the instructions on the Claim Form (defined at paragraph 1.4) or the terms of paragraph 1.2 (defining "Approved Claim"), or that is submitted after the Claims Deadline specified at paragraph 1.5. Defendants have the right to audit the claims process for evidence of fraud or error; provided, however, that the Settlement Administrator or the Court shall be the final arbiter of a claim's validity.  *Id*. ¶ 3.2.

All cash payments issued to Settlement Class Members via check or electronic check will state on the face of the check that it will expire and become null and void unless cashed within one hundred and eighty (180) days after the date of issuance. Settlement ¶ 3.4.  If a check issued to a Settlement Class Member is not cashed within one hundred and eighty (180) days after the date of issuance, those uncashed funds, as well as any unclaimed funds remaining in the Settlement Fund shall be distributed to those Class Members who have cashed their checks.  *Id*.  Any funds not paid out after the expiration of the second one hundred and eighty (180) days after the date of issuance of the second distribution, if practicable, such funds shall revert to the National Consumer Law Center, a 50l(c)(3) entity, or, if the intended beneficiary is unable to receive these funds, other non-sectarian, not-for-profit organization(s) with a similar mission recommended by Class Counsel and Defendants, and as approved by the Court.  *Id*.

### C.  Prospective Relief Agreed to by Defendants

Defendants agree to provide automatic renewal terms on their Website, including booking pages, in a manner that is consistent with the requirements of Cal. Bus. & Prof. Code §§ 17600, *et seq.*("ARL").  Defendants agree to present to all customers, in a clear and conspicuous manner, information regarding their auto renewing monthly membership which a customer is automatically enrolled in after booking an appointment with PlushCare, online or through the mobile application. Defendants will obtain affirmative consent to the agreement containing the automatic renewal terms in a manner that complies with the ARL, meaning the request for consent must be in visual proximity to the offer terms. The specifics of the prospective relief are included in paragraph 3.5(a)-(g) of the Settlement Agreement and Wood Decl., ¶ 19-20.

### D.  Release

In exchange for the relief described above, Defendants as the "Released Parties" as defined at ¶ 1.33 of the Settlement will receive a full release of all claims arising out of or related to Defendants' automatic renewal and/or continuous service programs from January 10, 2020 through August 30, 2022. *See id.* ¶¶ 1.32, 4.1-4.2 for full release language. There are no differences between the claims to be released and the claims in the operative complaint.

### E.  Incentive Awards

Subject to Court approval, in recognition for the efforts of Plaintiffs Sarah Robbins and Tiffany Smith on behalf of the Settlement Class, Plaintiffs will seek incentive awards of up to $5,000 each from the Settlement Fund. Plaintiffs have both spent substantial time on this action, have assisted with the investigation of this action and the drafting of the complaint, responding to discovery and sitting for a deposition (Ms. Robbins).  Plaintiffs have been in contact with counsel frequently and have stayed informed of the status of the action, including Settlement. The Settlement is not expressly contingent upon the amount of any incentive award. Settlement ¶ 9.2.

### F.  Attorneys' Fees and Expenses

Defendants have agreed that the Settlement Fund may also be used to pay Class Counsel reasonable attorneys' fees and to reimburse expense in this Action, in an amount to be approved by the Court.  Settlement ¶ 9.1.  Plaintiffs will petition the Court for an award of attorneys' fees not to

exceed one-third of the Settlement Fund (a maximum of $1,233,333) and for reimbursement of costs (estimated to be approximately $75,000). *See* Wood Decl., ¶ 29.  There is no clear sailing agreement. Settlement ¶ 9.1. Further, approval of the Settlement is expressly not contingent upon approval of Plaintiffs' request for fees and expenses. Settlement ¶ 9.2.  The attorney fee request is based upon an approximate lodestar calculation of $640,000 including total attorney hours of approximately 980 through the filing of this preliminary approval motion and eliminating any hours to be extending from preliminary approval though the final distribution of funds. *See* Wood Decl. ¶ 29.  This lodestar amounts to a current approximate multiplier of 1.9.  *Id*.

### G.    Notice and Administrative Expenses

The Settlement Fund will be used to pay the cost of Notice set forth in the Settlement and any other notice as required by the Court, as well as all other costs of settlement administration.  *See id*. ¶¶ 1.23, 1.24, 1.38-39. The Parties have selected Angeion Group, LLC ("Angeion") to act as the Settlement Administrator. Angeion will implement the Settlement and Notice Plan agreed to by the Parties. The Parties selected the Settlement Administrator after Plaintiffs solicited bids from various settlement administrators and Angeion provided the most reasonable bid following negotiations which estimated that its notice program would provide the best notice that is practicable under the circumstances which is direct notice to all reasonably identifiable Settlement Class Members, and that the cost of its implementation would approximately $110,000. *See* Wood Decl. ¶ 27; *see* Declaration of Steven Weisbrot ("Weisbrot Decl."), ¶ 27 and Exhibit B.

