1

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)

2

*ron@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)

3

*alexis@consumersadvocates.com*
KAS L. GALLUCCI (SBN 288709)

4

*kas@consumersadvocates.com*

5

651 Arroyo Drive
San Diego, California 92103

6

Telephone:   (619) 696-9006
Facsimile:    (619) 564-6665

7

8

***Class Counsel***

9

## UNITED STATES DISTRICT COURT

10

## NORTHERN DISTRICT OF CALIFORNIA

11

12

13

SARAH ROBBINS and TIFFANY SMITH,
individually and on behalf of all others similarly
situated,

14

15

16

Plaintiffs,

17

v.

18

PLUSHCARE, INC. and PLUSHCARE OF
CALIFONRIA, INC., A.P.C.

19

Defendants.

20

21

22

23

24

25

26

27

28

Case No.: 3:21-cv-03444-MMC

**PLAINTIFFS' NOTICE OF MOTION AND
MOTION FOR ATTORNEYS' FEES, COSTS,
AND INCENTIVE AWARDS**

| | |
|---|---|
| Hearing Date: | July 21, 2023 |
| Hearing Time: | 9:00 a.m. |
| Judge: | Hon. Maxine M. Chesney |
| Courtroom: | 7 – 19th Floor |

## NOTICE OF MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

On July 21, 2023 at 9:00 a.m., in Courtroom 7 – 19th Floor of the Honorable Maxine M. Chesney, Plaintiffs Sarah Robbins and Tiffany Smith ("Plaintiffs") will and hereby do move the Court for an Order: (a) awarding attorneys' fees in the amount of $**1,233,333** (23% of the total economic value of the common-fund settlement or 1/3 of the common fund); (b) awarding costs in the amount of $**70,285.51** (to be paid from the common-fund settlement); (c) approving incentive awards in the amount of $**5,000** each to Class Representatives Sarah Robbins and Tiffany Smith (to be paid from the common-fund settlement), and (d) approving the Notice and Other Administrative Costs in the approximate amount of $**110,000** (final invoice to be submitted at Final Approval, and to be paid from the common-fund settlement) which will result in a recovery of approximately $100 for each Class Member who submits a valid claim.

The basis for this Motion is that the requested attorneys' fees, costs reimbursement, and incentive awards are reasonable based on the circumstances of the case and the recovery for the Class.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Declaration of Alexis M. Wood and Exhibits attached thereto; the Declaration of Eli Bartov, Ph. D.; the Declarations of Sarah Robbins and Tiffany Smith; the Declaration of Taylor Adessa; documents on file with this Court; and oral argument and any additional material that may be elicited at the hearing on the Motion.

Respectfully Submitted,

Dated: April 24, 2023

By: */s/ Alexis M. Wood*
**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON

1

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 1

II.    BACKGROUND ......................................................................................................... 2

A.   Nature and History of the Case .................................................................................. 2

B.   Class Counsel's Work for the Class's Benefit ............................................................ 4

C.   Settlement Administration to Date and the Class's Reaction to the Settlement ........... 5

III.   ATTORNEYS' FEES ................................................................................................. 7

A.   This Court Should Use the Percentage-of-the-Fund Method with Consideration of the Injunctive Relief Provided ....................................................................................... 7

B.   Class Counsel Achieved an Outstanding Result for the Class ..................................... 10

C.   The Action Involved Significant Risks ...................................................................... 12

D.   The Litigation Required a High Degree of Skill and Quality of Work ........................ 13

E.   The Contingent Nature of the Fees, and Burden of Costs, Supports the Fee Award ..... 15

F.   Class Reaction Supports Approval of the Requested Attorneys' Fees Award .............. 16

G.   Lodestar Cross-Check Supports the Requested Attorneys' Fees Award ....................... 16

IV.   COSTS .................................................................................................................... 18

V.   INCENTIVE AWARDS ............................................................................................ 19

VI.  CONCLUSION ......................................................................................................... 20

i

1

## TABLE OF AUTHORITIES

2

3

**Cases**

4

*Allen v. Bedolla*,

5

    787 F.3d 1218 (9th Cir. 2015) ....................................................................................11

6

*Alvarez v. Farmers Ins. Exch.*,

7

    No. 3:14-cv-00574-WHO, 2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) ....................8, 9

8

*Barnes v. The Equinox Grp., Inc.*,

9

    No. C 10-3586 LB, 2013 WL 3988804 (N.D. Cal. Aug. 2, 2013) .....................................7

10

*Bellinghausen v. Tractor Supply Co.*

11

    306 F.R.D. 245 (N.D. Cal. Mar. 20, 2015) ....................................................................18

12

*Birch v. Office Depot Inc.*,

13

    No. 06 CV 1690 DMS (WMC), 2007 WL 9776717 (S.D. Cal. Sep. 28, 2007) ...............15

14

*Blandino v. MCM Constr., Inc.*,

15

    No. C 12-1729 WHO, 2014 WL 11369763 (N.D. Cal. Mar. 6, 2014) ..............................8

16

*Boeing Co. v. Van Gemert*,

17

    444 U.S. 472 (1980) ........................................................................................................7

18

*Carlotti v. ASUS Computer Int'l*,

19

    No. 18-3369- DMR, 2020 WL 3414653 (N.D. Cal. June 22, 2020) ...............................19

20

*Chu v. Wells Fargo Investments, LLC*,

21

    No. C 05-4526 MHP, 2011 WL 672645 (N.D. Cal. Feb. 16, 2011) ..................................7

22

*Destefano v. Zynga, Inc.*,

23

    No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .........................10, 12

24

*Di Giacomo v. Plains All Am. Pipeline*,

25

    Nos. 99–4137 & 99–4212, 2001 WL 34633373 (S.D. Fla. Dec. 19, 2001) ....................18

26

*Esparza v. Smartpay Leasing, Inc.*,

27

    No. 3:17-cv-03421-WHA, 2020 WL 465865 (N.D. Cal. Jan. 28, 2020) .........................14

28

ii

*Robbins et al  v. PlushCare, Inc., et al.*, No. 3:21-cv-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

*Esparza v. Smartpay Leasing, Inc.*,
   No. 3:17-cv-03421-WHA, 2020 WL 465863 (N.D. Cal. Jan. 28, 2020). .......................................... 14
*Farrar v. Hobby*,
   506 U.S. 103 (1992) ....................................................................................................................... 10
*Garner v. State Farm Mutual Automobile Ins. Co.*,
   No. CV 08 1365 CW, 2010 WL 1687829 (N.D. Cal Apr. 22, 2010) .................................................. 8
*Greko v. Diesel U.S.A., Inc.*,
   No. 10-cv-02576 NC, 2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ................................................. 9
*Hamilton v. Juul Labs, Inc.*,
   No. 20-CV-03710-EMC, 2021 WL 5331451 (N.D. Cal. Nov. 16, 2021) ......................................... 10
*Herrera v. Wells Fargo Bank, N.A.*,
   2021 WL 9374975 (C.D. Cal. Nov. 16, 2021) ............................................................................... 10
*Hopkins v. Stryker Sales Corp.*,
   No. 11-CV-02786- LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ............................................. 18
*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. Oct 3, 1989) ..................................................................................... 8
*In re Aremissoft Corp. Sec. Litig.*,
   210 F.R.D. 109 (D.N.J. July 31, 2002) ........................................................................................... 18
*In re Charles Schwab Corp. Sec. Litig.*,
   No. C 08-01510 WHA, 2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) ........................................... 19
*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*,
   No. 17-md-02777-EMC, 2019 WL 536661 (N.D. Cal. Feb. 11, 2019) ........................................... 20
*In re Ferrero Litig.*,
   583 F. App'x 665 (9th Cir. 2014) ................................................................................................... 11
*In re Lidoderm Antitrust Litig.*,
   No. 14-md-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) .......................................... 8
*In re Media Vision Tech. Sec. Litig.*,
   913 F. Supp. 1362 (N.D. Cal. Jan. 23, 1996) ................................................................................. 18

iii

*Robbins et al  v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .......................................................................................... 8

