1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)
*alexis@consumersadvocates.com*
KAS L. GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone:   (619) 696-9006
Facsimile:   (619) 564-6665

*Class Counsel*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH ROBBINS and TIFFANY SMITH, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>PLUSHCARE, INC. and PLUSHCARE OF CALIFONRIA, INC., A.P.C.<br>                    Defendants. | Case No.: 3:21-cv-03444-MMC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date:    July 21, 2023<br>Hearing Time:    9:00 a.m.<br>Judge:    Hon. Maxine M. Chesney<br>Courtroom:    7 – 19th Floor |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

On July 21, 2023 at 9:00 a.m., in Courtroom 7 – 19th Floor of the Honorable Maxine M. Chesney, Plaintiffs Sarah Robbins and Tiffany Smith ("Plaintiffs") will and hereby do move the Court for an Order: (1) granting final approval the Class Action Settlement and Release (the "Settlement" or "Settlement Agreement"); (2) certifying, for settlement purposes, the proposed Settlement Class under Rule 23(a), (b)(3) and (e); (3) finding the class notice as implemented satisfies Rules 23 and due process; (4) finally appointing Plaintiffs as Class Representatives; (5) finally appointing Alexis M. Wood and Kas L. Gallucci of the Law Offices of Ronald A. Marron, as Class counsel under Rule 23(g); (6) finally appointing Angeion Group, LLC ("Angeion") as the Settlement Administrator; and (7) any other relief the Court deems just and proper.

This Motion is made on the grounds that the final approval of the proposed class action settlement is proper, given that each requirement of Rule 23(e) has been met.  In support of the Motion, Plaintiffs rely upon the attached Memorandum of Points and Authorities; the Declaration of Alexis M. Wood ("Wood Decl.") and the Declaration of Taylor Adessa ("Adessa Decl."), and the exhibits attached thereto; documents on file with this Court; and oral argument and any additional material that may be elicited at the hearing on the Motion.

Respectfully Submitted,

Dated: July 7, 2023

By: */s/ Alexis M. Wood*
**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON

1

# **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND, AND SETTLEMENT TERMS ............... 2

III.  CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE .................. 2

IV.   NOTICE HAS BEEN FULLY DISSEMINATED TO THE SETTLEMENT CLASS ................ 4

V.    CLAIMS RATE, OPT-OUTS, AND OBJECTIONS ..................................................... 6

VI.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND
SHOULD BE APPROVED BY THE COURT ................................................................... 7

    A. Procedural Fairness: The Negotiation Process ............................................. 9

    B. Substantive Fairness: The *Hanlon* Factors ................................................. 10

       1.    The Strength of Plaintiffs' Case .......................................... 10

       2.    The Risk Of Continuing Litigation ..................................... 11

       3.    The Risk of Maintaining Class Action Status ...................... 13

       4.    The Settlement Provides Excellent Relief To The Class ......... 13

       5.    The Extent of Discovery ..................................................... 15

       6.    The Views Of Experienced Counsel Support Granting Final Settlement Approval 15

       7.    The Response Of Class Members Has Been Overwhelmingly Positive ................. 16

    C. The Rule 23(e)(2) Factors ........................................................................ 17

       1.    The Class Representatives and Class Counsel Have Adequately Represented The
Class (Rule 23(e)(2)(A)) ...................................................................... 17

       2.    The Settlement Was Negotiated At Arm's Length ................. 17

       3.    The Settlement Provides Adequate Relief To The Class ......... 18

       4.    The Settlement Treats All Class Members Equally ................. 21

i

VII.    THE COURT SHOULD APPROVE 30 UNTIMELY BUT OTHERWISE VALID CLAIMS . 22

VIII.    ANGEION SHOULD BE AWARDED FULL COSTS ................................................................ 22

IX.    CONCLUSION ..................................................................................................................... 23

*Robbins et al  v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Bedolla,*
   787 F.3d 1218 (9th Cir. 2015)............................................................................................7

*Alvarez v. Farmers Ins. Exch.,*
   No. 3:14-cv-00574-WH), 2017 WL 2214585 (N.D. Cal. Jan. 18, 2017)..........................21

*Alvarez v. Sirius XM Radio Inc.,*
   No. CV 18-8605 JVS (SSx), 2020 WL 7314793 (C.D. Cal. July 15, 2020)......................19

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591(1997) ........................................................................................................2, 3

*Arreola v. Shamrock Foods Co.,*
   No. LACV1904123JAKPLA, 2021 WL 4220630 (C.D. Cal. Sept. 16, 2021) ..........1, 9, 17

*Bellinghausen v. Tractor Supply Co.,*
   306 F.R.D. 245 (N.D. Cal. 2015) ..............................................................................3, 7, 8, 11

*Blackie v. Barrack,*
   524 F.2d 891 (9th Cir. 1975)............................................................................................2

*Blandino v. MCM Constr., Inc.,*
   No. C 12-1729 WHO, 2014 WL 11369763 (N.D. Cal. Mar. 6, 2014)..............................20

*Boyd v. Avanquest N. Am. Inc.,*
   No. 12-cv-04391-WHO, 2015 WL 4396137 (N.D. Cal. July 17, 2015 ......................18, 21

*Boyd v. Bechtel Corp.,*
   485 F. Supp. 610 (N.D. Cal. 1979) ........................................................................7, 15, 18

*Carlotti v. ASUS Computer Int'l,*
   No. 18-CV-03369-DMR, 2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ......................7, 8

*Carter v. XPO Logistics, Inc.,*
   No. 16-CV-01231-WHO, 2019 WL 5295125 (N.D. Cal. Oct. 18, 2019)..........................15

*Chambers v. Whirlpool Corp.,*
   214 F. Supp. 3d 877 (C.D. Cal. 2016)..............................................................................3

iii

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004)..................................................................................4

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
   100 F.3d 1041 (1st Cir. 1996) ..............................................................................9

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ..............................................................................................4

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
   No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010......................10, 17, 20

*Greko v. Diesel U.S.A., Inc.*,
   No. 10-cv-02576 NC, 2013 WL 1789602 (N.D. Cal. Apr. 26, 2013).................................21

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)........................................................................2, 4, 8

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) ....................................................................20

*In re Apple Computer Sec. Litig.*,
   No. C-84-20148(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ............................13

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011)................................................................................9

*In re Extreme Networks, Inc. Sec. Litig.*,
   No. 15-cv-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019)............................21

*In re GEICO Gen. Ins. Co.*,
   No. 19-CV-03768-HSG, 2023 WL 2530931 (N.D. Cal. Mar. 15, 2023).............................8

*In re Gypsum Antitrust Cases*,
   565 F.2d 1123  (9th Cir. 1997)............................................................................22

*In re Lidoderm Antitrust Litig.*,
   No. 14-md-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018)..........................20

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)........................................................................15, 20

iv

*In re Netflix Privacy Litig.*,
   No. 5:11-cv-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)..........................3, 13

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................15, 16

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995)..................................................................................8, 17, 20

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008)..................................................................................17

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..........................................................................21

*Johnson v. Triple Leaf Tea Inc.*,
   No. 3:14-cv-01570-MMC, 2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ......................13

*Juarez v. Soc. Fin., Inc.*,
   No. 20-CV-03386-HSG, 2023 WL 3898988 (N.D. Cal. June 8, 2023)...........................8