Class Counsel solicited several bids from class administrators prior to the first and second mediation sessions, however selected Angeion after working with them in 2020 and pleased with the administration.  Angeion has considerable experience as an appointed settlement administrator and provides a declaration detailing its extensive data security measures it has established to securely handle data and confirming its maintenance of comprehensive insurance coverage, including Errors & Omissions coverage. *See* Weisbrot Decl.,¶¶ 26-31.

## V.    THE COURT SHOULD GRANT PRELIMIARY APPROVAL

Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

When making this determination, the Ninth Circuit has instructed district courts to balance several factors: (1) "the strength of the plaintiff's case;" (2) "the risk, expense, complexity, and likely duration of further litigation;" (3) "the risk of maintaining class action status throughout the trial;" (4) "the amount offered in settlement;" and (5) "the extent of discovery completed and the stage of the proceedings." [3] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F. 3d 566 (9th Cir. 2004) (same); *Pena v. Taylor Farms Pac., Inc.*, No. 2:13-cv-01282-KJM-AC, 2021 WL 916257, at *3 (E.D. Cal. Mar. 10, 2021) (same); *Carter v. XPO Logistics, Inc.*, No. 16-cv-01231-WHO, 2019 WL 5295125, at *2 (N.D. Cal. Oct. 18, 2019) (same).

In addition to these factors, courts should also consider the four enumerated factors in Federal Rule of Civil Procedure Rule 23(e)(2), which include whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorney's fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). There is significant overlap between the Rule 23(e)(2) and *Hanlon* factors, which complement, rather than displace each other.

### A.    The *Hanlon* Factors

#### 1.    Strength of Plaintiffs' Case

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation marks omitted). The court may

---

[3] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. This consideration is more germane to final approval and will be addressed at that time.

"presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co*., No. CV 08 1365 CW (EMC), 2010 WL 1687832, at \*9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 965 (9th Cir. 2009)).

Here, Class Counsel became thoroughly familiar with the applicable facts, legal theories, and defenses on both sides before engaging in arms-length negotiations with Defendants' counsel. *See* Wood Decl. ¶¶ 4-12. Although Plaintiffs and Class Counsel had confidence in their claims, they recognize that a favorable outcome was not assured and that they would face risks at class certification, summary judgment, and trial. *Id*. ¶¶ 25-26. Defendants vigorously deny Plaintiffs' allegations and assert that neither Plaintiffs nor the Class suffered any harm or are entitled to damages. In addition, Defendants would no doubt present a vigorous defense at trial, and there is no assurance that the Class would prevail – or even if they did, that they would be able to obtain an award of damages significantly more than achieved here absent such risks. The Settlement abrogates these risks to Plaintiffs and the Class. *See Rodriguez*, 563 F.3d at 965-66 ("[O]ne factor 'that may bear on review of a settlement'" is "the advantages of the proposed settlement versus the probable outcome of a trial on the merits of liability and damages as to the claims, issues, or defenses of the class and individual class members[.]'") (citing Federal Judicial Center, Manual for Complex Litigation § 21.62, at 316 (4th ed. 2004)). Thus, in the eyes of Class Counsel, the proposed Settlement provides the Class with an outstanding opportunity to obtain significant relief at this stage in the litigation.

## 2. Risk of Continuing Litigation

Next, approval of the proposed settlement is appropriate given the risks associated with continued litigation. By reaching a favorable settlement now, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "Generally, 'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at \*4 (N.D. Cal. July 11, 2014) (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("*DIRECTV, Inc.*")) (internal quotation marks omitted).

"Moreover, settlement is favored where, as here, significant procedural hurdles remain, including class certification and an anticipated appeal." *Id.* (citing *Rodriguez*, 563 F.3d at 966).

As discussed above, the Parties engaged in substantial discovery prior to mediation including a motion to compel filed by Plaintiffs as well as two rounds of Motions to Dismiss. *See* Wood Decl. ¶¶ 5-12. The next steps in the litigation would have been for Plaintiffs to oppose Defendants' Motion for Judgment on the Pleading and resolution of the Motion by the Court, continued discovery including expert discovery and reports, additional Party depositions, and contested motions for summary judgment and class certification, which would be at minimum costly and time-consuming for the Parties and the Court and create risk that a litigation class would not be certified and/or that the Settlement Class would recover nothing at all. For example, Plaintiffs are aware that Defendants would continue to assert defenses on the merits, including that Defendants provided all of the requisite pre-purchase disclosures under the law, presented them in a clear and conspicuous manner, and obtained the Plaintiffs affirmative consent to the automatically renewing subscription, and any alleged omissions in the post-purchase subscription acknowledgment sent to Plaintiffs do not rise to the level negligent misrepresentation, theft or conversion. Defendants would also challenge Plaintiffs' standing under California's consumer protection statutes, including Plaintiffs' ability to show that Defendants' conduct caused Plaintiffs economic injury. Plaintiffs and Class Counsel are also aware that Defendants would oppose class certification vigorously, including a contention that Plaintiffs cannot bring a nationwide class based on a violation of the ARL. Plaintiffs and Class Counsel further understand that Defendants would prepare a competent defense at trial. Even assuming that Plaintiffs were to survive summary judgment, they would likely face the risk of establishing liability at trial as a result of conflicting expert testimony between their own expert witnesses and Defendants' expert witnesses. In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which expert version would be accepted by the jury. The experience of Class Counsel has taught them that these considerations can make the ultimate outcome of a trial highly uncertain. Additionally, looking beyond trial, Defendants could appeal the merits of any adverse decision. Even if Plaintiffs were to prevail at every stage of this litigation, there remains a substantial likelihood that Class Members