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) ............................................................ 10

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ........................................................................................ 20

*In re Prudential Ins. Co. Am Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ......................................................................................... 17

*In re TracFone Unlimited Service Plan Litig.*,
   112 F. Supp. 3d 993 (N.D. Cal. July 2, 2015) ........................................................ 11, 12

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 2017) ..................................................................................... 7, 15

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
   445 F. Supp. 3d 508  (N.D. Cal. Apr. 7, 2020), aff'd, 845 F. App'x 563 (9th Cir. 2021) ................... 9

*In re: Cathode Ray Tube (Crt) Antitrust Litig.*,
   No. 3:07-cv-5944 JST, 2016 WK 721680 (N.D. Cal. Jan. 28, 2016) .............................. 7

*Kim v. Allison*,
   8 F.4th 1170 (9th Cir. 2021) ........................................................................................... 9

*Kumar v. Salov*,
   737 Fed. Appx. 341 (2018) ............................................................................................ 11

*Kwikset v. Superior Court*,
   51 Cal. 4th 310 (2011) ................................................................................................... 11

*Linney v. Cellular Alaska P'ship*,
   1997 WL 450064 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ............ 8

*Maley v. Del Global Techs. Corp.,*
   186 F. Supp. 2d 358 (S.D.N.Y. Jan. 29, 2002) ............................................................ 18

*Martin v. Toyota Motor Credit Corp.*,
   No. 220CV10518JVSMRW, 2022 WL 17038908 (C.D. Cal. Nov. 15, 2022) ................. 10

iv

*Miguel-Sanchez v. Mesa Packing, LLC,*
    No. 20-CV-00823-VKD, 2021 WL 4893394 (N.D. Cal. Oct. 20, 2021)..........................................10

*Paul, Johnson, Alston & Hunt v. Graulty,*
    886 F.2d 268 (9th Cir. 1989).......................................................................................................7

*Rodriguez v. W. Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009).....................................................................................................19

*Serrano v. Priest,*
    20 Cal. 3d 25 (1977)...................................................................................................................7

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003).................................................................................................7, 9

*Taylor v. Shutterfly, Inc.,*
    No. 5:18-CV-00266-BLF, 2021 WL 5810294 (N.D. Cal. Dec. 7, 2021) ........................................12

*Vasquez v. Coast Valley Roofing, Inc.,*
    266 F.R.D. 482 (E.D. Cal. Mar. 9, 2010).....................................................................................8

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002)....................................................................................................8

*Wellens v. Sankyo,*
    No. C 13-00581 WHO (DMR), 2016 WL 8115715 (N.D. Cal. Feb. 11, 2016) ................................9

v

*Robbins et al  v. PlushCare, Inc., et al.*, No. 3:21-cv-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

1

2

3

## I.   **INTRODUCTION**

This Settlement[1] provides relief that far outpaces that offered in analogous cases, despite substantial risks that were, in some instances, unique to this case. PlushCare, Inc. and PlushCare of California, Inc. A.P.C. (collectively, "PlushCare" or "Defendants") have created a $3,700,000 non-reversionary fund, which will be used to compensate Class Members who submit a valid claim, pay the Notice and Other Administrative Costs, attorneys' fees and reasonable litigation expenses, and provide Incentive Awards to the Plaintiffs, as approved by the Court (the "Settlement Fund").   Additionally, Defendants have agreed to substantial prospective relief which will cure the deceptive nature of booking and forced subscription membership which Plaintiffs alleged in their complaint as well as require confirmation of the membership.   This prospective relief has been valued by Plaintiffs' economic valuation expert Eli Bartov, Ph.D. as $1,611,104 to $4,973,408, providing a total economic benefit to the Class of $5,311,104 to $8,673,408.  *See* Declaration of Eli Bartov, Ph. D.

At this time, Class Counsel expects claiming Class Members to receive payments of approximately $100 each, which is more than full recovery as the average Class Member paid monthly membership fees of $14.99 for approximately six months or approximately $90 dollars in fees. With such a positive result, Plaintiffs now move the Court to approve (a) attorneys' fees in the amount of $**1,233,333** (23% of the total economic value of the common-fund settlement valued after 2 years of prospective relief or 1/3 of the common fund); (b) awarding costs in the amount of $**70,285.51**; (c) approving Incentive Awards in the amount of $**5,000** each to Class Representative in recognition of their effort on behalf of the Class, and (d) approving payment to the Settlement Administrator for Notice and Other Administrative Costs in an amount to be determined at Final Approval, but estimated to be approximately $**110,000**. This request, *when prospective relief is taken into consideration*, is less than the Ninth Circuit 25% Benchmark and within the range of reasonableness.   The amounts also reflect the risk and results accompanying this case and were specifically included in the Notice documents to the Class.[2] For these reasons, and pursuant to

---

[1] As used herein, all terms defined in the Settlement Agreement shall have the meanings given therein.

[2] The Court-approved Notice documents advise that Class Counsel will apply to the Court for no more than one-third of the Settlement Fund ($1,233,333) for their attorneys' fees, for their litigation costs, as well as all reasonable costs (estimated at $75,000) and expenses for giving and administering notice (estimated at $110,000) and Incentive Awards up to $5,000 each, with an estimate that Class Members would receive approximately $65-$130. *See* Dkt. No. 86-3 at 6 and 11.

1

*Robbins et al  v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

1   Federal Rule of Civil Procedure 23(h), Plaintiffs respectfully request that the Court approve the requested

2   Fee Award, award litigation costs, incentive awards and the approve the payment of costs of notice and

3   other administrative costs to the Settlement Administrator.

## II.   BACKGROUND

### A.  Nature and History of the Case

The relevant facts are set forth in detail in Plaintiffs' memorandum in support of their motion for preliminary approval. (*See* Dkt No. 81 at 2-4.) Nonetheless, a brief recap is provided here for context.

On May 7, 2021, Plaintiff Robbins filed this class action on behalf of herself and putative class members who, when booking an appointment with a PlushCare doctor, were automatically enrolled and charged for a monthly PlushCare membership which they did not consent to purchase. *See* Dkt. No. 1. Ms. Robbins stated that Defendants' action of illegally charging monthly fees through electronic funds transfers without authorization due to their failure to clearly disclose their terms of their subscription service, violated the Electronic Funds Transfer Act (15 U.S.C. §§ 1693, *et seq.*, "EFTA"), California's Unfair Competition Law (Cal Bus. & Prof. Code §§ 17200, *et seq.,* "UCL") and California's Consumers Legal Remedies Act (Cal. Bus. & Prof. Code §§ 1750, *et seq.*, "CLRA"). Additionally, Plaintiff Robbins pled negligent misrepresentation (Cal. Civ. Code §§ 1709-1710), unjust enrichment, theft (Cal. Penal Code § 496), conversion, and false advertising (Cal. Bus. & Prof. Code §§ 17600 *et seq.* and § 17353).