*Knapp v. Art.com, Inc.*,
   283 F. Supp. 3d 823 (N.D. Cal. 2017) ...........................................................1, 8, 14, 16

*Larsen v. Trader Joe's Co.*,
   No. 11-CV-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014)..................11, 13, 16, 20

*Linney v. Cellular Alaska P'ship*,
   1997 WL 450064 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ..........................20

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998)..................................................................................14, 20

*Miguel-Sanchez v. Mesa Packing, LLC*,
   No. 20-CV-00823-VKD, 2021 WL 4893394 (N.D. Cal. Oct. 20, 2021)...........................11

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) ...................................................................................................4

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ..........................................................................11, 14, 16

v

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982)……………………………………………………..…….4, 8, 10, 14

*Perks v. Activehours, Inc.*,
    No. 5:19-cv-05543-BLF, 2021 WL 1146038 (N.D. Cal. Mar. 25, 2021)...................................18, 21

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)……………………………………………………..………..*passim*

*Ross v. Trex Co., Inc.*,
    No. 09-CV-00670-JSW, 2013 WL 6622919 (N.D. Cal. Dec. 16, 2013) ...........................................9

*Spann v. J.C. Penney Corp.*,
    314 F.R.D. 312 (C.D. Cal. 2016) .................................................................................................4, 6

*State of California v. eBay, Inc.*,
    No. 5:12-CV-05874-EJD, 2014 WL 4273888 (N.D. Cal. Aug. 29, 2014) ......................................22

*Torchia v. W.W. Grainger, Inc.*,
    304 F.R.D. 256 (E.D. Cal. 2014).................................................................................................16

*Vasquez v. Coast Valley Roofing, Inc.*,
    266 F.R.D. 482 (E.D. Cal. 2010)................................................................................................20

*Villegas v. J.P. Morgan Chase & Co.*,
    No. CV 09-00261 SBA (EMC), 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012).............................18

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002)........................................................................................19, 20, 21

*Wellens v. Sankyo*,
    No. C 13-00581 Who (DMR), 2016 WL 8115715 (N.D. Cal. Feb. 11, 2016) .................................21

*Whitworth v. SolarCity Corp.*,
    No. 16-CV-01540-JSC, 2023 WL 3202658 (N.D. Cal. May 1, 2023) ............................................8

*Young v. Polo Retail, LLC*,
    No. C 02 4546 VRW, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007)...................................................9

vi

**Other Authorities**

4 Newberg on Class Actions § 11:53, at 167 (4th ed. 2013) ................................................ 4

Federal Judicial Center, Manual for Complex Litigation § 21.62, at 316 (4th ed. 2004) ...................... 11

Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010) ................................................ 5

**Rules**

Fed. R. Civ. P. 23(b)(3) ................................................................................................ 2

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................ 4

Fed. R. Civ. P. 23(e) ................................................................................................... 19

Fed. R. Civ. P. 23(e)(1) ................................................................................................ 4

Fed. R. Civ. P. 23(e)(2) ......................................................................................... 7, 8, 9

Fed. R. Civ. P. 23(e)(2)(C)(i-iv) ................................................................................. 18

Fed. R. Civ. P. 23(e)(2)(D) ......................................................................................... 21

*Robbins et al v. PlushCare, Inc., et al.*, No. 3:21-cv-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## I.    **INTRODUCTION**

On March 17, 2023, this Court granted preliminary approval of the Settlement[1] between the Plaintiffs and Defendants PlushCare, Inc. and PlushCare of California, Inc. A.P.C. (collectively, "PlushCare" or "Defendants"). *See* Dkt. No. 86. Angeion, the Settlement Administrator, has implemented the Court-approved notice plan, and notice has reached more than 99.2% of the Settlement Class. The reaction from the Class has been overwhelmingly positive. Specifically, of the approximately 332,547[2] Settlement Class Members there were only 3 requests for exclusions, and **no** objections. Further, the claims rate of 9.4% exceeded the anticipated claims rate of 5-7%. To date, with the valid claims calculated thus far, each Class Member will receive $71.91, which is in the range of the amount provided in the Notice. The lack of any objections demonstrates that the Settlement has the support and approval of the Settlement Class. *See, e.g., Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 833-34 (N.D. Cal. 2017); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009); *Arreola v. Shamrock Foods Co.,* No. LACV1904123JAKPLA, 2021 WL 4220630, at *5 (C.D. Cal. Sept. 16, 2021).

The Settlement was reached after months of settlement negotiations, including two private mediation sessions with the Honorable Wayne Andersen (Ret.), an experienced neutral affiliated with JAMS. The Settlement consists of cash benefits and prospective relief which will clarify Defendants' enrollment process and existing terms of use. Under the Settlement's terms, Defendants will establish a non-reversionary cash Settlement Fund in the amount of $3,700,000.00, which will be used to pay all approved claims by Settlement Class Members,[3] notice and administration expenses, Court-approved

---

[1] As used herein, all terms defined in the Settlement Agreement shall have the meanings given therein. The Settlement Agreement is provided at Dkt. No. 81-1 as Exhibit 1 and, when referenced herein is referred to as the "Settlement."

[2] The number of class members was initially estimated as approximately 366,271 persons. Defendants provided Angeion with spreadsheets containing subscriber contact information and other identifying data that resulted in a list containing 332,655 members of the Settlement. *See* Adessa Decl., ¶ 4. After removing duplicates, Angeion identified an overall total of 332,547 unique records. *Id.*

[3] As of June 19, 2023, Angeion received 31,274 claims form submissions. 31,181 of the claims have been approved as valid and timely. *See* Adessa Decl., ¶¶ 28-30. 30 claims were submitted online past midnight on June 13, 2023. *See* Adessa Decl., ¶ 30. The remainder of the claims included deficient information to which deficiently letters were mailed to 3 Settlement Class Members, the claims were denied as a duplicate, or the claims were completely blank. *See* Adessa Decl., ¶¶ 32-33. Two claims were simply withdrawn. *Id.* at ¶ 33.

incentive awards to Plaintiffs, and attorneys' fees and costs to Class Counsel to the extent awarded by the Court. In all, this is an excellent result, and the Court should have no hesitation in granting final approval.

## II.   FACTUAL AND PROCEDURAL BACKGROUND, AND SETTLEMENT TERMS

The factual and procedural background of this matter, including the key terms of the Settlement Agreement, are discussed at pages 2-7 of Plaintiffs' Motion for Preliminary Approval. *See* Dkt. No. 81; *see also* Dkt. No. 81-1, Declaration of Alexis M. Wood at ¶¶ 4-21; and the Exhibit 1 to the Declaration, the Settlement Agreement, at pp 13-33.

## III.   CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Federal Rule of Civil Procedure 23. Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the Court to find that:

> [Q]uestions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3). The Ninth Circuit "has directed that [Rule 23] be liberally construed to effectuate its remedial purposes," and courts are to adopt a standard of flexibility in evaluating class certification. *Blackie v. Barrack*, 524 F.2d 891, 906 n.22 (9th Cir. 1975); *see also id.* at 904 n.19 ("[Avoidance of duplicative proceedings] is a major purpose of a class action; the 'common question' requirement should be interpreted to obtain that objective. … The common question requirement should not be restrictively interpreted … as to do so would eliminate the class action deterrent for those who engage in [unlawful schemes].". Additionally, in assessing whether the class certification requirements of Rule 23 have been

2

*Robbins et al  v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  satisfied, a court may properly consider that there will be no trial. *Amchem Prods., Inc.*, 521 U.S. at 620

2  ("Confronted with a request for settlement-only class certification, a district court need not inquire whether

3  the case, if tried, would present intractable management problems … for the proposal is that there be no

4  trial.").