would not be awarded significantly more than (or even as much as) is offered to them under this Settlement. *See, e.g.*, *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 WL 238298, at *1 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs awarding over $100 million in damages, entering judgment in favor of individual defendants, and ordering new trial for corporate defendant). In sum, "[i]n the absence of settlement now, the parties would incur significant additional costs in discovery, including depositions, … a survey of [defendant's] customers regarding the materiality of the alleged misrepresentations, and expert discovery." *Larsen*, 2014 WL 3404531, at *4. The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable and adequate to the Class. This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals, and provides certainty. "Accordingly, the high risk, expense, and complex nature of the case weigh in favor of approving the settlement." *Id.* (citing *Rodriguez*, 563 F.3d at 964).

### 3.     Risk of Maintaining Class Action Status

In addition to the risks of continuing the litigation, Plaintiffs would also face risks in certifying a class and maintaining class status through trial. The Court has not yet certified the proposed Class and such a determination could be reached only after exhaustive class certification briefing is filed and during expensive expert discovery. Moreover, even assuming that the Court were to grant a motion for class certification, the class could still be decertified at any time. *See In re Netflix Privacy Litig.*, No. 5:11-cv-00379 EJD, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted). From their prior experience, Class Counsel anticipates that, should the Court certify the class, Defendants may appeal the Court's decision through a Rule 23(f) petition and subsequently move to decertify, forcing additional rounds of briefing. Risk, expense, and delay permeate such a process. "[C]onsummating this Settlement promptly in order to provide effective relief to Plaintiff and the Class" eliminates these risks by ensuring Class Members a recovery that is certain and immediate. *Johnson v. Triple Leaf Tea Inc.*, No. 3:14-cv-01570-MMC, 2015 WL 8943150, at *4 (N.D. Cal. Nov. 16, 2015). The Settlement eliminates these risks, expenses, and delay.

4.    **The Amount Offered In Settlement**

The determination of "the fairness, adequacy, and reasonableness of the amount offered in settlement is not a matter of applying a 'particular formula.'" *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 832 (N.D. Cal. 2017) (citing *Rodriguez,* 563 F.3d at 965). Instead, the Court's analysis of whether a settlement amount is reasonable is "an amalgam of delicate balancing, gross approximations, and rough justice." *Id.* In assessing the consideration available to Class Members in a proposed Settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV, Inc.*, 221 F.R.D. at 527 (quoting *Officers for Just.*, 688 F.2d at 628). Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. Indeed, "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).[4]

In this case, the Settlement provides a non-reversionary cash fund of $3,700,000. Settlement ¶ 1.38. Settlement Class Members that submit a valid Claim Form to the Settlement Administrator are eligible to receive a *pro rata* cash payment from the $3,700,000 Settlement Fund, which the Parties estimate will be approximately $65.00 to $130.00 depending on a 5-7%[5] claims rate.[6] *Id.* ¶¶

---

[4] In Plaintiffs' SAC, the damages sought are alleged to be the full amount of renewal charges charged to Class Members' payment methods during the Class Period. *See* SAC, ¶¶ 5-6. The renewal charge for both Plaintiffs was $14.99 per month. *See* SAC, ¶¶ 39-52. The proposed Settlement Class includes approximately 366,271 individuals who booked an appointment with Defendants and were charged renewal fees in connection with Defendants' automatic enrollment of these individuals into monthly memberships during the Class Period. According to discovery, the average customer paid for approximately six months. *Id.* However, entitlement to relief in that amount is not certain, and full recovery would be unlikely for the reasons discussed above. *See supra* §§ V.A.(2)-(3). Thus, recovery in the amount of $65.00 to $130.00 based on a 5-7% claims rate is reasonable and substantial. *See* Wood. Decl., ¶ 17.

[5] *See* Weisbrot. Decl., ¶ 25.