Defendants moved to dismiss Plaintiff Robbins' Complaint, and on August 9, 2021, Plaintiff Robbins filed a First Amended Complaint ("FAC"). *See* Dkt. No. 22. Defendants moved to dismiss Plaintiff Robbins' FAC on August 23, 2021. *See* Dkt. No. 24. On October 21, 2021, the Court granted in part and denied in part Defendants' Motion to Dismiss the FAC finding the "automatic renewal offer terms" on the PlushCare's website were not "in visual proximity" to "the request for consent to the offer" which caused PlushCare's autorenewal to be unclear and found that Plaintiff sufficiently alleged a violation of California's Automatic Renewal Law ("ARL") and the Electronic Fund Transfer Act ("EFTA") and furthermore found adequate all of Plaintiff's claims based on a violation of the ARL.  Dkt. No. 35. On November 16, 2021, Defendants filed an Answer. *See* Dkt. No. 40.

On May 11, 2022, the Court granted in part Plaintiff Robbins' Motion to Amend Pleadings which requested to include additional factual allegations relating to Plaintiff Robbins, Defendants' location and

2

*Robbins et al  v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

single vendor – both located in California, and Defendants' choice of law provision – California, and to modify the classes and add an additional plaintiff and proposed class representative, Plaintiff Smith.  *See* Dkt. No. 49.  In its ruling, the Court found that Plaintiff Robbins' request to add a Nationwide Class with respect to all Plaintiffs' claims, including claims pursuant to California statutes and not just Plaintiff's EFTA claim, was not futile as the allegations did not only rely on a violation of California's ARL, which could only be brought on behalf of consumers in California, but also provided allegations of wrongful conduct against Defendants generally, namely, a failure to fairly apprise consumers of the terms they were accepting.  *See id*. at p. 1.

On May, 20, 2022, Plaintiffs Sarah Robbins and Tiffany Smith filed the operative Second Amended Complaint ("SAC"), seeking to represent a Nationwide Class of "[a]ll persons within the US who, within the applicable statute of limitations period, up to and including the date of final judgement in this action, were enrolled by Defendants in their membership program and charged monthly membership fees after booking an appointment." *See* Dkt. No. 50 at ¶ 61. Plaintiffs also sought to represent a Nationwide EFTA Subclass and a California subclass of consumers. *Id*. On June 3, 2022, Defendants filed a Motion to Dismiss Plaintiffs' SAC. Dkt. No. 51.

On July 28, 2022, the Court denied Defendants' Motion to Dismiss Plaintiffs' SAC in its entirety as to Plaintiff Robbins, finding Defendants could not now argue what it failed to argue in their first Motion to Dismiss the FAC.  *See* Dkt. No. 64 at p. 2.  As to Ms. Smith, the Court found the claims under the ETFA and the unfair prong of the UCL were not subject to dismissal stating: "Although PlushCare argues the claim sounds in fraud and does not comply with Rule 9(b)'s specificity requirements, the Court, in granting plaintiffs' motion for leave to file the SAC, found such claim is based on an alleged "failure to fairly apprise consumers of the terms they were accepting" (*see* Order, filed May 11, 2022, at 1:19-2:2), i.e., a claim that does not sound in fraud."  *See id*. at p. 3.  Last, the Court found Ms. Smith's claim for conversion was not subject to dismissal because it was premised on PlushCare's charging recurring fees to Ms. Smith's credit card without her consent, thereby allegedly wrongfully depriving her of cognizable property rights.  *See id*. at p. 5. On August 18, 2022, Defendants filed an Answer to the SAC (Dkt. No. 73) and on September 9, 2022, Defendants filed a Motion for Judgment on the Pleadings (Dkt. No. 74).

From the outset, the Parties engaged in direct communication regarding early resolution as

3

*Robbins et al v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

required by Fed. R. Civ. P. 26.  Those discussions lead to a first mediation session before the Honorable Wayne Andersen (Ret.) of JAMS on February 2, 2022, via Zoom, and a second in-person 10-hour mediation session before Judge Andersen on October 24, 2022.  *See* Wood Decl., ¶ 6. Prior to the second mediation session, the Parties conducted substantial written discovery, including two sets of Requests for Production of Documents and Interrogatories to Defendants which resulted in eight separate productions of documents, one which resulted from intervention from the Court as well as discovery propounded on the Plaintiffs, and third-party discovery.  *Id*. ¶ 8.  Additionally, Plaintiff Robbins sat for her deposition. *Id*.  During the second mediation session, the Parties reached an agreement to settle the case.  *Id*. ¶ 9.  The Parties engaged in good faith negotiations, which at all times were at arms' length and which culminated in an agreement to settle the case.  *Id*.

On February 1, 2023, Plaintiffs filed an Unopposed Motion for Preliminary Approval of Class Action Settlement.  Dkt. No. 81.  On March 10, 2023, this Court held a hearing of the Motion for Preliminary Approval (Dkt. No. 85) and on March 17, 2023, this Court entered an order granting the Motion for Preliminary Approval of Class Action Settlement; conditionally certified the Settlement Class, appointed Class Representatives, appointed Class Counsel and approved the notice plan.  Dkt. No. 86. The Court issued a deadline of April 24, 2023 for plaintiffs' Motion for Attorneys' Fees and Costs and Service Award and a Final Approval Hearing date of July 21, 2023 at 9:00 a.m. *See* Dkt. No. 86 at p. 7.

**B.  Class Counsel's Work for the Class's Benefit**

Throughout the pendency of this case, Class Counsel have worked diligently to advance the Class's claims and secure the exemplary relief available to the Class. Beginning pre-suit, Class Counsel recognized that one of the dispositive issues in the case would be the fact-intensive inquiry as to whether a reasonable consumer would be misled by the substance or form of Defendants' disclosures. *See* Wood Decl. ¶ 7. Accordingly, Class Counsel subpoenaed records from Better Business Bureau ("BBB") to analyze and review all complaints on the issue as well as retained an expert to design and conduct a survey to determine whether an objectively reasonable person would be misled. *Id.* Though the case settled prior to the initiation of the survey and the disclosure of expert reports, Class Counsel integrated these discussions and findings in the process of developing and implementing Plaintiffs' discovery strategy. *Id.*

4

*Robbins et al  v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

To implement their discovery strategy, Plaintiffs conducted substantial written discovery, including serving two sets of Requests for Production of Documents and Interrogatories to Defendants which resulted in eight separate productions of documents and reviewed of thousands of pages of documents.  *See* Wood Decl. ¶ 8.  Plaintiffs additionally conducted third-party discovery and reviewed documents from the BBB as well as supplemental documents provided by the BBB provided prior to the second mediation.  *Id.* The eight productions as well as supplemental responses from Defendants only came after hard-fought meet and confer discussions and a motion to Court for discovery when the Parties could not agree. *Id.* ¶ 9.  Plaintiffs also issued a Deposition Notice for Defendants' Fed. R. Civ. Proc. 30(b)(6) witnesses whose deposition went off calendar after settlement during the second mediation session. *Id.* ¶ 8.