5      Here, the Court's Preliminary Approval Order provisionally certified a Class for settlement

6  purposes of defined as: "[a]ll Persons who, from January 10, 2020 to August 30, 2022, enrolled in an

7  automatically renewing Monthly Subscription with PlushCare, and who, during that time period, were

8  charged and paid one or more Monthly Subscription payment." *See* Dkt. No. 86, ¶ 3. Notably, no

9  substantive changes have occurred since that finding, and, more importantly, **no objections have**

10  **challenged that conclusion**. The Court may therefore rely on the same rationale as explained in the

11  preliminary approval order to find that class certification is appropriate under Fed. R. Civ. P. 23(a) and

12  (b) in connection with final approval. *See In re Netflix Priv. Litig.,* No. 5:11-CV-00379 EJD, 2013 WL

13  1120801, at *3 (N.D. Cal. Mar. 18, 2013) ("Because the Objections do not appear to raise a viable

14  challenge to th[e] conclusion [that certification of a settlement class is appropriate], the Court will rely on

15  the rationale for class certification as explained in the Preliminary Approval Order.").

16      Accordingly, the Court's previous finding should be made final here. *See Chambers v. Whirlpool*

17  *Corp.,* 214 F. Supp. 3d 877, 887 (C.D. Cal. 2016), judgment entered, No. SACV111733FMOMLGX,

18  2016 WL 5921765 (C.D. Cal. Oct. 11, 2016), and aff'd in part, vacated in part, remanded, 980 F.3d 645

19  (9th Cir. 2020) ("Because circumstances have not changed, and for the reasons set forth in its Order of

20  November 12, 2015, the court hereby affirms its order certifying the class for settlement purposes under

21  Rule 23(e).") (citation omitted); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 253 (N.D. Cal.

22  2015) ("In the Court's Order granting preliminary approval of the settlement, the Court found that the

23  putative class satisfied the numerosity, commonality, typicality, and adequacy of representation

24  requirements of Rule 23(a). The Court is unaware of any changes that would alter its analysis, and the

25  parties did not indicate either in their papers or at the fairness hearing that any such developments had

26  occurred. Thus, the Court concludes that all four of Rule 23(a)'s requirements have been met.") (citations

27  omitted).

28

**IV.     NOTICE HAS BEEN FULLY DISSEMINATED TO THE SETTLEMENT CLASS**

Before final approval can be granted, due process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. Such notice to class members must be reasonably calculated under the circumstances to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections. *See* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal[.]"); *see also Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted) ("The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice."); *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). It must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B).

A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (same). At its core, all that notice must do is "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Id*. (citation omitted). "The notice should provide sufficient information to allow class members to decide whether they should accept the benefits of the settlement, opt out and pursue their own remedies, or object to its terms." *Id*. "[N]otice is adequate if it may be understood by the average class member." 4 Newberg on Class Actions § 11:53, at 167 (4th ed. 2013); *see also Rodriguez*, 563 F.3d at 962 ("Settlement notices are supposed to present information about a proposed settlement neutrally, simply, and understandably[.]"). Ultimately, "[t]he standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 330 (C.D. Cal. 2016)

4

1  (citation omitted). The Federal Judicial Center notes that a notice plan is reasonable if it reaches at least

2  70% of the class. *See* Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and

3  Plain Language Guide 3 (2010). As discussed below, the notice plan implemented in this case easily meets

4  this standard of reasonableness. *See* Adessa Decl., ¶ 18 (direct notice provided to 99.2% of the Settlement

5  Class).

6  First, the Court approved the Parties' proposed Notice Plan in its March 17, 2023 Order granting

7  preliminary approval. *See* Dkt. No. 86 ¶¶ 6-10. The Settlement Administrator, Angeion, then implemented

8  the notice plan precisely as set out in the Settlement Agreement and as ordered by the Court. *See* Adessa

9  Decl., ¶¶ 4-26.

10  The notice plan has now been fully carried out, and it was a resounding success on every level.

11  Pursuant to the Settlement, Defendants provided Angeion with a list containing the names, email and/or

12  mailing addresses of a total of 332,655 potential Settlement Class Members. *See id.* ¶ 4.   Angeion

13  thereafter removed duplicate records and determined there was a total of 332,547 unique records. *Id.*

14  Initially, Angeion sent the notice by email and U.S. mail to all class members identified by Defendants.

15  Specifically, on April 14, 2023, Angeion emailed 326,792 notices to Settlement Class Members, of which

16  7,468 emails bounced back as undeliverable, and it also mailed notices via USPS regular mail to 4,749

17  Settlement Class Members. *Id.* ¶¶ 6 & 9. Angeion then performed a reverse append in an attempt to locate

18  email addresses or mailing addresses for records where the Email Notice was undeliverable.  *Id.* ¶ 6.  On

19  May 2, 2023, Angeion sent Email Notice to 1,759 newly identified email addresses.  *Id.* ¶ 7.  On May 5,

20  2023, Angeion caused the Postcard Notice to be mailed to 4,834 Class member records whose Email

21  Notice was undeliverable and where an updated email address was not identified by a reverse append, but

22  a sufficient mailing address was present.  *Id.* ¶ 12.  Angeion did the same on May 9, 2023, with 217 Class

23  Members records and on May 16, 2023, with 292 Class member records.  *Id.* ¶¶ 13-14.  On May 18, 2023,

24  Angeion emailed a Reminder Email Notice to 317,277 Class Member records who had not yet submitted

25  a claim and where a valid email address was present.  *Id.* ¶ 17.

26  Angeion also developed and hosted a dedicated website devoted to this Settlement,

27  www.PlushCareAutoRenewSettlement.com ("Settlement Website"). As of June 25, 2023, the Settlement

28  Website has had approximately 190,103 page views and approximately 86,511 sessions, which represents

5

*Robbins et al v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

the number of individual sessions initiated by all users on the website. *See* Adessa Decl., ¶ 21. The Settlement Website provided detailed information about the settlement, provided downloadable claim and exclusions forms and online claim submission capabilities, and posted all relevant documents, including the Motion for Attorneys' Fees, Costs and Incentive Awards, and clearly set forth the deadlines for Class Members to act, and it further set up a free hotline that Class Members could call if they had questions about the settlement. As of June 25, 2023, the toll-free number has received approximately 366 calls, totaling 1,358 minutes. *Id.* ¶ 22. Angeion and Class Counsel also responded to all inquiries submitted through [Questions@PlushCareAutoRenewSettlement.com](mailto:Questions@PlushCareAutoRenewSettlement.com) or directly to Class Counsel. *See* Adessa Decl., ¶¶ 23-24; Wood Decl., ¶ 3.