[6] As *cy pres*, funds for checks not cashed within 180 days of issuance, subject to a second distribution, shall revert to the National Consumer Law Center, a 501(c)(3) entity, or, if it is unable to receive these funds, another California-based, non-sectarian, not-for-profit organization(s) with

---

-12-

3.2, 3.3.  In addition, Defendants have agreed to provide prospective relief, and to pay the costs of notice, administration, and reasonable attorneys' fees and costs for Class Counsel from the common fund established by the Settlement.  *Id.*  ¶¶ 1.38, 3.5 9.1.  *See also Knapp*, 283 F. Supp. 3d at 833 ("The Settlement Agreement also provides for injunctive relief, so class member that choose to continue doing business with Art.com will benefit from this aspect as well.").

Moreover, in judging the adequacy of this Settlement, it is appropriate to compare the relief offered here to settlement in other ARL matters. *See Jordan v. WP Company LLC d/b/a The Washington Post*, No. 3:20-cv-05218-WHO (N.D. Cal.) [Dkt. Nos. 60, 60-2 (Decl. of Claims Admin.) & 61 (Order Granting Attorney Fees and Costs)] (ALR settlement that included distribution of access codes where approximately 26,000 of 307,000 class members had redeemed and where the specific election was made for monetary compensation, in lieu of access codes (approximately 3.4% of the class), annual class members received approximately $44.61 and 4-week class members received approximately $22.30); *Moses v. The New York Times Company d/b/a The New York Times*, No. 1:20-cv-4658-RA (S.D. NY) [Dkt. No. 53] (auto renewal class action with a $1,650,000 cash portion of the settlement fund with cash payments to class members estimated to be $20.05).

Weighing the benefits of the Settlement against the risks associated with proceeding in litigation and in collecting on any judgment, the proposed Settlement is more than reasonable. *See Carter*, 2019 WL 5295125, at *3 ("The amount of the settlement is fair, adequate and reasonable given the risks of continued litigation.").

### 5.     The Extent of Discovery

Courts evaluate whether Class Counsel had sufficient information to make an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Plaintiffs, by and through their counsel, have conducted extensive research, discovery, and investigation during the prosecution of the Action, including, without limitation, through: (i) review of documents and interrogatory responses produced by Defendants through formal discovery and by way of a motion to compel; (ii) the review of other publicly available information concerning

similar mission recommended by Class Counsel and Defendants and approved by the Court. Settlement ¶¶ 3.4; 6.8.

the Defendants which includes the sale to Accolade, Inc. ("Accolade") and Accolade's 10-Q reports; and (iii) review of publicly available information regarding Defendants, their business practices, and comments and reviews provided by the Better business Bureaus ("BBB") and other publicly available sources which review and comment on Defendants business practices, including in response to Plaintiffs' Subpoena. *See* Wood Decl. ¶ 12. The Parties also held numerous telephonic and written discussions regarding Plaintiffs' allegations, discovery, and the prospects of settlement, as well as two mediation sessions with the Honorable Wayne Andersen (Ret.) of JAMS. *Id.* ¶¶ 9-13. Thus, the proposed Settlement is the result of fully-informed negotiations.

### 6.   Experience and View of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.* [hereinafter *Betchel Corp.*], 485 F. Supp. 610, 622 (N.D. Cal. 1979); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (same). Deference to Class Counsel's evaluation of the Settlement is appropriate because "[a]ttorneys, having an intimate familiarity with a lawsuit after spending years in litigation, are in the best position to evaluate the action, and the Court should not without good cause substitute its judgment for theirs." *Betchel Corp.*, 485 F. Supp. at 622; *see also Rodriguez*, 563 F.3d at 967 ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."). Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation. *See* Wood Decl. Ex. 2, Firm Resume of The Law Offices of Ronald A. Marron. Based on their experience, Class Counsel concluded that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation.

### B.   The Rule 23(e)(2) Factors

#### 1.   The Class Representative and Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A))

As is discussed further below, Plaintiffs' interests here are aligned with other class members' interests because they claim they suffered the same injuries: paying membership fees to Defendants due to their automatic renewal scheme. Because Plaintiffs and the Class suffered these alleged

-14-

injuries as a result of Defendants' common course of conduct, Plaintiffs have an interest in vigorously pursuing the claims of the class. Further, as discussed herein, numerous other courts in this Circuit have previously found that Plaintiffs' attorneys adequately meet the obligations and responsibilities of Class Counsel. *See* Wood Decl. Ex. 2, Firm Resume of The Offices of Ronald A. Marron. This factor thus favors preliminary approval.

### 2. The Settlement Was Negotiated At Arm's Length

In preliminarily evaluating the adequacy of a proposed settlement under Rule 23(e)(2), particular attention should be paid to the process of settlement negotiations. When a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, there is a presumption that the settlement is fair and reasonable. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Garner*, 2010 WL 1687832, at *9. Ultimately, the Court's role is to ensure that the settlement is fundamentally fair, reasonable and adequate. *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).