In addition to briefing on two Motions to Dismiss and a contested Motion to Amend, the Parties also prepared voluminous pre-mediation statements in advance of both mediation sessions to Judge Andersen. *See* Wood Decl. ¶ 9.  The second mediation session in which the case settled in principle lasted a full day, and pushed into after hours, and at the end, the Parties came to an agreement of key terms of the settlement. *Id*. Over the next three months, the Parties vigorously negotiated the details of the settlement agreement and notice documents before finally executing the Settlement on February 1, 2023. *Id*.

Once the Agreement was executed, Class Counsel prepared and submitted the preliminary approval papers and has continued to work with the Settlement Administrator, Angeion Group ("Angeion"), to ensure that the notice process proceeds without disruption. *See* Wood Decl. ¶ 10.

**C.  Settlement Administration to Date and the Class's Reaction to the Settlement**

In accordance with the Court's preliminary approval order, Class Counsel, Defendants' counsel, and Angeion began the work necessary to effectuate the notice plan as soon as they were able after entry of preliminary approval. On February 10, 2023, Angeion provided notice to state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715. Dkt. No. 83; *see* Adessa Decl., ¶ 4.  On March 23, 2023, as ordered by the Court, Defendants provided Angeion with an electronic file containing 332,655 records of Class Member email addresses and mailing addresses where available. *Id.* ¶ 5.  After analyzing the data and removing duplicative records, Angeion identified an overall combined total

5

*Robbins et al  v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

332,547 unique records. *Id*.  Angeion then performed a reverse append in an attempt to locate email addresses and mailing addresses for records where the email address was identified as invalid or where there was no email address present. *Id*.  Angeion was able to locate 1,915 email addresses. *Id*. These email addresses were subjected to a validation process and then after deduplicating again, Angeion identified 326,792 unique records with a valid email address and a total of 4,749 unique records without a valid email address where a sufficient mailing address was present. *Id*. Angeion identified 1,006 records that neither contained a valid email address nor a sufficient mailing address. *Id*. These 1,006 records were not sent a direct notice. *Id*.

On April 13, 2023, Angeion established the following website devoted to this Settlement: www.PlushCareAutoRenewSettlement.com ("Settlement Website"). The Settlement Website contains general information about the Settlement, including answers to frequently asked questions, important dates and deadlines pertinent to this matter, and copies of important documents. Visitors to the Settlement Website can download: (1) a Claim Form, (2) a Long Form Notice in English, (3) a Long Form Notice in Spanish, (4) the Order Granting Preliminary Approval of Class Action Settlement, (5) the Settlement Agreement, (6) the Second Amended Class Action Complaint, (7) the First Amended Class Action Complaint, and (8) the Class Action Complaint. The Settlement Website also has a "Contact Us" page whereby Class Members can submit questions regarding the Settlement to a dedicated email address: Questions@PlushCareAutoRenewSettlement.com. The Settlement Website address was set forth in the Postcard Notice, Email Notice, Long Form Notice and Claim Form. *See* Adessa Decl., ¶ 11. The Settlement website also provides an online claim filing portal whereby Class Members can complete and submit their Claim Form through the Settlement Website. Class Members can also choose to download a PDF of the Claim Form to complete and submit it by mail. *Id.* ¶ 12.

On April 14, 2023, Angeion caused the Postcard Notice to be mailed to the 4,749 Class Member records where a sufficient mailing address could be determined. *See* Adessa Decl., ¶ 6.  Prior to Mailing, Angeion caused the mailing list to be updated utilizing the United States Postal Service's ("USPS") National Change of Address database, which provides updated address information for individuals or entities that have moved during the previous four years and filed a change of address with the USPS. *Id.* ¶ 7. As of April 21, 2023, Angeion has not received any Notices returned by the USPS as undeliverable.

6

*Robbins et al v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

Angeion will conduct address verification searches (commonly referred to as "skip traces") in an attempt to locate updated address information for any Notices returned by the USPS as undeliverable. For any undeliverable record for which the USPS provides an updated address for, Angeion will remail a Notice. *Id.* ¶ 8. On April 14, 2023, Angeion caused the Email Notice to be sent to 326,792 Class Member records. *Id.* ¶ 9. Angeion will perform a reverse append in an attempt to locate email addresses or mailing addresses for records where the Email Notice was undeliverable. Angeion will email an Email Notice or mail a Postcard Notice to the updated identified email addresses or mailing addresses. *Id.* ¶ 10.

## III.   ATTORNEYS' FEES

### A.   This Court Should Use the Percentage-of-the-Fund Method with Consideration of the Injunctive Relief Provided

As the court determined in *Barnes v. The Equinox Group, Inc.*, "the percentage-of-the-fund method is appropriate where – as here – the amount of the settlement is fixed without any reversionary payment to the defendant." *Barnes v. The Equinox Grp., Inc.*, No. C 10-3586 LB, 2013 WL 3988804, at *3 (N.D. Cal. Aug. 2, 2013) (citing *Chu v. Wells Fargo Investments, LLC*, No. C 05-4526 MHP, 2011 WL 672645, at *4 (N.D. Cal. Feb. 16, 2011)). Additionally, the percentage method is appropriate given Class Counsel's efficiency in litigation of this case. *See id.* ("[A] lodestar method … can encouraged [sic] unjustified work and protracting the litigation."). Under the common fund doctrine, class counsel have an equitable right to receive compensation for successfully creating a common fund. *Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 2017) ("*WPPSS*") (the class "should share the wealth with the lawyers whose skill and effort helped create it"); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). California and the Ninth Circuit recognize the common fund doctrine. *Serrano*, 20 Cal. 3d at 35-38; *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003).

In the Ninth Circuit, the starting point for calculating attorneys' fees is 25% of the common fund. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *In re: Cathode Ray Tube (Crt) Antitrust Litig.*, No. 3:07-cv-5944 JST, 2016 WK 721680, at *34 (N.D. Cal. Jan. 28, 2016). To calculate attorneys' fees based on this method, the Court must first determine the value of the settlement

7

*Robbins et al v. PlushCare, Inc., et al.*, No. 3:21-cv-03444-MMC
Plaintiffs' Notice and Motion for Attorneys' Fees, Costs, and Incentive Awards

fund. *See Alvarez v. Farmers Ins. Exch.*, No. 3:14-cv-00574-WHO, 2017 WL 2214585, at *2 (N.D. Cal. Jan. 18, 2017) ("Under the percentage-of-the-fund method, the court compares the fee recovery against the total settlement value."). While the Ninth Circuit uses 25 percent of the fund as the presumptively reasonable "benchmark" for awarding fees, *In re Bluetooth Headset Products Liability Litigation,* 654 F.3d 935, 942 (9th Cir. 2011), it also recognizes that 20 to 30 percent is the "usual range" for common fund fee recoveries. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) . "[The] exact percentage [awarded] varies depending on the facts of the case, and in most common fund cases, the award exceeds that benchmark." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010).