As a result of these efforts, Angeion successfully disseminated the Court-approved notices via email and/or postal mail to 329,922 of the 332,547 Settlement Class Members. *See* Adessa Decl., ¶ 18. Accordingly, the Court-approved notices successfully reached 99.2% of the Settlement Class directly. Angeion also notified the appropriate state and federal official pursuant to CAFA. *See* Dkt. No. 83. This comprehensive reach easily satisfies the standard of reasonableness against which its adequacy must be measured. *See Spann*, 314 F.R.D. at 330; Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010) (noting that a notice plan is reasonable if it reaches at least 70% of the class). Moreover, out of the hundreds of thousands of Settlement Class Members, only 3 Class Members have requested to be excluded from the Class, and no Class Members have objected to the Settlement. *See* Adessa Decl., ¶¶ 34-35. Therefore, the notice plan was a resounding success.

Given the broad reach of the notices and the comprehensive information such notices provided to Class Members, the requirements of due process and Rule 23 are easily met. *See, e.g., Rodriguez*, 563 F.3d at 962 ("The Notice advises class members that a majority (hence, not all) of the class representatives approve the settlement. It describes the aggregate amount of the settlement fund and the plan for allocation, thereby complying with what we require.").

## V.    CLAIMS RATE, OPT-OUTS, AND OBJECTIONS

The deadline for Settlement Class Members to submit a claim form was June 13, 2023. *See* Dkt. No. 86. As of June 13, 2023, Angeion received 31,274 timely claim forms. *See* Adessa Decl., ¶ 28 (30,939 submitted online and 335 submitted via mail (or email). On the date of the filing deadline, Amazon Web

6

*Robbins et al  v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   Service suffered an outage which took the Website offline for approximately 1.5 hours.  *See* Adessa Decl.,

2   ¶¶ 25-26.  In response, and at the direction of Class Counsel, Angeion continued to accept claim forms

3   through midnight June 14, 2023.  *Id.*  During this timeframe, an additional 31 claims were received (30

4   online and 1 postmarked for June 14, 2023).  *Id.*  Following a review of these 31 untimely claims, 30 were

5   determined to be valid, yet untimely.  *Id.* at ¶¶ 26, 29-30.  Angeion has completed its review of all timely

6   submitted claims and has determined of the 31,274 timely submitted claims, 31,181 are valid.  *Id.* at ¶ 30.

7   Said differently, 90 claims are being denied as 41 of those claims were duplicate claims, 47 claims

8   submitted were blank and had no identifying class information and 2 claims were withdrawn. *Id.* at ¶ 33.

9   Three (3) other claims were mailed deficiency notices and are expected to be approved or denied by June

10  19, 2023.  *Id.* at ¶ 32.

11          The objection and exclusion deadline was also on June 13, 2023.  Dkt. No. 86.  Not a single

12  objection was submitted and only 3 Settlement Class Members requested exclusion.  Adessa Decl., ¶¶ 34-

13  35. A list containing the individuals requesting to be excluded is attached as Exhibit B to the Address

14  Declaration.

15  **VI.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND**

16          **SHOULD BE APPROVED BY THE COURT**

17          Final approval of the Settlement is appropriate here because it is procedurally and substantively

18  fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2).

19          Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after

20  a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also Carlotti*

21  *v. ASUS Computer Int'l,* No. 18-CV-03369-DMR, 2019 WL 6134910, at *3 (N.D. Cal. Nov. 19, 2019).

22  To determine whether to approve a settlement, courts examine procedural and substantive fairness in light

23  of the "strong judicial policy" in favor of settlement of class action suits. *Boyd v. Bechtel Corp.*, 485 F.

24  Supp. 610, 617 (N.D. Cal. 1979) ("[T]he court should remain cognizant of the overriding public interest

25  in settling large class actions[.]"); *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (The Ninth Circuit

26  has repeatedly affirmed that a strong judicial policy favors settlement of class actions.); *Bellinghausen*,

27  306 F.R.D. at 252 ("Judicial policy strongly favors settlement of class actions."). This is particularly true

28  in complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigor

7

*Robbins et al  v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

of prolonged litigation. *See Allen,* 787 F.3d at 1223. Fairness is determined upon review of both the terms of the settlement agreement (substantive fairness) and the negotiating process that led to such agreement (procedural fairness). *See, e.g., In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

In terms of procedural fairness, a presumption of fairness, adequacy, and reasonableness attaches to a class action settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery. *See In re Pac.*, 47 F.3d at 378; *Carlotti*, 2019 WL 6134910, at *6 ("Class settlements are presumed fair when they are reached 'following sufficient discovery and genuine arms-length negotiation.'") (citations omitted). As the Ninth Circuit has recognized, although the Court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon*, 150 F.3d at 1027. "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Knapp*, 283 F. Supp. 3d at 830 (quoting *Officers for Justice*, 688 F.2d at 625); *see also id.* ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation.") (internal quotation marks omitted); accord Fed. R. Civ. P. 23(e)(2) (settlement must be "fair, reasonable, and adequate").

Courts must also consider whether a proposed settlement is substantively fair. In making this determination, the Ninth Circuit has instructed district courts to balance several factors (the "*Hanlon* factors"): (1) "the strength of the plaintiff's case;" (2) "the risk, expense, complexity, and likely duration of further litigation;" (3) "the risk of maintaining class action status throughout the trial;" (4) "the amount offered in settlement;" (5) "the extent of discovery completed and the stage of the proceedings;" (6) "the experience and views of counsel;" (7) "the presence of a governmental participant;" and (8) "the reaction of the class members of the proposed settlement." *Hanlon*, 150 F.3d at 1026; *see also Juarez v. Soc. Fin., Inc.,* No. 20-CV-03386-HSG, 2023 WL 3898988, at *3 (N.D. Cal. June 8, 2023) (same); *Whitworth v. SolarCity Corp.,* No. 16-CV-01540-JSC, 2023 WL 3202658, at *3 (N.D. Cal. May 1, 2023)(same); *In re GEICO Gen. Ins. Co.,* No. 19-CV-03768-HSG, 2023 WL 2530931, at *4 (N.D. Cal. Mar. 15, 2023 (same).

1  "The court need not consider all of these factors, or may consider others." *Bellinghausen*, 306 F.R.D. at

2  254; *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("The factors

3  in a court's fairness assessment will naturally vary from case to case."); *Arreola v. Shamrock Foods Co.*,

4  *No.* LACV1904123JAKPLA, 2021 WL 4220630, at *4 (C.D. Cal. Sept. 16, 2021) ("Each factor does not

5  necessarily apply to every class action settlement, and other factors may be considered.").

6        In addition to these factors, when a settlement agreement is negotiated prior to formal class

7  certification, courts should also consider the four enumerated factors in Federal Rule of Civil Procedure

8  Rule 23(e)(2), which include whether: (A) the class representatives and class counsel have adequately

9  represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class

10 is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of

11 any proposed method of distributing relief to the class, including the method of processing class-member

12 claims, (iii) the terms of any proposed award of attorney's fees, including timing of payment, and (iv) any

13 agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members

14 equitably relative to each other. Fed. R. Civ. P. 23(e)(2). There is significant overlap between the Rule

15 23(e)(2) and *Hanlon* factors, which complement, rather than displace each other.