Here, counsel for both Plaintiffs and Defendants are experienced in class action litigation, engaged in protracted settlement discussions, and reached this settlement with the assistance of an experienced neutral. Wood Decl. ¶¶ 9-12; 24. In other words, the negotiations were conducted at arm's length, non-collusive, well-informed (in that they were conducted after an assessment of the strengths and weaknesses of the claims on both sides), conducted between counsel on both sides with decades of class action experience, and utilized at the appropriate time the assistance of a well-respected mediator. Under such circumstances, the proposed Settlement is entitled to a presumption of reasonableness, and the Court is entitled to rely upon counsel's opinions and assessments. *See Perks v. Activehours, Inc.*, No. 5:19-cv-05543-BLF, 2021 WL 1146038, at *5 (N.D. Cal. Mar. 25, 2021) ("[T]he Court found that Class Counsel have substantial experience in litigating and settling consumer class actions. Despite the relatively early stage of the litigation, Class Counsel obtained sufficient information to make an informed decision about the Settlement and about the legal and factual risks of the case. … The Settlement was also the product of arm's-length negotiations through mediation sessions and follow-up communications supervised by [an experienced neutral]. There is no indication of any collusion between the parties."); *Boyd v. Avanquest N. Am. Inc.* [hereinafter

*Avanquest*], No. 12-cv-04391-WHO, 2015 WL 4396137, at *3 (N.D. Cal. July 17, 2015) ("[U]se of mediator 'tends to support the conclusion that the settlement process was not collusive.'") (quoting *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012)); *Bechtel Corp.*, 485 F. Supp. at 622-25. Accordingly, the second Rule 23(e)(2) factor has been met.

### 3.   The Settlement Provides Adequate Relief To The Class

Whether relief is adequate takes into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Rule 23(e)(2)(C)(i-iv). These factors subsume several *Hanlon* factors including: "the risk, expense, complexity, and likely duration of further litigation" (*Hanlon* Factor 2); "the risk of maintaining class action status throughout the trial" (*Hanlon* Factor 3); and "the amount offered in settlement" (*Hanlon* Factor 4). As noted above, the Settlement has met each of the *Hanlon* factors. *Supra* §§ V.A(1)-(5). As to "any agreement required to be identified by Rule 23(e)(3)[,]" no such agreement exists in this case other than the Settlement.

As to "the effectiveness of any proposed method of distributing relief to the class," it is "important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." *Alvarez v. Sirius XM Radio Inc.*, No. CV 18-8605 JVS (SSx), 2020 WL 7314793, at *6 (C.D. Cal. July 15, 2020) (citing Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id*. Here, under the terms of the Settlement, Settlement Class Members can submit a claim form and, if approved, receive a *pro rata* payment from the Settlement Fund. *Id*. ¶¶ 3.2, 3.3. The claims process "requires logging on to the Settlement Website and submitting a Claim there, or a Settlement Class Member may print the Claim form from that website and mail a filled-in hard-copy to the Settlement Administrator if they prefer." *Alvarez*, 2020 WL 7314793, at *6. The Court should find that "this process is not unduly demanding, and that the proposed method of distributing relief to the Class is effective." *Id*.

-16-

Next, as to "the terms of any proposed award of attorney's fees," Class Counsel will apply for attorneys' fees, costs, and expenses not to exceed $ 1,233,333 which constitutes one-third of the non-reversionary cash value. *See* Wood Decl., ¶ 29. The Ninth Circuit has identified five relevant factors in determining whether requested attorneys' fees are reasonable: (a) the results achieved; (b) the risk of litigation; (c) whether Class Counsel's work generated benefits beyond the Class settlement fund, (d) market rates as reflected by awards made in similar cases; and (e) the contingent nature of the fee and the financial burden carried by Plaintiffs and the Class. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). Here, each factor is easily satisfied.

First, with respect to the results achieved, Class Counsel's efforts have secured settlement consisting of a mix of monetary and prospective relief, with a total non-reversionary cash value amount of $3,700,000 which does not include the additional and substantial value to the class added by the prospective relief which Class Counsel insisted on when securing the settlement. As discussed in detail above, this is an excellent result. *See supra* § V.A(4).

Second, Plaintiffs have established that there are significant risks in entering a protracted litigation. *See supra* §§ V.A(2)-(3). Thus, "[i]n the absence of settlement now, the parties would incur significant additional costs in discovery, including depositions, … a survey of [defendant's] customers regarding the materiality of the alleged misrepresentations, and expert discovery." *Larsen*, 2014 WL 3404531, at *4. "Moreover, settlement is favored where, as here, significant procedural hurdles remain, including class certification and an anticipated appeal." *Id.* (citing *Rodriguez*, 563 F.3d at 966). "Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all parties, as well as conserve judicial resources." *Id.* (citing *Garner*, 2010 WL 1687832, at *10). "Accordingly, the high risk, expense, and complex nature of the case weigh in favor of approving the settlement." *Id.* (citing *Rodriguez*, 563 F.3d at 964).

Third, as noted above, *see supra* § IV.C, Class Counsel's time and efforts in this litigation have generated benefits beyond the Class settlement fund. *See also* Settlement ¶ 3.5.