Class Counsel here seek fees amounting to 33% of the monetary-only value of the common fund or 23% of the *total economic benefits* to the class after two years programmatic relief (or only 14.2% of the *total economic benefits* to the class should programmatic relief remain in effect through July 2033.) *See* Bartov Decl., page 12.  The fee requested and results obtained here compare favorably with other court-approved fee awards.  District courts within this circuit, including this Court, routinely award attorneys' fees that are one-third of the total settlement fund. *See*, *e.g.*, *Blandino v. MCM Constr., Inc.*, No. C 12-1729 WHO, 2014 WL 11369763, at *3 (N.D. Cal. Mar. 6, 2014) (awarding 33% of settlement fund in attorneys' fees); *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) (awarding 33% in fees); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 460  (9th Cir. 2000) (affirming 33.5% fee award); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) (affirming 33.3% fee award) ("The $2,000,000 requested by class counsel amounts to one-third of this common fund. … Courts in this district have consistently approved attorneys' fees which amount to approximately one-third of the relief procured for the class.") (citations omitted); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. Mar. 9, 2010) (noting that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to  33 1/3% of the total settlement value"); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. Oct 3, 1989) (awarding fee of 32.8%); *Garner v. State Farm Mutual Automobile Ins. Co.*, No. CV 08 1365 CW, 2010 WL 1687829, at *1 (N.D. Cal Apr. 22, 2010) ("A fee award of 30 percent is within the 'usual range' of fee awards that Ninth Circuit courts award in common fund cases."); *Vizcaino*, 290 F.3d at 1050 (affirming 28% fee award); *Larsen*, 2014 WL 3404531, at *9  ("[Counsel's] request for attorneys' fees in the amount

1   of 28% of the common fund falls within the range of acceptable attorneys' fees in Ninth Circuit cases.")

2   (citations omitted); *Wellens v. Sankyo*, No. C 13-00581 WHO (DMR), 2016 WL 8115715, at *3 (N.D. Cal.

3   Feb. 11, 2016) (awarding 36% of $8,200,000 settlement fund in fees).[3]

4         Although injunctive relief can be inherently difficult to monetize, and the district court must

5   exercise caution when using the value of injunctive relief to determine proportional attorneys' fees, here

6   as described in the declaration of Eli Bartov, Ph. D, the programmatic relief provided to the class is

7   significant and has a quantifiable value after analysis of Defendants' enrollment, refund and cancellation

8   data provided in discovery.  *See Kim v. Allison*, 8 F.4th 1170, 1181 (9th Cir. 2021) ("When a settlement

9   includes injunctive relief among other forms of relief, the court should (1) 'explain[ ] why the value of the

10  injunctive relief's benefits to individual class members was readily quantifiable and worth [the estimated

11  value]' or (2) 'exclude[ ] the injunctive relief from the valuation of the settlement and explain[ ] why

12  attorneys' fees ... were justified.' *Id.* at 1056.); *see also In re Wells Fargo & Co. S'holder Derivative Litig.*,

13  445 F. Supp. 3d 508, 519–20 (N.D. Cal. Apr. 7, 2020), aff'd, 845 F. App'x 563 (9th Cir. 2021) ("only in

14  the unusual instance where  the value to individual class members of benefits deriving from injunctive

15  relief can be accurately ascertained may courts include such relief as part of the value of a common fund

16  for purposes of applying the percentage method of determining fees. If the injunctive relief does not meet

17  this standard, the Court instead takes into account 'the value of the injunctive relief obtained as a 'relevant

18  circumstance' in determining  what percentage of the common fund class counsel should receive as

19  attorneys' fees, rather than as part of the fund itself.'" quoting *Staton v. Boeing Co.*, 327 F.3d 938, 974

20  (9th Cir. 2003). Again, here, Professor Bartov conducted an analysis of the data and has outlined a method

21  to quantify the injunctive relief based on programmatic relief already attained to consumers due the

22  changes made to Defendants' disclosure five months after this lawsuit was filed.  *See* Bartov Decl., ¶ 3.

23        Class Counsel achieved exceptional results for the Class as the Settlement provides nearly a full

24  refund for each Class Member and provides benefits beyond the cash settlement fund in the amount of

25  significant prospective relief that not only changes the way the booking process works by adding clear

---

[3] *See also Alvarez v. Farmers Ins. Exch.*, No. 3:14-cv-00574-WHO, 2017 WL 2214585, at *3 (N.D. Cal.
Jan. 18, 2017) ("Fee award percentages generally are higher in cases where the common fund is below $10
million.") (citations omitted); *accord Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 WL
1789602, at *11 (N.D. Cal. Apr. 26, 2013).

disclosures and conforming Defendants' Terms of Use, but also makes it easy for consumers to cancel their subscription.  Accordingly, inclusion of the injunctive relief is appropriate in determining the value of the Settlement. *See Martin v. Toyota Motor Credit Corp.*, No. 220CV10518JVSMRW, 2022 WL 17038908, at \*12 (C.D. Cal. Nov. 15, 2022) (court recognizing the monetary fund and other benefits in the form of a Business Practice Change); *Herrera v. Wells Fargo Bank, N.A.*, 2021 WL 9374975, at \*12 (C.D. Cal. Nov. 16, 2021) (Court approving inclusion of the future Business Practice Change in the value of the settlement which provided for a 21.5% fee request which the Court found reasonable); *Hamilton v. Juul Labs, Inc.*, No. 20-CV-03710-EMC, 2021 WL 5331451, at \*12 (N.D. Cal. Nov. 16, 2021) ("Because the minimum value of the injunctive relief can be accurately ascertained... that sum is included in determine the size of the common fund for fee purposes.).

Further, even if injunctive relief is not added to the common fund, the injunctive relief still acts as a relevant circumstance when considering percentage of the fund.  *Miguel-Sanchez v. Mesa Packing, LLC,* No. 20-CV-00823-VKD, 2021 WL 4893394, at \*9 (N.D. Cal. Oct. 20, 2021)  ("The fact that counsel obtained injunctive relief in addition to monetary relief for their clients is, however, a relevant circumstance to consider in determining what percentage of the fund is reasonable as fees." *Staton*, 327 F.3d at 946.) Taking into consideration the injunctive relief and monetary relief provided, *In re Omnivision Techs., Inc.*, the Court set forth several factors relevant for a district court charged with determining the reasonableness of a fee award: results achieved, risk of litigation, skill required/quality of work, contingent nature of fees and financial burden, and awards in similar cases. 559 F. Supp. 2d 1036, 1046 (N.D. Cal. Jan. 9, 2008), citing *Vizcaino*. Counsel for the Settlement Class address each *Omnivision* factor in turn.

**B.  Class Counsel Achieved an Outstanding Result for the Class**

In determining whether a fee award is reasonable, the most critical factor is the degree of success obtained; i.e., the overall result and benefit to the class from the litigation. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *Destefano v. Zynga, Inc.,* No. 12-cv-04007-JSC, 2016 WL 537946, at \*9 (N.D. Cal. Feb. 11, 2016).

**(a)      Injunctive Relief**

"Injunctions are the primary form of relief available under the UCL to protect consumers from unfair business practices, while restitution is a form of ancillary relief." *Kwikset v. Superior Court*, 51 Cal.