16        **A.  <u>Procedural Fairness: The Negotiation Process</u>**

17        In this case, there is no question that the Settlement was arrived at through genuine arm's length

18 bargaining after a developed factual record that allowed the parties to have a "clear view of the strengths

19 and weaknesses of their case[]." *Young v. Polo Retail, LLC,* No. C 02 4546 VRW, 2007 WL 951821, at

20 *4 (N.D. Cal. Mar. 28, 2007) (internal quotation marks and citations omitted). Accordingly, it is entitled

21 to a presumption of reasonableness. *Ross v. Trex Co., Inc.,* No. 09-CV-00670-JSW, 2013 WL 6622919,

22 at *3 (N.D. Cal. Dec. 16, 2013) ("[T]here is no fraud or collusion underlying this Settlement, and it was

23 reached after good faith, arms'-length negotiations, warranting a presumption in favor of approval.")

24 (citation omitted); *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)

25 ("When sufficient discovery has been provided and the parties have bargained at arm's-length, there is a

26 presumption in favor of the settlement."); *see also Rodriguez v. West Publ'g Corp.*, 563 F. 3d 948, 965

27 (9th Cir. 2009) ("We put a good deal of stock in the product of an arm's-length, non-collusive, negotiated

28 resolution[.]").

9

*Robbins et al  v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

As is discussed further below, the circumstances surrounding the Settlement support the finding that the Settlement is procedurally fair. Here, the Settlement was reached after a first mediation session before the Honorable Wayne Andersen (Ret.) of JAMS on February 2, 2022, via Zoom, and a second in-person 10-hour mediation session before Judge Andersen on October 24, 2022. *See* Dkt. No. 81-1, ¶ 9. Prior to the second mediation session, the Parties conducted substantial written discovery, including two sets of Requests for Production of Documents and Interrogatories to Defendants which resulted in eight separate productions of documents, one which resulted from intervention from the Court as well as discovery propounded on the Plaintiffs, and third-party discovery. *Id*. ¶ 10. Additionally, Plaintiff Robbins sat for her deposition. *Id*. During the second mediation session, the Parties reached an agreement to settle the case. *Id*. ¶ 11. The Parties engaged in good faith negotiations, which at all times were at arms' length and which culminated in an agreement to settle the case. *Id*. ¶ 12-13. In such situations, the Ninth Circuit adopts a presumption of fairness, reasonableness, and adequacy as to the settlement where a class settlement is reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery. *See Garner v. State Farm. Mut. Auto. Ins. Co*., No. CV 08 1365 CW EMC, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (noting that the court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery") (citation omitted). Such a presumption is consistent with the strong judicial policy in favor of settlements, particularly in the class action context. *Id*.

### B. Substantive Fairness: The *Hanlon* Factors

#### 1.    The Strength of Plaintiffs' Case

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotation marks omitted). The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner*, 2010 WL 1687832, at *9 (citing *Rodriguez*, 563 F.3d at 965).

10

*Robbins et al v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Here, Class Counsel became thoroughly familiar with the applicable facts, legal theories, and defenses on both sides before engaging in arms-length negotiations with Defendants' counsel. *See* Dkt. No. 81-1, ¶¶ 4-12. Although Plaintiffs and Class Counsel had confidence in their claims, they recognize that a favorable outcome was not assured and that they would face risks at class certification, summary judgment, and trial. *Id*. ¶¶ 25-26. Defendants vigorously deny Plaintiffs' allegations and assert that neither Plaintiffs nor the Class suffered any harm or are entitled to damages. In addition, Defendants would no doubt present a vigorous defense at trial, and there is no assurance that the Class would prevail – or even if they did, that they would be able to obtain an award of damages significantly more than achieved here absent such risks. In other words, "[a]lthough the class members (or some of them) arguably might have received more if they had proceeded to trial and prevailed on the merits of their case, they also faced a risk that the resulting recovery would be smaller than what is currently expected." *Miguel-Sanchez v. Mesa Packing, LLC,* No. 20-CV-00823-VKD, 2021 WL 4893394, at *6 (N.D. Cal. Oct. 20, 2021). The Settlement abrogates these risks to the Plaintiffs and the Class. *See Rodriguez*, 563 F.3d at 965–66 ("[O]ne factor 'that may bear on review of a settlement'" is "the advantages of the proposed settlement versus the probable outcome of a trial on the merits of liability and damages as to the claims, issues, or defenses of the class and individual class members[.]'") (citing Federal Judicial Center, Manual for Complex Litigation § 21.62, at 316 (4th ed. 2004)). "Further, the benefit of receiving an award in the immediate future has its own value." *Miguel-Sanchez*, 2021 WL 4893394, at *6 (citing *Bellinghausen*, 306 F.R.D. at 255). Thus, in the eyes of Class Counsel, the proposed Settlement provides the Class with an outstanding opportunity to obtain significant relief at this stage in the litigation.

### 2.     The Risk Of Continuing Litigation

Next, approval of the proposed settlement is appropriate given the risks associated with continued litigation. By reaching a favorable settlement now, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "Generally, 'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Larsen v. Trader Joe's Co.,* No. 11-CV-05188-WHO, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004)) (internal

11

*Robbins et al v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

quotation marks omitted). "Moreover, settlement is favored where, as here, significant procedural hurdles remain, including class certification and an anticipated appeal." *Id*. (citing *Rodriguez*, 563 F.3d at 966).

As discussed above, the Parties engaged in substantial discovery prior to mediation including a motion to compel filed by Plaintiffs as well as two rounds of Motions to Dismiss. *See* Dkt. No. 81-1, ¶¶ 5-12. The next steps in the litigation would have been for Plaintiffs to oppose Defendants' Motion for Judgment on the Pleading and resolution of the Motion by the Court, continued discovery including expert discovery and reports, additional Party depositions, and contested motions for summary judgment and class certification, which would be at minimum costly and time-consuming for the Parties and the Court and create risk that a litigation class would not be certified and/or that the Settlement Class would recover nothing at all. For example, Plaintiffs are aware that Defendants would continue to assert defenses on the merits, including that Defendants provided all of the requisite pre-purchase disclosures under the law, presented them in a clear and conspicuous manner, and obtained the Plaintiffs' affirmative consent to the automatically renewing subscription, and any alleged omissions in the post-purchase subscription acknowledgment sent to Plaintiffs do not rise to the level negligent misrepresentation, theft or conversion. Defendants would also challenge Plaintiffs' standing under California's consumer protection statutes, including Plaintiffs' ability to show that Defendants' conduct caused Plaintiffs economic injury. Plaintiffs and Class Counsel are also aware that Defendants would oppose class certification vigorously, including a contention that Plaintiffs cannot bring a nationwide class based on a violation of the ARL.

Plaintiffs and Class Counsel further understand that Defendants would prepare a competent defense at trial. Even assuming that the Plaintiffs were to survive summary judgment, they would likely face the risk of establishing liability at trial due to conflicting expert testimony between their own expert witnesses and the Defendants' expert witnesses. In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which expert version would be accepted by the jury. The experience of Class Counsel has taught them that these considerations can make the ultimate outcome of a trial highly uncertain. Additionally, looking beyond trial, Defendants could appeal the merits of any adverse decision. Even if the Plaintiffs were to prevail at every stage of this litigation, there remains a substantial likelihood that Class Members would not be awarded significantly more than (or even as much as) is offered to them under this Settlement. *See, e.g., In re Apple Computer*

---

12

*Sec. Litig.*, No. C-84-20148(A)-JW, 1991 WL 238298, at *1 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs awarding over $100 million in damages, entering judgment in favor of individual defendants, and ordering new trial for corporate defendant).