Fourth, Plaintiffs' counsel's requested fee is consistent with market rates as reflected by awards made in similar cases. Indeed, courts in this Circuit routinely approve fee requests for up to one-third of a common fund. *See*, *e.g.*, *Blandino v. MCM Constr., Inc.*, No. C 12-1729 WHO, 2014

WL 11369763, at *3 (N.D. Cal. Mar. 6, 2014) (awarding 33% of settlement fund in attorneys' fees); *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) (awarding 33% in fees); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 457, 460 (affirming 33.5% fee award); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) (affirming 33.3% fee award) ("The $2,000,000 requested by class counsel amounts to one-third of this common fund. … Courts in this district have consistently approved attorneys' fees which amount to approximately one-third of the relief procured for the class.") (citations omitted); *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 379 (affirming 33% fee award); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (noting that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value"); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) (awarding fee of 32.8%); *Garner*, 2010 WL 1687829, at *1 ("A fee award of 30 percent is within the 'usual range' of fee awards that Ninth Circuit courts award in common fund cases."); *Vizcaino*, 290 F.3d at 1050 (affirming 28% fee award); *Larsen*, 2014 WL 3404531, at *9 ("[Counsel's] request for attorneys' fees in the amount of 28% of the common fund falls within the range of acceptable attorneys' fees in Ninth Circuit cases.") (citations omitted); *Wellens v. Sankyo*, No. C 13-00581 Who (DMR), 2016 WL 8115715, at *3 (N.D. Cal. Feb. 11, 2016) (awarding 36% of $8,200,000 settlement fund in fees).[7]

Finally, the requested fees are also fair given the significant time Class Counsel has devoted to this case on a contingency fee basis, with the threat of no recovery at all absent a successful resolution. Thus, because of the contingent nature and the financial burden carried, Plaintiffs' Counsel's requested fee award of one-third of the Settlement is reasonable and appropriate in this case. *See Vizcaino*, 290 F.3d at 1048-50.

---

[7] *See also Alvarez v. Farmers Ins. Exch.*, No. 3:14-cv-00574-WH), 2017 WL 2214585, at *3 (N.D. Cal. Jan. 18, 2017) ("Fee award percentages generally are higher in cases where the common fund is below $10 million.") (citations omitted); *accord Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 WL 1789602, at *11 (N.D. Cal. Apr. 26, 2013).

The Settlement therefore provides adequate relief to the Class under Rule 23(e)(2)(C), and the requested attorneys' fees are reasonable in relation to such relief.

### 4.  <u>The Settlement Treats All Class Members Equally</u>

"The final Rule 23(e)(2) factor is whether 'the proposal treats class members equitably relative to each other.'" *Perks*, 2021 WL 1146038, at *6 (citing Fed. R. Civ. P. 23(e)(2)(D)). In assessing this factor, "the Court considers whether the proposal '"improperly grant[s] preferential treatment to class representatives or segments of the class.'" *Id.* (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

Here, the Settlement provides a non-reversionary cash fund of $3,700,000. Settlement ¶ 1.38. Settlement Class Members who submit a valid Claim Form to the Settlement Administrator are eligible to receive a *pro rata* cash payment from the $3,700,000 Settlement Fund. *Id.* ¶¶ 3.2, 3.3. Courts in this Circuit have found that allocating Settlement benefits among Class Members in this manner is equitable. *See Perks*, 2021 WL 1146038, at *6 ("This *pro rata* distribution is inherently equitable because it treats Class Members fairly based on the amount of each member's potential damages."); *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (finding *pro rata* distribution equitable); *Avanquest*, 2015 WL 4396137, at *3 ("[T]he proposed settlement agreement 'does not improperly grant preferential treatment to class members or segments of the class[]' because all class members are treated in the same way and there is no difference in treatment throughout the class.") (internal citations omitted) (quoting *State of California v. eBay, Inc.*, No. 5:12-CV-05874-EJD, 2014 WL 4273888, at *5 (N.D. Cal. Aug. 29, 2014)). Thus, this factor weighs in favor of granting approval.

## VI.    CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE

Plaintiffs respectfully request that the Court conditionally certify the Settlement Class for purposes of effectuating the settlement. *See Newberg*, § 11.27 (4th ed. 2002) ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."). The Court should determine that the proposed Settlement Class satisfies the requirements of Rule 23(a) and at least one of the subsections of Rule 23(b), *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

620 (1997), and provisionally certify the settlement class, appoint Plaintiffs' counsel as Class Counsel, and appoint Plaintiffs as the Class Representatives. Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that:

> (1)    the class is so numerous that joinder of all members is impracticable;
> (2)    there are questions of law or fact common to the class;
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and;
> (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Additionally, Rule 23(b)(3) requires the court to find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). As discussed below, all applicable Rule 23 requirements are met, and Defendants consent to provisional certification for settlement purposes. Thus, preliminary approval should be granted.