10

*Robbins et al  v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

4th 310, 337, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011). It is appropriate for the Court, in assessing whether the class is benefited by the settlement, to take into account the injunctive relief obtained, even if the Court is unable to determine the exact monetary value of such relief.  *See Kumar v. Salov*, 737 Fed. Appx. 341, 342 (2018) (affirming settlement approval based on findings that class counsel reached an "excellent result" for the class, including achieving the class's non-monetary goal of "get[ting] the defendants to improve their practices)"; *Allen v. Bedolla*, 787 F.3d 1218, 1225 (9th Cir. 2015) (citing *Bluetooth*) ("As a whole, the settlement appears to afford valuable relief, much by injunction, that will benefit the class"); *In re Ferrero Litig.*, 583 F. App'x 665, 668 (9th Cir. 2014) ("a court need not determine the 'value' of particular injunctive relief"). The settlement's inclusion of injunctive relief can be considered as a class benefit even if the injunction benefits not just Class Members, but the general public. *See, e.g.*, *In re TracFone Unlimited Service Plan Litig.*, 112 F. Supp. 3d 993, 1005 (N.D. Cal. July 2, 2015) ("The Court finds that the injunctive relief will have significant value for both class members and the general public.").

The Settlement *requires* Defendants to change the disclosures it makes to consumers when booking an appointment.  Settlement, 3.5(a)-(g).  Specifically, Defendants will Change **all** buttons or prompts at the point of confirmation of the transaction which state "Book Appointment" to "Book Appointment and Enroll" if viewed by a consumer who is not yet a member and/or already paying membership dues.  This change is significant as it is this button which deceived both Plaintiffs in the case and caused them to believe they were only booking an appointment and not entering into auto renewing membership with Defendants.  In fact, Ms. Robbins was misled twice by this button. *See* Dkt. No. 50, ¶46. Per the Settlement terms, Defendants must now present the Automatic Renewal offer terms in a clear and conspicuous manner **on the same page** as the request for consent to the offer or final "Book Appointment and Enroll" button **before** the consumer completes their purchase. Also significant, Defendants will modify its Terms of Use to further clarify how to book an appointment with or without a membership. Defendant will also provide post-payment acknowledgements which state the Automatic Renewal offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, which must include an email.  Further, for consumers who accept an Automatic Renewal offer online, such consumers will be allowed to cancel the automatic renewal or continuous

11

*Robbins et al  v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

service exclusively online, which may include a termination email formatted and provided by the business that consumers can send to the business without additional information.  All online cancellations will be effective upon request, subject to reasonable validation the consumer is making the request. All prospective relief will remain in effect for a period of two (2) years following the Effective Date.  This is a significant benefit to the general public as well as the Settlement Class as it provides actual notice of the Automatic Renewal offer and provides for a clear and easy method for termination as required by California Law.  As Ms. Robbins was misled twice by Defendants' misleading disclosure it is evident that consumers rely on disclosures each time they book an appointment, and do not merely rely on past experiences.  *Taylor v. Shutterfly, Inc.,* No. 5:18-CV-00266-BLF, 2021 WL 5810294, at *6 (N.D. Cal. Dec. 7, 2021) ("The settlement's inclusion of injunctive relief can be considered as a class benefit even if the injunction benefits not just Class Members, but the general public.");  *In re TracFone Unlimited Service Plan Litig.*, 112 F. Supp. 3d at 1005 ("The Court finds that the injunctive relief will have significant value for both class members and the general public.").

### (b)    Monetary Relief

The Settlement provides a non-reversionary cash fund of $3,700,000. Settlement ¶ 1.38. Settlement Class Members who submit a valid Claim Form to the Settlement Administrator are eligible to receive a *pro rata* cash payment from the $3,700,000 Settlement Fund.  Based on the numbers provided in this motion and a claims rate of 5-7% the amount of recovery is approximated at $100.  As the average Class Member paid membership fees of $14.99 for about six (6) months, the recovery here is just above the total amount of fees paid.  This is an excellent result for claiming Class Members.

### C.  The Action Involved Significant Risks

Although Class Counsel prevailed on most claims in both of Defendants' Motion to Dismiss in which an opposition was filed, this litigation was always risky. Uncertainty that an ultimate recovery would be obtained is a factor in determining risk. "Moreover, when counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award." *Destefano*, 2016 WL 537946, at *18.

In addition to the "normal" risks of litigation, much less contingency litigation, there was risk that Defendants would prevail on several of their defenses to the merits of the case including (a) that

12

*Robbins et al  v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

Defendants provided all of the requisite pre-purchase disclosures under the law, (b) presented them in a clear and conspicuous manner, and (c) obtained the Plaintiffs affirmative consent to the automatically renewing subscription, and any alleged omissions in the post-purchase subscription acknowledgment sent to Plaintiffs do not rise to the level negligent misrepresentation, theft or conversion.  Plaintiffs also risked prevailing on a nationwide class as Defendants claimed Plaintiffs could not base their Nationwide claims on a violation of the ARL, a California statute.  Further, at the time of settlement Defendants had filed a Motion for Judgment on the Pleadings, which if granted in whole or part, would have significantly changed the viable remedies.

Thus, there can be little question that Plaintiffs faced real risks in prevailing on their claims and maintaining certification through trial.

**D.  <u>The Litigation Required a High Degree of Skill and Quality of Work</u>**

**(c)      Class Counsel's Experience and Skill**

Counsel's skill and persistence achieved a good result for the Class.  Senior Associates Alexis M. Wood and Kas L. Gallucci specialize in prosecuting consumer class actions alongside their Partner Ronald. A. Marron.  In creating his team, Mr. Marron has focused on hiring local-based talent, each graduating from San Diego-based law schools and top of their respective graduating classes. Senior Associate, Alexis Wood who has thirteen years of experience as an attorney and, along with her colleague, Senior Associate, Kas Gallucci, with ten years of experience as an attorney, led the charge when joining the firm in transitioning their particular focus of the law firm to protect individuals' rights in the consumer field.  To highlight a few cases, in 2018, Ms. Wood and Ms. Gallucci served as class counsel with Mr. Marron in *Simms v. ExactTarget, LLC*, No. 1-14-cv-00737-WTL-DKL (S.D. Ind.) and were successful in obtaining final approval of a $6.25 million common fund settlement on behalf of a nationwide class under the Telephone Consumer Protection Act ("TCPA"). [4]  In 2019, Ms. Wood and Ms. Gallucci served as co-lead class counsel and obtained final approval for a $1.45 million common fund settlement on behalf of a

---

[4] Ms. Wood was praised for her work as class counsel in the contested court-certified TCPA class action. *See Esparza v. Smartpay Leasing, Inc*., No. 3:17-cv-03421-WHA, 2020 WL 465865, at *2, (N.D. Cal. Jan. 28, 2020), judgment entered, 2020 WL 465863 (N.D. Cal.) (granting final approval). The Honorable District Judge William Alsup from the Northern District of California expressed his praise for the work of Ms. Wood by stating "[t]he Court particularly commends Attorney Alexis Wood for the excellent work she has done on this case." *Id*. at 4.

nationwide class in *Medina v. Enhanced Recovery Company, LLC*, No. 15-CV-14342-MARTINEZ-MAYNARD (S.D. Fla.). That same year, both Ms. Wood and Ms. Gallucci were successful as lead counsel in obtaining final approval for a $5.25 million common fund settlement on behalf of a nationwide class. *See Busch v. Bluestem Brands, Inc.*, No. 0:16-cv-00644-WMW-HB, 2019 WL 5092952, at *1 (D. Minn. Oct. 11, 2019). In 2020, the Honorable Judge Alsup granted filing approval of a $8.67 million common fund settlement on behalf of a nationwide TCPA class. *Esparza v. Smartpay Leasing, Inc.*, No. 3:17-cv-03421-WHA, 2020 WL 465865, at *2 (N.D. Cal. Jan. 28, 2020), judgment entered, 2020 WL 465863 (N.D. Cal.).