In sum, "[i]n the absence of settlement now, the parties would incur significant additional costs in discovery, including depositions, … a survey of [defendant's] customers regarding the materiality of the alleged misrepresentations, and expert discovery." *Larsen*, 2014 WL 3404531, at *4. The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable and adequate to the Class. This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals, and provides certainty. "Accordingly, the high risk, expense, and complex nature of the case weigh in favor of approving the settlement." *Id*. (citing *Rodriguez*, 563 F.3d at 964).

### 3.  The Risk of Maintaining Class Action Status

In addition to the risks of continuing the litigation, Plaintiffs would also face risks in certifying a class and maintaining class status through trial. The Court has not yet certified the proposed Class and such a determination could be reached only after exhaustive class certification briefing is filed and during expensive expert discovery. Moreover, even assuming that the Court were to grant a motion for class certification, the class could still be decertified at any time. *See In re Netflix Privacy Litig.*, No. 5:11-cv-00379 EJD, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted). From their prior experience, Class Counsel anticipates that, should the Court certify the class, Defendants may appeal the Court's decision through a Rule 23(f) petition and subsequently move to decertify, forcing additional rounds of briefing. Risk, expense, and delay permeate such a process. "[C]onsummating this Settlement promptly in order to provide effective relief to Plaintiff and the Class" eliminates these risks by ensuring Class Members a recovery that is certain and immediate. *Johnson v. Triple Leaf Tea Inc.*, No. 3:14-cv-01570-MMC, 2015 WL 8943150, at *4 (N.D. Cal. Nov. 16, 2015). The Settlement eliminates these risks, expenses, and delay.

### 4.  The Settlement Provides Excellent Relief To The Class

The determination of "the fairness, adequacy, and reasonableness of the amount offered in settlement is not a matter of applying a 'particular formula.'" *Knapp v. Art.com, Inc.*, 283 F. Supp. 823,

13

*Robbins et al v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

832 (N.D. Cal. 2017) (citing *Rodriguez,* 563 F.3d at 965). Instead, the Court's analysis of whether a settlement amount is reasonable is "an amalgam of delicate balancing, gross approximations, and rough justice." *Id.* In assessing the consideration available to Class Members in a proposed Settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Nat'l Rural Telecomm. Coop.,* 221 F.R.D. at 527 (quoting *Officers for Just.*, 688 F.2d at 628). Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. Indeed, "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

In this case, the Settlement provides a non-reversionary cash fund of $3,700,000. Settlement ¶ 1.38.  Settlement Class Members that submitted a valid Claim Form to the Settlement Administrator are eligible to receive a *pro rata* cash payment from the $3,700,000 Settlement Fund, which now is approximated at $71.91 dollars based on data to date.  *See* Wood. Decl., ¶ 7.  In addition, Defendants have agreed to provide prospective relief, and to pay the costs of notice, administration, and reasonable attorneys' fees and costs for Class Counsel from the common fund established by the Settlement.  *Id*.  ¶¶ 1.38, 3.5 9.1.  *See also Knapp*, 283 F. Supp. 3d at 833 ("The Settlement Agreement also provides for injunctive relief, so class member that choose to continue doing business with Art.com will benefit from this aspect as well.").

In Plaintiffs' Second Amended Complaint ("SAC"), the damages sought are alleged to be the full amount of renewal charges charged to Class Members' payment methods during the Class Period.  *See* Dkt. No. 36, ¶¶ 5-6.  The renewal charge for both Plaintiffs was $14.99 per month.  *See* SAC, ¶¶ 39-52. This Settlement Class includes 332,547 individuals who booked an appointment with Defendants and were charged renewal fees in connection with Defendants' automatic enrollment of these individuals into monthly memberships during the Class Period.  According to discovery, the average customer paid for approximately six months or around $90.  *See* Dkt. No. 81-1, ¶ 17.  However, entitlement to relief in that amount is not certain, and full recovery would be unlikely for the reasons discussed herein.  Thus, recovery in the amount of $71.91 based on a 9.4% claims rate is reasonable and substantial. *See* Wood. Decl., ¶ 6.

1  Weighing the benefits of the Settlement against the risks associated with proceeding in litigation

2  and in collecting on any judgment, the proposed Settlement is more than reasonable. *See Carter v. XPO*

3  *Logistics, Inc.,* No. 16-CV-01231-WHO, 2019 WL 5295125, at *3 (N.D. Cal. Oct. 18, 2019) ("The amount

4  of the settlement is fair, adequate and reasonable given the risks of continued litigation.").

5            5.    The Extent of Discovery

6  Under this factor, courts evaluate whether Class Counsel had sufficient information to make an

7  informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459

8  (9th Cir. 2000). Plaintiffs, by and through their counsel, have conducted extensive research, discovery,

9  and investigation during the prosecution of the Action, including, without limitation, through: (i) review

10  of documents and interrogatory responses produced by Defendants through formal discovery and by way

11  of a motion to compel; (ii) the review of other publicly available information concerning the Defendants

12  which includes the sale to Accolade, Inc. ("Accolade") and Accolade's 10-Q reports; and (iii) review of

13  publicly available information regarding Defendants, their business practices, and comments and reviews

14  provided by the Better business Bureaus ("BBB") and other publicly available sources which review and

15  comment on Defendants business practices, including in response to Plaintiffs' Subpoena. *See* Dkt. No.

16  81-1, ¶ 12. The Parties also held numerous telephonic and written discussions regarding Plaintiffs'

17  allegations, discovery, and the prospects of settlement, as well as two mediation sessions with the

18  Honorable Wayne Andersen (Ret.) of JAMS. *Id.* at ¶¶ 9-13. Thus, the proposed Settlement is the result of

19  fully-informed negotiations.

20            6.    The Views Of Experienced Counsel Support Granting Final Settlement

21                Approval

22  "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."

23  *Boyd v. Bechtel Corp.* [hereinafter *Betchel Corp.*], 485 F. Supp. 610, 622 (N.D. Cal. 1979); *see also In re*

24  *Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (same). Deference to Class Counsel's

25  evaluation of the Settlement is appropriate because "[a]ttorneys, having an intimate familiarity with a

26  lawsuit after spending years in litigation, are in the best position to evaluate the action, and the Court should

27  not without good cause substitute its judgment for theirs." *Betchel Corp.*, 485 F. Supp. at 622; *see also*

28  *Rodriguez*, 563 F.3d at 967 ("Parties represented by competent counsel are better positioned than courts to

produce a settlement that fairly reflects each party's expected outcome in litigation."). Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation. *See* Dkt. No. 81-1, Ex. 2, Firm Resume of The Law Offices of Ronald A. Marron. Based on their experience, Class Counsel concluded that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation.