### A.    The Class Satisfies Rule 23(a)

#### 1.    Numerosity

Rule 23(a)(1) requires is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is presumed at a level of 40 members. *See Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 562 n.2 (N.D. Cal. 2020) ("Courts generally find numerosity satisfied if the class includes forty or more members.") (citations omitted). Here, the Settlement Class includes approximately 366,271 persons who were charged renewal fees in connection with a PlushCare membership. Wood Decl. ¶ 17. Numerosity is therefore satisfied.

#### 2.    Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is established if Plaintiffs and Class Members' claims "depend on a common contention … of such a nature that it is capable of class-wide resolution[,] which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Although

the claims need not be identical, they must share common questions of fact or law. *See Alvarez*, 2020 WL 7314793, at *7. "For instance, a class meets the commonality requirement if members share the same legal issues but have different factual foundations." *Id.* Courts construe the commonality requirement liberally. Because the commonality requirement may be satisfied by a single common issue, it is easily met. Indeed, "[f]or purposes of Rule 23(a)(2), 'even a single common question will do.'" *Dalchau v. Fastaff, LLC*, No. 17-cv-01584-WHO, 2018 WL 1709925, at *7 (N.D. Cal. Apr. 9, 2018) (quoting *Dukes*, 564 U.S. at 359).

Here, there are common questions of law and fact that will generate common answers apt to drive the resolution of the litigation. Plaintiffs allege that Defendants made identical misrepresentations and omissions regarding the terms of booking an appointment and whether that resulted in a membership.  *See* SAC ¶ 96; *see also Avanquest*, 2015 WL 4396137, at *2 ("[T]here are questions of law and fact common to all class members, because all bought the same software from Avanquest and suffered the same general type of injury."). Common questions include: (1) whether Defendants failed to disclose the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer; (2) whether Defendants failed to obtain consumers' affirmative consent to the automatic renewal offer terms; and (3) whether Defendants failed to provide an acknowledgement, capable of being retained by the consumer, that contained the automatic renewal offer terms and information on how to cancel. SAC ¶ 67. Courts considering similar claims resulting from uniform unlawful conduct routinely certify classes based on evidence of a common policy. *See, e.g.*, *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("Courts routinely find commonality in false advertising cases that are materially indistinguishable from the matter at bar," involving consumer products). Further, Plaintiffs' claims are brought under legal theories common to the Class as a whole and that alone is enough to establish commonality. *See Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."). Here, all of the legal theories asserted by Plaintiffs are common to all Class Members. *See* SAC ¶¶ 78-159. Accordingly, commonality is satisfied.

### 3.   **Typicality**

Rule 23(a)(3) requires that the claims of the representative Plaintiffs be "typical of the claims… of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. To satisfy typicality, the representative Plaintiff simply must demonstrate that the members of the settlement class have the same or similar grievances. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

Here, Plaintiffs allege that Defendants' practice of charging auto renewing membership fees to consumers' payment methods after booking an appointment without first obtaining their affirmative consent to the transaction violated the EFTA, the UCL and the CLRA not only because Defendants failed to fully comply with California's ARL in charging membership fees after booking an appointment, but because of Defendants' general failure to fairly apprise consumers of the terms they were accepting making this a Nationwide class. SAC ¶¶ 2-4, 30-60. Plaintiffs further contends that Defendants' automatic renewal process is done in the exact same manner and was directed at, or affected, both Plaintiffs and putative Class Members in the same exact way. Accordingly, by pursuing their own claims in this matter, Plaintiffs will necessarily advance the interests of the Settlement Class. Thus, Plaintiffs' claims are typical because they arise "from the same event or practice or course of conduct that gave rise to the claims of other class members and h[er] claims were based on the same legal theory." *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1033 (9th Cir. 2020) (internal citations omitted); *see also Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 378 (N.D. Cal. 2010) (typicality satisfied where named plaintiff alleged substantially the same misrepresentation regarding products as that suffered by class).

### 4.   **Adequacy**

The final requirement of Rule 23(a) is that the representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A plaintiff and class counsel will adequately represent the Class where they: (1) do not have conflicts of interests with other Class Members; and (2) prosecute the action vigorously on behalf of the class. *See Staton v. Boeing Co.*,

327 F.3d 938, 958 (9th Cir. 2003). Moreover, adequacy is presumed where a fair settlement was negotiated at arm's-length. *See Newberg,* § 11.28, at 11-59.

In this case, Plaintiffs – like every Settlement Class Member – booked an appointment with Defendants then were automatically enrolled Defendants' monthly membership that automatically renewed during the Class Period. *See* SAC ¶¶ 30-60. Plaintiffs and Settlement Class Members thus have the same interest in recovering the damages to which they are entitled. Plaintiffs do not have any interest antagonistic to those of the proposed Settlement Class, and their pursuit of this litigation is clear evidence of that.