Recently, Ms. Wood and Ms. Gallucci led the transition of the firm toward privacy and data breach class action litigation. Currently, Ms. Wood and Ms. Gallucci, along with co-counsel, represent consumers whose private health data was transmitted to third parties without their knowledge or consent. *See Frasco v. Flo Health, Inc.*, No. 3:21-cv-00757-JD (N.D. Cal.). Ms. Wood and Ms. Gallucci are also currently representing children whose private health data were compromised (*see Doe v. Rady Children's Hospital-San Diego et al.*, No. 37-2021-00041405-CU-PO-CTL (S.D. Sup. Ct.), and Ms. Wood has recently been appointed as liaison counsel in *In re T-Mobile Customer Data Security Breach Litig.*, 4:21-md-03019-BCW. Prior to these cases, the Marron firm has had success in litigating numerous consumer protection class actions alone. *See* Wood Decl., ¶ 19; Exhibit 1.

### (d)   Defense Counsel's Experience and Skill

Defendants were represented by Tyler Newby, Kimberly Culp, Ethan Thomas and Justin Stacy of Fenwick & West LLP throughout the pendency of the lawsuit. The attorneys at Fenwick & West specialize in defending clients against putative class actions, to which they devote a substantial portion of their practice to, and have substantial trial experience. *See* https://www.fenwick.com/services/practices/consumer-class-action-litigation. Throughout the pendency of the lawsuit, PlushCare's counsel vigorously defended against Plaintiffs' putative class action claims by filing many motions and objecting zealously to Plaintiffs' discovery. Specifically, Defendants' counsel filed a Motion to Dismiss at the onset of the case to which Plaintiff filed a First Amended Complaint. Counsel for Defendants thereafter filed another Motion to Dismiss the First Amended Complaint, and after a contested Motion to Amend to add additional allegations regarding Ms. Robbins and as well as a

14

*Robbins et al  v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

new plaintiff, Ms. Smith, counsel for Defendants filed another Motion to Dismiss the Second Amended Complaint.  After this Court allowing the litigation to proceed on a majority of the claims in the Second Amended Complaint, counsel for Defendants filed a Motion for Judgment on the Pleadings.  Counsel for Defendants also vigorously opposed certain discovery and briefed their position in opposition to Plaintiffs' Motion to Compel.  Counsels for both parties expended numerous hours after mediation negotiating and ultimately agreeing to term of this Settlement.

### E.  The Contingent Nature of the Fees, and Burden of Costs, Supports the Fee Award

Determining an attorneys' fees award requires a court to take into account the contingent nature of the fee and the difficulties overcome (see above) in obtaining a settlement.

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. [ ] Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose. [ ] As the court observed in [ ], "if this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing."

*WPPSS*, 19 F.3d at 1299-1300. Similarly, in *Birch v. Office Depot Inc.,*., the court found that

> Class Counsel has proceeded on a contingency basis despite the uncertainty of any fee award. Class Counsel risked that it would not obtain any relief on behalf of Plaintiff or the Class, and so no recovery of fees. In addition, Class Counsel was precluded from pursuing other potential sources of revenue due to its prosecution of the claims in this action.

No. 06 CV 1690 DMS (WMC), 2007 WL 9776717, at *2 (S.D. Cal. Sep. 28, 2007). The sheer number of hours that Class Counsel invested in this Action evidences other foregone opportunities. Because Class Counsel were working entirely on a contingency basis, only a successful result –at trial or by settlement – would result in any fees. Nevertheless, Class Counsel spent over a thousand hours to zealously promote the Class's interests. The contingent nature of Counsel's representation strongly favors approval of the requested fee.

15

*Robbins et al  v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### F.  Class Reaction Supports Approval of the Requested Attorneys' Fees Award

The Settlement website provides an online claim filing portal whereby Class Members can complete and submit their Claim Form through the Settlement Website. *See* Adessa Decl., ¶ 12.  Class Members can also choose to download a PDF of the Claim Form to complete and submit it by mail. *Id*. 13. As of April 20, 2023, the Settlement Website has had approximately 46,545 page views and approximately 22,800 sessions, which represents the number of individual sessions initiated by all users on the website.  *Id*. ¶ 13. On April 12, 2023, Angeion established the following toll-free line dedicated to this case: 1-888-836-1815.  *Id*. ¶ 14. The toll-free line utilizes an interactive voice response ("IVR") system to provide Class Members with responses to frequently asked questions and information about filing a claim and important deadline dates.  *Id*. The toll-free line is accessible 24 hours a day, 7 days a week. *Id*. As of April 19, 2023, the toll-free number has received approximately 76 calls, totaling 265 minutes. *Id*. ¶ 15. The deadline for members of the Settlement Class to request exclusion from the Settlement or object is June 13, 2023. As of April 21, 2023, Angeion has not received any requests for exclusion or objections from the Settlement. *Id*. ¶ 18-19. Because this motion is being filed approximately seven weeks before the deadline for filing objections, objections may be filed, but little opposition to the fee request, incentive payment or to the settlement itself is expected. 17.   As of April 21, 2023, Angeion has received approximately 7,166 claim form submissions. *Id*. ¶ 17. These Claim Form submissions are still subject to final audits, including a final assessment of each claim's validity and a review for duplicate submissions. *Id*. Although early, the response to date shows support for the settlement and confirms the fee award sought is supported by the Class.

### G.  Lodestar Cross-Check Supports the Requested Attorneys' Fees Award

The Court may apply a lodestar cross-check – measuring lawyers' hourly rates multiplied by hours expended – to ensure that a fee award that is a percentage of a common fund is reasonable. For example, where minimal investment of fee-hours generates an enormous windfall relative to the lodestar, the Court may find that a lower percentage is reasonable. On the other hand, a Court may use a lodestar cross-check to award a higher percentage if the benchmark yields a low attorneys' fees award based on fee-hours. *Vizcaino*, 290 F.3d at 1050- 51. This is not to say that the fee award must equal the 25% benchmark; indeed, the *Vizcaino* court approved – over objections – a fee award that was 3.65 times the lodestar. *Id.*

16

*Robbins et al  v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

Class Counsel's lodestar, excluding the filing of this Motion for Fees and upcoming Final Approval, is $632,012.50. This lodestar represents hours reasonably spent on this litigation. As detailed and summarized in the supporting declaration, Class Counsel spent many hours developing and managing the case, litigating the Motions to Dismiss, Motion for Leave to Amend and discovery disputes, negotiating and conducing offensive and defensive discovery, negotiating the settlement, inducing the prospective relief, and were preparing to oppose Defendants' Motion for Judgment on the Pleadings, preparing for their Motion for Class Certification and working with their retained experts, including conducting a consumer survey. These tasks are typical of this sort of litigation and were necessary to the successful prosecution and resolution of the claims. Counsel divided work so as to prevent duplication of effort, and litigated this Action efficiently and effectively for the Class. All of the hours counsel spent on this case were reasonable and necessarily incurred as part of their zealous representation of the Class's interests.