7.    <u>The Response Of Class Members Has Been Overwhelmingly Positive</u>

The objection and opt-out deadlines lapsed on June 13, 2023. *See* Dkt. No. 86.  By that date, not a single Class Member objected to the Settlement, and only 3 Class Members opted out (i.e., 0.000902% of Class Members). *See* Wood Decl., ¶ 5.  Furthermore, a claims rate of 9.4% was reached which was far higher than anticipated and higher than in other class settlement of similar nature.  *Id.* at ¶ 6. Such an overwhelmingly positive response from Class Members strongly supports final approval. *See Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 833-34 (N.D. Cal. 2017) (Orrick, J.) ("'[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.' A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it. … [T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (affirming district court's finding that 54 objections out of 376,301 putative class members reflected a favorable reaction); *Larsen v. Trader Joe's Co.,* No. 11-CV-05188-WHO, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.") (emphasis added and citation omitted); *Torchia v. W.W. Grainger, Inc.*, 304 F.R.D. 256, 270 (E.D. Cal. 2014) ("Significantly, no objections were filed by Class Members following service of the Class Notice Packet. … Therefore, this factor weighs in favor of the Settlement.") (internal citation omitted); *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement. It is established that the absence of a large number of objections to a proposed class

16

action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *Arreola v. Shamrock Foods Co.,* No. LACV1904123JAKPLA, 2021 WL 4220630, at *5 (C.D. Cal. Sept. 16, 2021) ("[N]one [of the settlement class members] objected or opted out. A low proportion of opts outs and objections 'indicates that the class generally approves of the settlement.' Therefore, this factor weighs in favor of final approval.") (citations omitted).

### C.  The Rule 23(e)(2) Factors

a.  The Class Representatives and Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A))

As is discussed further below, Plaintiffs' interests here are aligned with other class members' interests because they claim they suffered the same injuries: paying membership fees to Defendants due to their automatic renewal scheme. Because Plaintiffs and the Class suffered these alleged injuries as a result of Defendants' common course of conduct, Plaintiffs have an interest in vigorously pursuing the claims of the class. Further, as discussed herein, numerous other courts in this Circuit have previously found that Plaintiffs' attorneys adequately meet the obligations and responsibilities of Class Counsel. *See* Dkt. No 81-1, Ex. 2, Firm Resume of The Offices of Ronald A. Marron. This factor thus favors preliminary approval.

b.  The Settlement Was Negotiated At Arm's Length

In evaluating the adequacy of a proposed settlement under Rule 23(e)(2), particular attention should be paid to the process of settlement negotiations.  When a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, there is a presumption that the settlement is fair and reasonable.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Garner*, 2010 WL 1687832, at *9. Ultimately, the Court's role is to ensure that the settlement is fundamentally fair, reasonable and adequate. *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).

Here, counsel for both Plaintiffs and Defendants are experienced in class action litigation, engaged in protracted settlement discussions, and reached this settlement with the assistance of an experienced neutral. Dkt. No. 81-1, ¶¶ 9-12; 24. In other words, the negotiations were conducted at arm's length, non-collusive, well-informed (in that they were conducted after an assessment of the strengths and weaknesses of the claims on both sides), conducted between counsel on both sides with decades of class action

17

*Robbins et al  v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

experience, and utilized at the appropriate time the assistance of a well-respected mediator. Under such circumstances, the proposed Settlement is entitled to a presumption of reasonableness, and the Court is entitled to rely upon counsel's opinions and assessments. *See Perks v. Activehours, Inc.*, No. 5:19-cv-05543-BLF, 2021 WL 1146038, at *5 (N.D. Cal. Mar. 25, 2021) ("[T]he Court found that Class Counsel have substantial experience in litigating and settling consumer class actions. Despite the relatively early stage of the litigation, Class Counsel obtained sufficient information to make an informed decision about the Settlement and about the legal and factual risks of the case. … The Settlement was also the product of arm's-length negotiations through mediation sessions and follow-up communications supervised by [an experienced neutral]. There is no indication of any collusion between the parties."); *Boyd v. Avanquest N. Am. Inc.* [hereinafter *Avanquest*], No. 12-cv-04391-WHO, 2015 WL 4396137, at *3 (N.D. Cal. July 17, 2015) ("[U]se of mediator 'tends to support the conclusion that the settlement process was not collusive.'") (quoting *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012)); *Bechtel Corp.*, 485 F. Supp. at 622-25. Accordingly, the second Rule 23(e)(2) factor has been met.

### c.    The Settlement Provides Adequate Relief To The Class

Whether relief is adequate takes into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Rule 23(e)(2)(C)(i-iv). These factors subsume several *Hanlon* factors including: "the risk, expense, complexity, and likely duration of further litigation" (*Hanlon* Factor 2); "the risk of maintaining class action status throughout the trial" (*Hanlon* Factor 3); and "the amount offered in settlement" (*Hanlon* Factor 4). As noted above, the Settlement has met each of the *Hanlon* factors and the proposed Settlement is entitled to a presumption of reasonableness. As to "any agreement required to be identified by Rule 23(e)(3)[,]" no such agreement exists in this case other than the Settlement.

As to "the effectiveness of any proposed method of distributing relief to the class," it is "important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." *Alvarez v. Sirius XM Radio Inc.*, No. CV 18-8605 JVS (SSx), 2020 WL 7314793, at *6 (C.D.

18

*Robbins et al  v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Cal. July 15, 2020) (citing Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id*. Here, under the terms of the Settlement, Settlement Class Members were able to submit a claim form and, if approved, receive a *pro rata* payment from the Settlement Fund. *Id*. ¶¶ 3.2, 3.3. The claims process "requires logging on to the Settlement Website and submitting a Claim there, or a Settlement Class Member may print the Claim form from that website and mail a filled-in hard-copy to the Settlement Administrator if they prefer." *Alvarez*, 2020 WL 7314793, at *6. The Court should find that "this process is not unduly demanding, and that the proposed method of distributing relief to the Class is effective." *Id.*

Next, as to "the terms of any proposed award of attorney's fees," Class Counsel has applied for attorneys' fees, costs, and in the amount of $1,233,33, which constitutes one-third of the non-reversionary common fund. *See* Dkt. No. 90, Plaintiffs' Motion for Attorneys' Fees, Costs and Incentive Awards.  The Ninth Circuit has identified five relevant factors in determining whether requested attorneys' fees are reasonable: (a) the results achieved; (b) the risk of litigation; (c) whether Class Counsel's work generated benefits beyond the Class settlement fund, (d) market rates as reflected by awards made in similar cases; and (e) the contingent nature of the fee and the financial burden carried by Plaintiffs and the Class. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). Here, each factor is easily satisfied.

First, with respect to the results achieved, Class Counsel's efforts have secured settlement consisting of a mix of monetary and prospective relief, with a total non-reversionary cash value amount of $3,700,000 which does not include the additional and substantial value to the class added by the prospective relief which Class Counsel insisted on when securing the settlement. The prospective relief and its value is discussed thoroughly in Plaintiffs' Fee Brief (Dkt. No. 90) and the supporting declaration of Plaintiffs' economic valuation expert Eli Bartov, Ph. D who valued the prospective relief as $1,611,104 to $4,973,408, providing a total economic benefit to the Class of $5,311,104 to $8,673,408.  *See* Declaration of Eli Bartov, Ph. D.  *See* Dkt. No. 90-1.

Second, Plaintiffs have established that there are significant risks in entering a protracted litigation. Thus, "[i]n the absence of settlement now, the parties would incur significant additional costs in discovery, including depositions, … a survey of [defendant's] customers regarding the materiality of the alleged

19

*Robbins et al  v. PlushCare, Inc., et al.*, No. 3:21-CV-03444-MMC
PLAINTIFFS' NOTICE AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

misrepresentations, and expert discovery." *Larsen*, 2014 WL 3404531, at *4. "Moreover, settlement is favored where, as here, significant procedural hurdles remain, including class certification and an anticipated appeal." *Id.* (citing *Rodriguez*, 563 F.3d at 966). "Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all parties, as well as conserve judicial resources." *Id.* (citing *Garner*, 2010 WL 1687832, at *10). "Accordingly, the high risk, expense, and complex nature of the case weigh in favor of approving the settlement." *Id.* (citing *Rodriguez*, 563 F.3d at 964).

Third, Class Counsel's time and efforts in this litigation have generated benefits beyond the Class settlement fund. *See also* Settlement ¶ 3.5.

Fourth, Plaintiffs' counsel's requested fee is consistent with market rates as reflected by awards made in similar cases. Indeed, courts in this Circuit routinely approve fee requests for up to one-third of a common fund. *See*, *e.g.*, *Blandino v. MCM Constr., Inc.*, No. C 12-1729 WHO, 2014 WL 11369763, at *3 (N.D. Cal. Mar. 6, 2014) (awarding 33% of settlement fund in attorneys' fees); *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) (awarding 33% in fees); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 457, 460 (affirming 33.5% fee award); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) (affirming 33.3% fee award) ("The $2,000,000 requested by class counsel amounts to one-third of this common fund. … Courts in this district have consistently approved attorneys' fees which amount to approximately one-third of the relief procured for the class.") (citations omitted); *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 379 (affirming 33% fee award); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (noting that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value"); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) (awarding fee of 32.8%); *Garner*, 2010 WL 1687829, at *1 ("A fee award of 30 percent is within the 'usual range' of fee awards that Ninth Circuit courts award in common fund cases."); *Vizcaino*, 290 F.3d at 1050 (affirming 28% fee award); *Larsen*, 2014 WL 3404531, at *9 ("[Counsel's] request for attorneys' fees in the amount of 28% of the common fund falls within the range of acceptable attorneys'

fees in Ninth Circuit cases.") (citations omitted); *Wellens v. Sankyo*, No. C 13-00581 Who (DMR), 2016 WL 8115715, at *3 (N.D. Cal. Feb. 11, 2016) (awarding 36% of $8,200,000 settlement fund in fees).[4]

Finally, the requested fees are also fair given the significant time Class Counsel has devoted to this case on a contingency fee basis, with the threat of no recovery at all absent a successful resolution. Thus, because of the contingent nature and the financial burden carried, Plaintiffs' Counsel's requested fee award of one-third of the Settlement is reasonable and appropriate in this case. *See Vizcaino*, 290 F.3d at 1048-50.

The Settlement therefore provides adequate relief to the Class under Rule 23(e)(2)(C), and the requested attorneys' fees are reasonable in relation to such relief.

### d.    The Settlement Treats All Class Members Equally

"The final Rule 23(e)(2) factor is whether 'the proposal treats class members equitably relative to each other.'" *Perks*, 2021 WL 1146038, at *6 (citing Fed. R. Civ. P. 23(e)(2)(D)). In assessing this factor, "the Court considers whether the proposal "'improperly grant[s] preferential treatment to class representatives or segments of the class.'" *Id.* (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

Here, the Settlement provides a non-reversionary cash fund of $3,700,000. Settlement ¶ 1.38. Settlement Class Members who submitted a valid Claim Form to the Settlement Administrator are eligible to receive a *pro rata* cash payment from the $3,700,000 Settlement Fund. *Id*. ¶¶ 3.2, 3.3. After paying Settlement Costs, and subject to Court approval, each Class Members is currently expected to receive $71.91. *See* Wood Decl., ¶ 7. Courts in this Circuit have found that allocating Settlement benefits among Class Members in this manner is equitable. *See Perks*, 2021 WL 1146038, at *6 ("This *pro rata* distribution is inherently equitable because it treats Class Members fairly based on the amount of each member's potential damages."); *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (finding *pro rata* distribution equitable); *Avanquest*, 2015 WL 4396137, at *3 ("[T]he proposed settlement agreement 'does not improperly grant preferential treatment

---

[4] *See also Alvarez v. Farmers Ins. Exch.*, No. 3:14-cv-00574-WH), 2017 WL 2214585, at *3 (N.D. Cal. Jan. 18, 2017) ("Fee award percentages generally are higher in cases where the common fund is below $10 million.") (citations omitted); *accord Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 WL 1789602, at *11 (N.D. Cal. Apr. 26, 2013).

to class representatives or segments of the class[]' because all class members are treated in the same way and there is no difference in treatment throughout the class.") (internal citations omitted) (quoting *State of California v. eBay, Inc.*, No. 5:12-CV-05874-EJD, 2014 WL 4273888, at *5 (N.D. Cal. Aug. 29, 2014)). Thus, this factor weighs in favor of granting approval.

## VII. THE COURT SHOULD APPROVE 30 UNTIMELY BUT OTHERWISE VALID CLAIMS

A district court has discretion to allow claims filed after the deadline for submission. *See In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127-28 (9th Cir. 1997). Here, due to an Amazon Web Server outage, the Settlement Website was offline for a period of approximately 1.5 hours on June 13, 2023, the claim filing deadline. *See* Adessa Decl., ¶¶ 25-26. In response to the AWS outage and to account for any Settlement Class Member who waited until the deadline to file a claim, Class Counsel directed Angeion to continue to accept the filing of claim forms online through midnight on June 14, 2023. *Id.* During this 24-hour time period, 30 claims that were otherwise valid were submitted. *Id.* Class Counsel respectfully requests the Court allow these 30 additional claims be approved under the Settlement. Acceptance of these 30 late claims will not impact Defendants and will not significantly impact the amount awarded to each Settlement Class Member. For ease, without taking into account the 3 unresolved deficient claims and assuming the Court awards full Attorneys' Fees, Costs and Incentive Awards and Administrative Costs, if *only* the valid and timely claims are paid, each Settlement Class Member will receive $71.98. Yet, should the additional untimely but otherwise valid claims also be paid, each Settlement Class Member would receive $71.91. *See* Wood Decl, ¶ 7. Thus, the per Settlement Class Member difference is approximately 7 cents. *Id*. Class Counsel requests the Court's approval of these 30 untimely claims.

## VIII. ANGEION SHOULD BE AWARDED FULL COSTS

Through May 31, 2023, Angeion has incurred a total of $79,600.89 in administrative expenses for providing Notice. *See* Adessa Decl., ¶ 36. From June 1, 2023 though the initial distribution, Angeion estimates there will be between $60,000 and $65,000 in additional expenses, which includes claims revie , website maintenance, continuing to respond to Settlement Class Members and distributing funds to as least 31,181 Settlement Class Members. *Id.* While this number is slightly higher than originally estimated, this

is in direct response to the higher than anticipated claims rate, which is a product of the highly successful Notice plan. *Id.* at ¶ 37. Thus, the Class Counsel requests the Court approve $142,100.89 for Angeion.

### IX.    <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their unopposed Motion for Final Approval of the Settlement. A Proposed Order granting final approval and certifying the Settlement Class is submitted herewith.


Dated: July 7, 2023                           By: <u>*/s/ Alexis M. Wood*</u>
                                              **LAW OFFICES OF RONALD A. MARRON**
                                              RONALD A. MARRON
                                              ALEXIS M. WOOD
                                              KAS L. GALLUCCI
                                              651 Arroyo Drive
                                              San Diego, California 92103
                                              Telephone: (619) 696-9006
                                              Facsimile: (619) 564-6665

                                              *Class Counsel*