Likewise, proposed Class Counsel – The Law Offices of Ronald A. Marron – have extensive experience in litigating class actions of similar size, scope, and complexity to the instant action. Wood Decl. ¶ 23; *see also id.* Ex. 2, Firm Resume of The Law Offices of Ronald A. Marron. Class Counsel regularly engage in major complex litigation involving various consumer protection laws, have the resources necessary to conduct litigation of this nature, and have frequently been appointed lead class counsel by courts throughout the country. *Id.* Further, proposed Class Counsel has devoted substantial resources to the prosecution of this action by investigating Plaintiffs' claims and that of the Settlement Class, pursuing those claims through motion practice, conducting formal discovery, participating in private mediation, and negotiating a favorable class action settlement. Wood Decl. ¶¶ 4-17; 19-22. In sum, proposed Class Counsel has vigorously prosecuted this action and will continue to do so throughout its pendency. *Id.* As result of Class Counsel's zealous efforts in this case, Class Counsel have secured substantial monetary relief to the Settlement Class. Thus, the Court should appointment Alexis M. Wood and Kas L. Gallucci of The Law Offices of Ronald A. Marron as Class Counsel.

## B. The Class Satisfies Rule 23(b)(3)

In addition to meeting the prerequisites of Rule 23(a), Plaintiffs must also meet one of the three requirements of Rule 23(b) to certify the proposed class. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Certification under Rule 23(b)(3) will allow class members to opt out of the settlement and preserve their right to seek damages independently, which protects class members' due process rights. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846-48 (1999). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by setting their differences in a single action." *Hanlon*, 150 F.3d at 1022.

Here, as to predominance, Plaintiffs' allegations here all center around Defendants' "automatic renewal scheme." SAC ¶ 2. Moreover, as noted above, common questions of law and fact exist in this case. *See supra* § VI.A(2); SAC ¶ 63. Plaintiffs explicitly and repeatedly allege that Defendants engaged in a common course of conduct. SAC ¶¶ 2, 69. As to superiority, Plaintiffs and the Class Members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any individual lawsuits that have been filed by Class Members arising from the same allegations. Employing the class device here will not only achieve economies of scale for Settlement Class Members, but will also conserve judicial system resources and preserve public confidence in the integrity of the system by avoiding the expense of repetitive proceedings and preventing inconsistent adjudications of similar issues and claims. *See Hanlon*, 150 F.3d at 1023.

## VIII.   THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

### A.   The Proposed Class Notice Complies With Rule 23(c)(2)

Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Here, the proposed Notice will provide detailed information about the Settlement, including: (1) a comprehensive summary of its terms; (2) Class Counsel's intent to request attorneys' fees, reimbursement of expenses, and incentive awards for the Class Representatives; and (3) a detailed explanation of the Released Claims. Settlement ¶ 4.2. The Notice

-24-

will also provide information about the Fairness Hearing date, the right of Class Members to seek exclusion from the Class or to object to the proposed Settlement (and the deadlines and procedure for doing so), and how to receive additional information. *Id.* ¶¶ 5.1-5.4. In short, the Notice Plan will fully inform Class Members of the lawsuit and the proposed Settlement, and to provide them with the information necessary to make informed decisions about their rights. The detailed information in this proposed Notice goes well beyond the requirements of the Federal Rules.

**B. Distribution Of The Class Notice Will Comply With Rule 23(c)(2)**

The Parties have agreed upon a multi-part notice plan that easily satisfies the requirements of both Rule 23 and due process. First, the Parties will provide the Class List identifying individual subscribers to the Settlement Administrator. Settlement ¶ 5.1(a). The Settlement Administrator will then send email direct notice to all Settlement Class Members for whom a valid email address is identified in Defendants' records. *Id.* ¶ 5.1(b). The Settlement Administrator will send direct notice by First Class U.S. Mail, with a postcard claim form including return postage, to all the Settlement Class Members who did not receive an email or whose email was returned as non-deliverable. *Id.* ¶¶ 5.1(b)-(d). Further, the Settlement Administrator will establish a Settlement Website that shall contain the "long form notice," and access to important Court documents, upcoming deadlines, and the ability to file claim forms online. *Id.* ¶ 5.1(e). Finally, the Settlement Administrator will provide notice to state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715. *See id.* ¶ 5.1(f). These proposed methods for providing Notice to the Class comport with both Rule 23 and due process, and the Notice Plan should thus be approved.

**X.    CONCLUSION**

Plaintiffs have achieved an outstanding result and respectfully request that the Court preliminary approve the Settlement, certify the Settlement Class, appoint Class Counsel and the named Plaintiffs as Class Representatives, order dissemination of Notice and set a date for the Final Approval Hearing.

DATED: February 1, 2023

Respectfully submitted,

*/s/ Alexis M. Wood*
Alexis M. Wood
**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON

*ron@consumersadvocates.com*
ALEXIS M. WOOD
*alexis@consumersadvocates.com*
KAS L. GALLUCCI
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665


***Attorneys for Plaintiffs and the Proposed***