This lodestar also reflects Class Counsel's reasonable hourly rates. Here, Class Counsel seek the following attorney rates: Ronald Marron at $845, Alexis Wood at $645, Kas Gallucci at $605, Mike Houchin at $570 and Lilach Halperin at $500. Class Counsel base their rates upon the experience and skill of the attorney or legal assistant performing the work. Class Counsel sets rates through periodic review of rates charged by other law firms involved in similar complex litigation. These rates generally align with those approved in other cases in this district and are on par with market rates usually charged by other plaintiffs' firms handling consumer protection class actions. Moreover, these rates are particularly reasonable in light of Class Counsel's significant experience and the relatively specialized nature of this case. Finally, these rates have been approved by other federal and state courts. *See* Wood Decl., ¶ 19.

Percentage awards in the range of one to four times the lodestar are common. *Vizcaino*, 290 F.3d at 1051- 51 n.6 (finding a range of 0.6 to 19.6 in a survey of 24 cases, with 83% in the range of 1.0 to 4.0 and 54% in the 1.5 to 3.0 range, and citing *In re Prudential Ins. Co. Am Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."); *see also Bellinghausen v. Tractor Supply Co.* 306 F.R.D. 245, 264 (N.D. Cal. Mar. 20, 2015) (54 percent of lodestar multipliers fall within the 1.5 to

17

*Robbins et al v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

3.0 range, and 83 percent of multipliers fell within the 1.0 to 4.0 range); *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786- LHK, 2013 WL 496358, at \*5 (N.D. Cal. Feb. 6, 2013) (multiplier of 2.86); *Di Giacomo v. Plains All Am. Pipeline,* Nos. 99–4137 & 99–4212, 2001 WL 34633373, at \*10–11 (S.D. Fla. Dec. 19, 2001) (5.3 multiplier); *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 369 (S.D.N.Y. Jan. 29, 2002) (4.65 multiplier); *In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109, 134–35 (D.N.J. July 31, 2002) (4.3 multiplier).

Thus, here, Class Counsels request that Plaintiffs' multiplier of 1.95 is also found fair and reasonable.

## IV.   **COSTS**

Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are eligible for reimbursement. *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. Jan. 23, 1996). Here, Class Counsels requests a cost award of $70,285.51, as summarized below and detailed in the accompanying Declaration of Alexis M. Wood, at ¶ 13.

| | |
|---|---|
| COURT FILING FEE FOR COMPLAINT: | $402.00 |
| EXPERT FEES: | $32,437.50 |
| FEES FOR SERVICE OF COMPLAINT AND DKT FILINGS WITH COURT: | $300.18 |
| COURT REPORTER TRANSCRIPT FEES FOR DEPOSITION: | $631.76 |
| COACH FLIGHTS TO MEDIATION AND HEARING: | $2,857.41 |
| UBERS/LYFTS TO/FROM AIRPORT/HOTEL/OFFICE TO MEDIATION: | $348.40 |
| HOTELS: | $625.54 |
| MEALS DURING TRAVEL: | $18.44 |
| DEADLINES.COM: | $280.00 |
| MEDIATION FEES: | $32,384.28 |

All of Class Counsel's expenses were reasonable and necessary for the successful prosecution of this case. Accordingly, the Court should grant Class Counsel's full request for reimbursement of their costs.

1

## V.   **INCENTIVE AWARDS**

2
3   This Court may and should compensate the appointed Class Representatives, Sarah Robbins and

4   Tiffany Smith, for their efforts that led to a good result for the Class. "[A] class representative is entitled

5   to some compensation for the expense he or she incurred on behalf of the class lest individuals find

6   insufficient inducement to lend their names and services to the class action." *In re Oracle Sec. Litig.*, No.

7   C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994). Similarly,

8
9   Incentive awards are fairly typical in class action cases. [ ] Such awards are discretionary, [ ], and
    are intended to compensate class representatives for work done on behalf of the class, to make up
    for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize
    their willingness to act as a private attorney general.

10
11  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (citations omitted). Thus, an incentive

12  award promotes the larger public interest in encouraging potential class representatives to step up and seek

13  to benefit society as a whole.

14  Class Counsel requests modest incentive awards for both Ms. Robbins and Ms. Smith based on

15  the amount of time and effort they devoted to this Action, and the benefit provided to the Class. That said,

16  Plaintiffs subjected themselves to public attention and both have actively engaged in this action, since

17  April 2021 for Ms. Robbins and since March 2022 for Ms. Smith. Plaintiffs efforts include, for example,

18  speaking with their attorneys for the initial consultation and document collection; participating in

19  numerous phone calls regarding fact-finding efforts with attorneys; responding to written discovery

20  requests served on them and additionally Ms. Robbins sat for a deposition which required preparation and

21  was extremely invasive for Ms. Robbins as her personal businesses were discussed and analyzed; both

22  Plaintiffs also reviewed the settlement and will continue to particulate in the class action settlement as

23  necessary. *See In re Charles Schwab Corp. Sec. Litig.,* No. C 08-01510 WHA, 2011 WL 1481424, at *9

24  (N.D. Cal. Apr. 19, 2011) (These are not "incentive" fees. Rather, they are compensation for the many

25  hours the lead plaintiffs spent representing the class.)

26  Additionally, each Plaintiff's request is reasonable as $5,000 is the presumptive incentive in the

27  Northern District of California. *See Carlotti v. ASUS Computer Int'l*, No. 18-3369- DMR, 2020 WL

28  3414653, at *7 (N.D. Cal. June 22, 2020) citing *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales*

19

*Robbins et al  v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

*Practices, & Prod. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 536661, at *9 (N.D. Cal. Feb. 11, 2019); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015) (approving $5,000 incentive awards where individual class members each received $12).

## VI.  CONCLUSION

Class Counsel filed and zealously pursued this Action on a contingency basis, assuming significant risk. Class Counsel invested over a thousand hours of time and incurred $70,285.51 in litigation costs, with no guarantee of ever seeing a return, as they sought to bring Defendants to justice and obtain recovery for the Class. The litigation was hard-fought, and Class Counsel prevailed in critical motions to the Court that brought about the best Settlement that could be achieved for the Class.

Class Counsel request $1,233,333 (23% of the *total economic value* of the common-fund settlement valued after 2 years of prospective relief or 1/3 of the common fund), which represents a reasonable multiplier of 1.95. Class Counsel also request an award of $70,285.51 for costs they personally incurred, incentive awards to Ms. Robbins and Ms. Smith of $5,000 each (totaling $10,000), and approve a payment to Angeion for Notice and Other Administrative Costs.[5]

These sums are justified and deserved, and the Court should grant the Motion in all respects.

Dated: April 24, 2023

By: */s/ Alexis M. Wood*
**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON
ALEXIS M. WOOD
KAS L. GALLUCCI
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

*Class Counsel*

---

[5] Currently, Angeion's estimated cost is $110,000 as provided at preliminary approval.  A final invoice will be submitted with Final Approval. *See* Wood Decl., 22.

*Robbins et al  v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS